IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| PLAINTIFF | ) |
| V. | ) |
| | ) CASE NO: 13-cv-1832 (JDB) |
| ALL ASSETS HELD IN ACCOUNT NUMBER | ) |
| 80020796, IN THE NAME OF DORAVILLE | ) |
| PROPERTIES CORPORATION AT DEUTSCHE | ) |
| BANK INTERNATIONAL LIMITED IN NEW JERSEY, | ) |
| CHANNEL ISLANDS AND ALL INTEREST, | ) |
| BENFIT OR ASSETS TRACEABLE THERETO, ET AL, | ) |
| AND | ) |
| THE FEDERAL REPUBLIC OF NIGERIA | ) |
| DEFENDANT INTERVENOR / CLAIMANT | ) |

**VERIFIED CLAIM OF FEDERAL REPUBLIC OF NIGERIA**

1. Pursuant to Rule G (5) (a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, Claimant Federal Republic of Nigeria ("Claimant" or "Nigeria"), by and through counsel; Godson M Nnaka, Charles Lion Agwumezie, Kenneth Nnaka, and Jude C. Ezeala hereby files this verified claim and asserts her interest and right in the Defendants in rem in this action.

2. Nigeria has a claim to, interest in, and right to the property (monies and other financial assets) seized by the United States pursuant to the "verified Complaint for Forfeiture in Rem" filed in this action under 18.U.S.C§981(a)(1)(A) for five corporate entities and more than $500 million in other assets involved in an international conspiracy to launder proceeds of corruption in Nigeria during the military regime of General Sani Abacha" (referred to as the "Defendant Property"). Defendant property is currently in the custody of the United States government or within its jurisdictional reach.

a) The basis of Nigeria's interest in the property is as follows :

Nigeria is a sovereign nation situated in approximately 923,768 sq. km area in West Coast of Africa[1]. It gained independence from Great Britain in 1960. Its present population is estimated at 170 million people, 70% of who live on less than $1 per day. As recent as April, 2014, the World Bank considers Nigerians "extremely poor people."[2]

The economy of Nigeria is monolithic. Almost 95% of its national income comes from the sale of crude oil. For the most part of its history, Nigeria has been ruled by a string of brutal military dictators who oppressed the citizens, suppressed all forms of dissent or opposition and systematically institutionalized graft and corruption in the country

b) In 1993, General Sani Abacha seized power from the country's former military ruler, General Ibrahim Babangida. For the next five years, General Abacha ruled Nigeria

---

[1] Nigeria:  CIA Fact Report, 2013
[2] In a briefing to the Council on Foreign Relations members in Washington, D.C> on April 1, 2014, World Bank President Dr. Jim Young Kim stated that the Bank rated Nigerians among the "extremely poor" people of the world.

with iron fist, exercising plenary control over the economy and security agencies until his death in June 10, 1998. During this period, General Abacha, his family and cronies turned Nigerian public funds to their personal pockets in a spectacular display uncommon thievery and corruption through complex schemes of deception, fraud and embezzlement. According to Special Investigative Panel in the office of elected President of Nigeria, approximately $3 to $5 billion traced to General Abacha and his family were stolen, diverted or misappropriated from Nigerian public treasury.[3]

c) Defendants properties *in rem* are part of the funds General Abacha, his family and associates stole, diverted or embezzled from the Nigerian public funds. Plaintiff conceded this fact when she averred in her complaint that;

1. Between 1993 to June 10, 1998, Nigeria's National Security Adviser,( Gwarzo ), wrote letters addressed to and endorsed by General Abacha, each of which resulted in the withdrawal of Nigeria's public funds from CBN (Central Bank of Nigeria) " the funds were deposited into accounts controlled by, or used to purchase assets[ the assets in rem] to the benefit of General Abacha, Bagudu, or other members of the conspiracy" and " at least $137 million was transported into

---

[3] Nigeria returned to democratic rule in 1999. Following discovery of General Abacha's criminal raiding of public treasury , the Government of Nigeria under President Olusegun Obasanjo notified and appealed to all international organizations and countries to assist her in tracing, confiscating
 and returning the stolen funds.  Additionally, the Government set up a special investigative panel (SIP), led by Deputy Inspector General of Police (DIG), Peter Gana to trace, investigate, terminate, discourage and prevent the laundering of the loot.

and out of the United States, and into accounts held in the name of defendant corporations.[4]

2. General Abacha in association with his son" Mohammed Abacha, Bagudu, and others defrauded Nigeria of more than $282 million by causing the government of Nigeria to repurchase Nigeria's par debt from one of their companies for more than double what Nigeria would have paid to repurchase the debt on the open market. In this fraudulent flipping of Nigeria's debt, the Central Bank of Nigeria paid and was defrauded the following:

(a) §141,253,333 paid or transferred to Defendant Property on or before April 15, 1997.

(b) §141,253,333 paid or transferred to Defendant Property on or before April 22, 1997.[5]

3. $175 million of Defendant property constitute interest paid and received by Defendant property in laundering the proceeds of the security votes fraud (item 1 above), and the Debt-Buy back fraud (item 2 above) through the defendants purchase and transfer of U.S- backed Securities, Nigerian Par Bounds.[6]

4. Between August 16, 1996 and May 22, 1998, the Central Bank of Nigeria transferred $389,787,400 to Dumez account in Geneva. $97,375,543, or 25% was

---

[4] Plaintiff's Complaint, at page 11 and 14
[5] Plaintiff's Complaint at page 16 and 18
[6] Plaintiff's Complaint, paragraph 52, page 20

        paid to General Abacha and co as kickback and $11,114,983 of this kickback was transferred to defendant account 38175076.[7]

The above described acts were perpetrated in violation of Nigerian laws.

3.     From the foregoing, the conclusion is inescapable that Nigeria is the innocent owner[8] of the funds laundered by defendant corporate entities and is therefore entitled to the return of the funds and the interests generated there from.

4.     Plaintiff, United States and Claimant, Nigeria are bound by Mutual Legal Assistance Treaty[9]. Both countries are also signatories to and are bound by the provisions of the United Nations Convention against Corruption (UNCAC). Nigeria is a Victim State in the criminal scheme and corruption web that was established and operated by General Abacha and his family. Chapter V of the United Nations Convention against Corruption mandates each State party to facilitate repatriation of the forfeited assets back to the victim state – Nigeria.[10]

---

[7] Plaintiff's Complaint, paragraphs 97 and 98, page 32

[8] The Civil Assets Reform Act of 2000 signed into Law on April 25, 2000 by President Clinton still preserved "innocent owners" right to reclaim property sought to be forfeited. The Act defines an owner as " a person with an ownership or possessory interest in the specific property sought to be forfeited-including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest' 18 USC 981(d).

[9] The current Nigerian Attorney General and Minister of Justice, Mr. Mohammed Bello Adoke, SAN, stated that his office has received requests from the Central Authority of the United States in this matter and is cooperating with the United States in line with the obligations assumed under the Treaty on Mutual Legal Assistance in Criminal matters. Nigerian Vanguard Newspapers, March 27, 2014.

[10] Chapter V, Article 53 of the United Nations Convention against Corruption (UNCAC), states as follows; "Each State Party shall, in accordance with its domestic Law; (a) take such measures as may be necessary to permit another State Party to initiate civil action in its courts to establish title to or ownership of property acquired through the commission of an offence established in accordance with this Convention; (b) take such measures as may be necessary to permit its courts to order those who have committed offences established in accordance with this Convention to pay compensation or damages to another State Party that has been harmed by such offences; and (c) take such measures as may be necessary to permit its courts or competent authorities, when having to decide on confiscation, to recognize another State Party's claim as a legitimate owner of property acquired through the commission of an offence established in accordance with this Convention".

5.      Claimant was unaware of the complex criminal schemes of General Abacha and his family until his demise in 1998. She did not have prior knowledge that General Abacha and his family were stealing from public treasury during Abachas reign. As a sovereign state, it didn't participate in the alleged laundering of the embezzled security vote funds, or the proceeds of debt- buy back fraud and the kickback collected from Dumez. But as established above, she is the lawful owner of the funds "allegedly laundered in the fraudulent security votes, debt buy back and Dumez extortion schemes". Furthermore, Nigeria is a victim state in the Abachas schemes, and the forfeited assets/defendant property is required to be repatriated back to her under chapter V of the United Nations Convention against Corruption (UNCAC).[11] For these reasons, Nigeria prays for a right to defend this action and the return of its property as follows;

1) That the Court enter a decree ordering the forfeiture of the defendant property to Federal Republic of Nigeria.

2) That the Court grant an order of forfeiture for liquidation of all forfeited/seized assets/defendant property and conversion of all proceeds to liquid funds denominated in the United States Dollars.

---

[11] Chapter V, Article 57 of the United Nations Convention against Corruption (UNCAC), states further as follows; 1.Property confiscated by a State Party pursuant to article 31 or 55 of this Convention shall be disposed of, including by return to its prior legitimate owners, pursuant to paragraph 3 of this article, by that State in accordance with the provisions of this Convention and its domestic Law. 3. In accordance with article 46 and 55 of this Convention and paragraphs 1 and 2 of this article, the requested State Party shall; (a) In the case of embezzlement of public funds or of laundering of embezzled public funds as referred to in articles 17 and 23 of this Convention, when confiscation was executed in accordance with article 55 and on the basis of a final judgment in the requesting State Party, a requirement that can be waived by the requested State Party, return the confiscated property to the requesting State Party; (b) In case of proceeds of any other offence covered by this Convention, when the confiscation was executed in accordance with article 55 of this Convention and on the basis of a final judgment in the requesting State Party, a requirement that can be waived by the requested State Party, return the confiscated property to the requesting State Party, when the requesting State Party reasonably establishes its prior ownership of such confiscated property to the requested State Party or when the requested State Party recognizes damage to the requesting State Party as a basis for returning the confiscated property; (c) In all other cases, give priority consideration to returning confiscated property to the requesting State Party, returning such property to its prior legitimate owners or compensating the victims of the crime.

3) That this Court enter an order directing the immediate return and transfer of the Defendant property, in liquidated proceeds denominated in United States Currency back to Nigeria, less Attorney fees, costs and expenses approved by this Court.

4) Any and all other remedies deemed fit and appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

        Executed on June 12, 2014

        */s/ Kenneth Nnaka*
        TBA#24032796
        Law Offices of Nnaka & Associates, PLLC (Lead Firm)
        2650 Fountain View Dr. Ste. 332
        Houston, TX 77057
        Ph No: 713.266.1446 / Fax No: 713.266.1447

I declare under penalty of perjury that the foregoing is true and correct.

        Executed on June 12, 2014

        *Jude Chukwuma. Ezeala, Esq.,*
        Law Office of Jude C. Ezeala
        5521 Harford Road
        Baltimore MD 21214
        Ph No: 410-922-9456
        Fax No: 410.922.8220
        judeezeala@hotmail.com
        District of Columbia Bar Number: 988728

VERFICATION

My name is Kenneth Nnaka. I am the attorney of record for the Claimant, Federal Republic of Nigeria and duly authorized to make this claim on behalf of the Claimant. I have read the foregoing Claim filed by and on behalf of the Federal Republic of Nigeria and every factual allegation contained therein is true and correct to the best of my knowledge.

*/s/ Kenneth Nnaka*

TBA#24032796

Law Offices of Nnaka & Associates, PLLC (Lead Firm)

2650 Fountain View Dr. Ste. 332

Houston, TX 77057

Ph No: 713.266.1446 / Fax No: 713.266.1447

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Claim was filed via the Court's electronic filing system and same forwarded to the Asst. U.S. Attorney Elizabeth A. Aloi, Washington, DC on this 12th day of June, 2014.

/s/ Kenneth Nnaka
TBA#24032796
Law Offices of Nnaka & Associates, PLLC (Lead Firm)
2650 Fountain View Dr. Ste. 332
Houston, TX 77057
Ph No: 713.266.1446 / Fax No: 713.266.1447