## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-1832 (JDB) |
| | ) | |
| ALL ASSETS HELD IN ACCOUNT NUMBER | ) | **ORAL HEARING REQUESTED** |
| 80020796, IN THE NAME OF DORAVILLE | ) | |
| PROPERTIES CORPORATION, AT DEUTSCHE | ) | |
| BANK INTERNATIONAL, LIMITED IN JERSEY, | ) | |
| CHANNEL ISLANDS, AND ALL INTEREST, | ) | |
| BENEFITS, OR ASSETS TRACEABLE | ) | |
| THERETO, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CLAIMANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF CLAIMANTS' MOTION TO DISMISS THE GOVERNMENT'S COMPLAINT FOR FORFEITURE *IN REM*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

    I.      THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
           STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED......................3

          A.      The Complaint Fails to Sufficiently Plead the Specified Unlawful
                 Activity Necessary to Support its Money Laundering Claims ...................4

                 1.      The Complaint Fails to Plead that the Debt Buy-Back
                         Transaction Violated Any Laws ........................................................5

                 2.      The Allegations Are Insufficient to Establish the Knowing
                         Transportation or Receipt of Criminal Proceeds in
                         Violation of 18 U.S.C. §§ 2314 or 2315 ..........................................8

          B.      The Complaint Fails to Plead Facts to Establish the Necessary
                 *Mens Rea* for Money Laundering and the Existence of a
                 Conspiracy ................................................................................11

          C.      The Complaint Fails to Sufficiently Trace the Claimed Property to
                 Criminal Proceeds .......................................................................13

    II.     THE GOVERNMENT'S OPPRESSIVE DELAY IN FILING THIS
           FORFEITURE ACTION HAS PREJUDICED CLAIMANTS' DEFENSE
           AND DENIED THEM DUE PROCESS ...........................................................17

    III.    THE COURT LACKS JURISDICTION TO ADJUDICATE
           CLAIMANTS' INTEREST IN THE CLAIMED PROPERTY ...........................20

    IV.    PRINCIPLES OF INTERNATIONAL COMITY AND ACT OF STATE
           DOCTRINE REQUIRE DISMISSAL .................................................................23

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave. and Related Props.*,
    777 F. Supp. 2d 529 (S.D.N.Y. 2011)....................................................................15

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*,
    297 F. Supp. 2d 165 (D.D.C. 2003) ......................................................................12

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*,
    480 U.S. 102 (1987)................................................................................................21

*\*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................6

*Bi v. Union Carbide Chem. and Plastics, Inc.*,
    984 F.2d 582 (2d Cir. 1993)...................................................................................24

*Caesars World, Inc. v. Caesars-Palace.Com*,
    112 F. Supp. 2d 505 (E.D. Va. 2000) ....................................................................22

*Colello v. S.E.C.*,
    908 F. Supp. 738 (C.D. Cal. 1995) ........................................................................18

*Dowling v. United States*,
    473 U.S. 207 (1985)..................................................................................................9

*United States ex rel. El-Amin v. George Washington Univ.*,
    Civil Action No. 95-2000 (JGP), 2005 WL 485971 (D.D.C. Feb. 25, 2005)...........9

*Hilton v. Guyot*,
    159 U.S. 113 (1895)................................................................................................24

*Kowal v. MCI Communications Corp.*,
    16 F.3d 1271 (D.C.Cir.1994) .................................................................................10

*The Monte A.*,
    12 F. 331 (S.D.N.Y. 1882)......................................................................................23

*R.S.M. Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ...............................................................................7

*\*Reid v. Covert*,
    354 U.S. 1 (1957)....................................................................................................18

*\*Shaffer v. Heitner*,
    433 U.S. 186 (1977)..........................................................................................20, 21

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004)..........................................................................................20, 21

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. 2291 Ferndown Lane Keswick VA 22947-9195*,
   No. 3:10-CV-0037, 2011 WL 2441254 (W.D. Va. June 14, 2011)......................................5, 7

*United States v. 38,000.00*,
   816 F.2d 1538, 1548 (11th Cir. 1987) ......................................................................................4

*United States v. 51 Pieces of Real Property Roswell, N.M.*,
   17 F.3d 1306 (10th Cir. 1994) ................................................................................................22

*United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*,
   641 F. Supp. 2d 1 (D.D.C. 2009) ...........................................................................................22

*United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*,
   656 F. Supp. 2d 87 (D.D.C. 2009) ..........................................................................................11

*United States v. Alaniz*,
   726 F.3d 586 (5th Cir. 2013) ..................................................................................................11

*United States v. All Assets held at Bank Julius Baer & Co.*,
   571 F. Supp. 2d 1 (D.D.C. 2008) ..............................................................................................4

*United States v. All Funds on Deposit at Citigroup Smith Barney Account No.
   600-00338*,
   No. 06-cv-3730, 2008 WL 304 9895 (E.D.N.Y. Aug. 1, 2008) ..............................................10

*United States v. All Funds on Deposit at Dime Savings Bank*,
   255 F. Supp. 2d 56 (E.D.N.Y. 2003) ......................................................................................15

*United States v. All Funds on Deposit in, or transferred to or through, Banc of
   America Account Number 207-00426 held in the Name of Kenneth V. Jaeggi
   and Patti S. Jae*,
   No. CV-05-3971(SJF), 2007 WL 2114670 (E.D.N.Y. Jul 16, 2007) ......................................11

*United States v. All Monies in Account No. 90-3617-3*,
   754 F. Supp. 1467 (D. Haw. 1991) .........................................................................................16

*United States v. Approximately $50,205.00 in U.S. Currency*,
   No. 12-cv-1183, 2013 WL 372 9573 (E.D. Wisc. July 12, 2013) ...........................................10

*United States v. Bajakajian*,
   524 U.S. 321 (1998)................................................................................................................12

*\*United States v. Bornfield*,
   145 F.3d 1123 (10th Cir.1998) ..........................................................................................15, 16

*United States v. Braxtonbrown-Smith*,
   278 F.3d 1348 (D.C. Cir. 2002).............................................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Coffman,*
    859 F. Supp. 2d 871 (E.D. Ky. 2012) ....................................................................15

*United States v. Contents of J.P. Morgan Chase Bank, N.A., Account No.*
    *xxxxxx9951,*
    No. 10-551, 2011 WL 6217123 (S.D. Ala. Dec. 13, 2011) ...................................14

*United States v. Cooper,*
    Cr. No. 86-422, 1987 WL 9508 (D.D.C. Apr. 6, 1987)..........................................20

*United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in*
    *United States Currency,*
    461 U.S. 555 (1983)...............................................................................................19

*United States v. Huber,*
    404 F.3d 1047 (8th Cir. 2005) ...............................................................................15

*United States v. Jamieson,*
    427 F.3d 394 (6th Cir. 2005) .................................................................................15

*United States v. Johnson,*
    440 F.3d 1286 (11th Cir. 2006) .............................................................................13

*United States v. Kashamu,*
    No. 94 CR 172-15, 2014 WL 1647790 (N.D. Ill. Apr. 23, 2014)...........................18

*United States v. Lazarenko,*
    564 F.3d 1026 (9th Cir. 2009) .................................................................................7

*United States v. Lovasco,*
    431 U.S. 783 (1977)..........................................................................................18, 19

*United States v. Mahoney,*
    698 F. Supp. 344 (D.D.C. 1988) ............................................................................19

*United States v. Marion,*
    404 U.S. 307 (1971)..........................................................................................18, 19

*United States v. Mondragon,*
    313 F.3d 862 (4th Cir. 2002) .................................................................................10

*United States v. Moore,*
    27 F.3d. 969 (4th Cir. 1994) ..................................................................................15

*United States v. Nicolo,*
    597 F. Supp. 2d 342 (W.D.N.Y. 2009) ..................................................................15

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

*United States v. One 1987 Mercedes Benz 300 E.*,
  820 F. Supp. 248 (E.D. Va. 1993) .......................................................................16

*\*United States v. One Gulfstream Jet G-V Jet Aircraft*,
  941 F. Supp. 2d. 1 (D.D.C. 2013) ...............................................................4, 13, 14

*United States v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*,
  362 F. Supp. 2d 1175 (C.D. Cal. 2005) ............................................................22

*United States v. One Partially Assembled Drag Racer*,
  899 F. Supp. 1334 (D.N.J. 1995) ......................................................................13

*United States v. One Single Family Residence Located at 6960 Miraflores Ave.*,
  932 F.2d 1433 (11th Cir. 1991), rev'd on other grounds sub nom, *Republic
  Nat'l Bank v. United States*, 506 U.S. 80 (1992) ............................................22

*United States v. Portrait of Wally, A Painting by Egon Shiele*,
  No. 99-Civ. 9940, 2002 WL 553532 (S.D.N.Y. April 12, 2002) ........................10

*United States v. Premises Known as Lots 50 & 51, 2050 Brickell Ave., Miami,
  Fla.*,
  681 F.Supp. 309 (E.D.N.C. 1988).....................................................................21

*United States v. Puche*,
  350 F.3d. 1137 (11th Cir. 2003) ........................................................................15

*United States v. Real Property Known as 1700 Duncanville Rd.*,
  90 F. Supp. 2d 737 (N.D. Tex. 2000) ................................................................15

*United States v. Rosa*,
  17 F.3d 1531 (2d Cir. 1994)..................................................................................9

*United States v. Sum of $70,990,605*,
  4 F. Supp. 3d 189 (D.D.C. 2014) .........................................................................6

*United States v. Tchibassa*,
  452 F.3d 918 (D.C. Cir. 2006) ...........................................................................18

*United States v. Tencer*,
  107 F. 3d 1120 (5th Cir. 1997) ..........................................................................15

*United States v. Ursery*,
  518 U.S. 267 (1996)............................................................................................11

*United States v. Wanigasinghe*,
  545 F.3d 595 (7th Cir. 2008) .............................................................................18

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

*United States v. Woodruff,*
     296 F. 3d. 1041 (11th Cir. 2002) ............................................................12

**Statutes**

18 U.S.C. § 981(a)(1)(B) ...........................................................................7

18 U.S.C. § 1956..........................................................................3, 5, 7, 15

18 U.S.C. § 1957...........................................................................3, 9, 11

18 U.S.C. § 2314...........................................................................8, 9, 10

18 U.S.C. § 2315...........................................................................8, 9, 10

28 U.S.C. § 1355.....................................................................................20

U.S. CONST. amend. V..............................................................................18

U.S. CONST. amend. VI.............................................................................18

**Rules**

Fed. R. Civ. P. 8......................................................................................4, 6

Fed. R. Civ. P. 12(b)(6).................................................................................4

Fed. R. Crim. P. 7(c)....................................................................................7

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
     Actions G(2)(f)...................................................................................4, 8

**Other Authorities**

4A C. Wright & A. Miller, Federal Practice and Procedure § 1070 (3d ed. 2002) ......................21

## PRELIMINARY STATEMENT

More than a decade after becoming aware of the alleged corruption of General Abacha's government and the purported transfers of stolen funds outside of Nigeria into bank accounts in the U.K. and elsewhere, the U.S. Government now seeks to forfeit certain of those funds and deprive innocent Claimants of their property.  The Government does not offer *a single, legitimate reason* for its excessive delay in bringing this case, despite the clear prejudice suffered by Claimants.  The Government certainly had the knowledge and opportunity to initiate a case against Abubakar Atiku Bagudu or seek to forfeit the alleged criminal proceeds when it detained him in Texas in 2003.  While Mr. Bagudu was in U.S. custody, the Government received substantial information about the sources of his assets, including the alleged funds that later formed the basis for the Claimed Property,[1] and it was aware that those funds had been frozen under orders of two U.K. courts.  Yet, the U.S. Government chose to take no action of its own.  To the contrary, as recently as 2011, the Government assisted Mr. Bagudu in his efforts to hold public office in Nigeria by not opposing Mr. Bagudu's motion in the Southern District of Texas seeking the extraordinary remedy of expunction of the judicial records related to his extradition proceedings.  The Government's inexplicable and seemingly arbitrary decision to pursue now, years later, a civil forfeiture action against what it alleges are the same assets based on the same core allegations is fundamentally inconsistent with the due process of law.

Nor does the Government seriously contest that in 2003, the Federal Republic of Nigeria entered into a comprehensive Settlement Agreement in which it declared that "no claim of any kind" will attach to property allegedly the source of the Claimed Property that the U.S.

---

[1] Statements in Claimants' Memorandum of Points and Authorities in Support of Claimants' Motion to Dismiss the Government's Complaint for Forfeiture *In Rem* (ECF No. 55) ("Mem.") and in this Reply Memorandum should not be construed as admissions of the veracity of allegations in the Complaint which, for purposes of Claimants' Motion to Dismiss, are presumed to be true.

Government now seeks to forfeit "for the benefit of the people of Nigeria."[2]  Indeed, the Government facilitated Mr. Bagudu's resolution with Nigeria by joining in Mr. Bagudu's request for bail so as to allow him to travel to the U.K. and Nigeria to execute the settlement and ultimately moving to dismiss the extradition proceeding.  The Government's pursuit of this civil forfeiture action after the passage of so much time upsets the reasonable settled expectations of Claimants as to their unimpaired interests in the Claimed Property, and is foreclosed by Nigeria's prior decision that the funds the Government attempts to trace to the Claimed Property are not subject to any future claims.  As a matter of international comity and out of respect for the sovereign acts of the government of Nigeria, this Court should not allow the U.S. Government to circumvent and violate the clear terms of the Settlement Agreement.

However, the Court need not even reach the serious constitutional concerns raised by the Government's excessive delay, or decide whether to decline jurisdiction in accordance with principles of international comity, because the Complaint simply fails to state a claim for forfeiture of the Claimed Property.  Among other things, the Government fails to allege sufficient facts to establish the commission of a specified unlawful activity required for the predicate money laundering offenses on which it bases its claims for forfeiture.  Specifically, the Complaint fails to establish that the Debt Buy-Back Transaction violated any laws, and, with respect to the Security Votes Transaction, the Complaint does not allege that any person who transported the associated funds in foreign commerce did so with knowledge that they were the proceeds of crime.  Similarly, the Complaint fails to allege facts sufficient to establish that any

---

[2] The Government made this representation to the U.K. Commercial Court in support of maintaining the asset freeze over the Claimed Property in the U.K.  *See* Mem. at 51-52 (quoting United States Skeleton Argument, ECF No. 39-7, p.8).  However, in an attempt to rebut Claimants' international comity and act of state arguments, the Government backs away from its prior submission and now emphasizes that the purpose of this action is to enforce U.S. anti-money laundering laws "due to the defendant assets' involvement in violations of U.S. criminal laws."  United States' Opposition to the Claimants' Motion to Dismiss Government's Verified Complaint for Forfeiture *In Rem* (ECF No. 73) ("Opp'n"), at 39 & n. 15.

person who engaged in the transactions that purportedly laundered those proceeds knew that he was handling criminally derived property.  The U.S. money laundering statutes are not strict liability crimes.  Moreover, the Government fails to sufficiently trace the bulk of the proceeds of the alleged criminal activity to the Claimed Property, instead it relies on untenable theories of asset "tainting" which are not supported by the allegations in the Complaint and would yield an inappropriate windfall for the Government.

The Government can neither ameliorate its constitutional violations nor satisfy the principles of international comity by amending its pleadings.  Given the years it has already had to assemble this Complaint since it was first placed on notice of the underlying allegations, it is unlikely that the Government would now be able to fill in the gaping holes in the Complaint if it were granted leave to replead.  A decade is enough.  The Government should not be afforded any additional time and delay to the prejudice of Claimants.  Accordingly, the Court should dismiss the Complaint as to the Claimed Property with prejudice.

<u>**ARGUMENT**</u>

**I.**     **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

The Complaint fails to plead specific facts sufficient to establish violations of the anti-money laundering statutes (18 U.S.C. §§ 1956(h) and 1957) on which the Government's forfeiture claims rest.  In particular, the Complaint fails to allege specific facts that demonstrate the person who purportedly engaged in the alleged specified unlawful activity had the required *mens rea* and knowledge to make the activity unlawful in the first place.  The Complaint similarly fatally fails to allege specific facts demonstrating that any person conducting the financial transactions ***knew*** that the transactions involved proceeds of that specified unlawful activity.  Finally, the Government also fails to allege sufficient facts to trace the proceeds of the

alleged crimes to the Claimed Property.  Therefore, the Court should dismiss the Complaint as to

the Claimed Property under Federal Rule of Civil Procedure 12(b)(6) and Rule G(2)(f) of the

Supplemental Rules for Admiralty or Maritime Claims and Forfeiture Actions ("Supplemental

Rules").

### A.      The Complaint Fails to Sufficiently Plead the Specified Unlawful Activity Necessary to Support its Money Laundering Claims

In an attempt to save its insufficiently alleged Complaint, the Government contends,

without citation to any authority, that it is not obligated to plead facts sufficient to demonstrate

the elements of the specified unlawful activity underlying its money laundering-based forfeiture

claims.  Opp'n at 12 n.3.  To the contrary, the Government is subject to a "heightened burden for

pleading," *United States v. All Assets held at Bank Julius Baer & Co.,* 571 F. Supp. 2d 1, 16

(D.D.C. 2008) (hereinafter "*Bank Julius Baer*"), for which there are "no exceptions."  *United*

*States v. 38,000.00*, 816 F.2d 1538, 1548 (11th Cir. 1987).  Under Supplemental Rule G(2)(f),

the Government is required to "state sufficiently detailed facts to support a reasonable belief that

the government will be able to meet its burden of proof at trial" and "allege enough facts such

that the court may infer that the property is subject to forfeiture."  *United States v. One*

*Gulfstream Jet G-V Jet Aircraft*, 941 F. Supp. 2d. 1, 14 (D.D.C. 2013) (hereinafter "*Gulfstream*

*Jet*").  These heightened pleading standards impose a burden on the Government that is more

exacting than the liberal notice pleading standard under Federal Rule of Civil Procedure Rule

8(a)(2), *id*. at 14, and are "designed to guard against the improper use of seizure proceedings and

to protect property owners against the threat of seizure upon conclusory allegations."  *Id*.  This

burden necessarily requires the Government to allege specific facts to demonstrate satisfaction of

each element of the specified unlawful activity and of money laundering, including the requisite

scienter.  The Government has failed to meet this burden.

4

## 1. The Complaint Fails to Plead that the Debt Buy-Back Transaction Violated Any Laws

In order to plead a violation of 18 U.S.C. § 1956(c)(7)(B)(iv), the Government must allege facts demonstrating the "***misappropriation, theft, or embezzlement of public funds*** by or for the benefit of a public official." (emphasis added). Aside from conclusory allegations, the Complaint fails to allege anything corrupt or fraudulent about the Debt Buy-Back Transaction. Instead, the Government merely alleges transactions where the Nigerian government paid more to retire bonds than the U.S. Government believes it should have paid. Recognizing that mere capitalism is not a crime and that it has failed to plead the requisite unlawful conduct, the Government attempts to salvage its Second Claim for Forfeiture by mischaracterizing the elements of the crime so as to fit the facts it has alleged. In its opposition, the Government contends that 18 U.S.C. § 1956(c)(7)(B)(iv) prohibits "***transactions conducted*** by or for the benefit of a public official." Opp'n at 14 (emphasis added). This legislative legerdemain would essentially criminalize all financial transactions authorized by a public official rather than just the commission of bribery or embezzlement of public funds by a public official. Because the Complaint lacks any allegation that the profits of the Debt Buy-Back Transaction were corruptly gained or inured to the benefit of General Abacha, Anthony Ani or any other alleged public official, it fails to plead a violation of 18 U.S.C. § 1956(c)(7)(B)(iv). *United States v. 2291 Ferndown Lane Keswick VA 22947-9195*, No. 3:10-CV-0037, 2011 WL 2441254, at *4 (W.D. Va. June 14, 2011) (dismissing claim under 1956(c)(7)(B)(iv) where complaint identified a foreign public official as part of alleged bribery scheme but failed to "show [his] involvement in any wrongdoing," and noting that "the conclusory and unadorned allegation that the former president was involved in money laundering" did not "save the claim").

As set forth in Claimants' Motion to Dismiss the Government's Verified Complaint for Forfeiture *In Rem* ("Claimants' Motion"), the allegations concerning the Debt Buy-Back Transaction also fail to establish the specified unlawful activity alleged in the First Claim for Forfeiture.  Specifically, the Complaint fails to establish a reasonable basis for this Court to infer that this transaction was at all fraudulent.  Mem. at 31-34.  In response, the Government generally asserts that it has sufficiently pleaded the alleged criminality of the Debt Buy-Back Transaction because the Complaint "describe[s] the contours of a fraudulent scheme."  Opp'n at 13.  This response deftly ignores the inconvenient legal requirement that in order for the Government to forfeit funds derived from the Debt Buy-Back Transaction, it must specifically allege facts demonstrating that the Debt Buy-Back Transaction itself was fraudulent or corrupt.

The Government's reliance on the single district court decision in *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189 (D.D.C. 2014), to support its arguments is misplaced.  The complaint in *$70,990,605* alleged actual or intended illegal conduct, including bribery and kickbacks.  *Id*. at 201.  In contrast, the Complaint here merely contains conclusory allegations that General Abacha and Finance Minister Anthony Ani "caused" the Nigerian government to enter into agreements for the Debt Buy-Back, that the transactions took place and that the counterparties received substantial profits.  Opp'n at 13 (excerpting Compl. ¶¶ 2, 36, and 41).  Rather than alleging "the contours of a fraudulent scheme," the Complaint merely describes a profitable business transaction between the Nigerian government and private citizens.  Such allegations are insufficient to plead a fraudulent scheme under Rule 8, let alone the heightened pleading requirements required of civil asset forfeiture complaints.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and "where a complaint pleads facts that are merely consistent with a

6

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation and quotations omitted); *R.S.M. Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012) (facts "equally well explained by legitimate economic incentives [] do not suffice to show illegality") (citation and quotations omitted).

Moreover, the Government erroneously asserts that it does not have to plead a specific violation of Nigerian law in order to properly allege a violation of 18 U.S.C. §1956(c)(7) as a specified unlawful activity.  Opp'n at 14.  The Government's reliance upon an inapposite holding in a Ninth Circuit case, *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009), relating to the pleading requirements under Fed. R. Crim. P. 7(c) for criminal indictments, is unavailing. The *Lazarenko* holding, which merely states that "[n]othing in [the 9th Circuit's] case law" supported such a pleading requirement in the context of a ***criminal indictment***, where the Government must only plead "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), is irrelevant to the heightened pleading requirements of an *in rem* forfeiture action.  Unlike a criminal indictment, the pleading standards applicable to a civil forfeiture complaint require the Government to plead a violation of Nigerian law with sufficient specificity to allow this Court to determine whether the forfeiture statute is properly invoked.  *See 2291 Ferndown Lane Keswick VA 22947-9195*, 2011 WL 2441254, at *4 (in action under 18 U.S.C. §§ 981(a)(1)(B) and 1956(c)(7)(B)(iv), dismissing claims based on alleged bribery of public official where government failed to allege foreign bribery statute).

The Complaint, however, fails to specify which specific Nigerian crimes were committed, let alone the facts establishing such violations.  As discussed in Claimants' Motion

(and ignored in the Government's Opposition), several of the statutes cited by the Government are wholly inapplicable in the region of Nigeria in which the Debt Buy-Back Transaction was alleged to have taken place, and the elements of other listed Nigerian offenses would not be satisfied by the factual allegations in the Complaint. Mem. at 33-34 & n.11. Moreover, footnote four of the Government's Opposition, which cautions that the Nigerian statutes cited in the Complaint are a non-exclusive list of the Nigerian predicate offenses for money laundering, appears to indicate the Government's belief that it can rely upon Nigerian statutes not even mentioned in the Complaint as predicates for its forfeiture action. The heightened pleading requirements of Supplemental Rule G(2)(f) do not permit the litigation by ambush the Government apparently intends.

> **2.**     **The Allegations Are Insufficient to Establish the Knowing Transportation or Receipt of Criminal Proceeds in Violation of 18 U.S.C. §§ 2314 or 2315**

In order to adequately plead a violation of 18 U.S.C. §§ 2314 and 2315, the specified unlawful activity alleged in the First Claim for Forfeiture, the Government must allege that an individual received or transmitted money or property in interstate or foreign commerce with knowledge that such money or property derived from criminal activity. Mem. at 34-35. Here, the Government utterly fails to allege that Mr. Bagudu, or anyone else, transmitted funds out of Nigeria **with knowledge** that the funds were proceeds of a crime.

The Government fundamentally misapprehends Claimants' argument—and thus its own pleading burden—with respect to its failure to sufficiently plead violations of 18 U.S.C. §§ 2314 and 2315. Opp'n at 14-16. The Government appears to argue that the *mens rea* at issue for sections 2314 and 2315 is that of the person who stole, converted or took money or property by fraud. *Id*. at 15. To the contrary, under the plain language of both statutes, which the Government only partially quotes in its Opposition, the Government must allege that the person

8

transporting those funds in interstate or foreign commerce knows that the funds are criminally-derived.[3]  *See, e.g., Dowling v. United States*, 473 U.S. 207, 214 (1985); *United States v. Rosa*, 17 F.3d 1531, 1546 (2d Cir. 1994).

Viewed in the proper context, the Complaint wholly fails to allege that any person who transferred alleged criminal proceeds into foreign commerce or received, possessed or disposed of such proceeds after they crossed a U.S. boundary knew they were the proceeds of crime.  As discussed above, the Complaint in the first instance fails to establish any illegality with respect to the Debt Buy-Back Transaction.  Regarding the Security Votes Transaction, the Complaint alleges that General Abacha, Ismaila Gwarzo "and others"[4] participated in the alleged criminal scheme, but fails to allege that any of these actors who purportedly had knowledge of the crime actually transported the alleged fraud proceeds out of Nigeria.  Compl. ¶¶ 30-35.  The Complaint fails to allege that any person who did transfer these funds in interstate or foreign commerce knew of their source.  *Id.*  At most, the Complaint alleges that Mr. Bagudu, a private citizen, transferred large sums of money he received from Mohammed Abacha, who is not alleged to be a public official, to accounts in foreign countries.  Compl. ¶ 10.  This bare allegation is insufficient to establish that Mr. Bagudu possessed the requisite scienter under 18 U.S.C. §§

---

[3] The Government's confusion is most evident in its erroneous contention that "the Claimants do not dispute that the Securities Votes Fraud allegations, which themselves establish the forfeitability of the [Claimed Property] by showing that monies embezzled from Nigeria were transported out of Nigeria and into and out of the United States through the U.S. financial system in violation of 18 U.S.C. §§ 1957, 2314, and 2315."  Opp'n at 12.  Contrary to the Government's characterization, Claimants explicitly challenged the sufficiency of the Security Votes Transaction allegations, as under each of the applicable statues, the mere transportation of criminally-derived funds does not create liability.  Mem. at 34-38.  Sections 2314 and 2315 are not strict liability crimes.  Moreover, there is no basis for the Government to represent to the Court that Claimants' Motion, which must by law accept the Complaint's allegations as true for purposes of the Motion, should be construed as not disputing the allegations.

[4] The Government may not rely on its vague pleading that unidentified "others" participated in the Security Votes Transaction to create an inference of *mens rea* with respect to the allegations of the transactions underlying its claims under 18 U.S.C. § 1957, 2314 and 2315.  See *United States ex rel. El-Amin v. George Washington Univ.*, Civil Action No. 95-2000 (JGP), 2005 WL 485971, at *7 (D.D.C. Feb. 25, 2005)  (for purposes of pleading a complaint, "inclusion of the phrase 'among others' destroy[ed] its particularity").

2314 and 2315.  *See United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002) (the presence of a significant amount of oddly packaged cash does not in itself suggest a connection to illegal activity).[5]

Nevertheless, the Government asks this Court to leap to the conclusion that the purportedly "fraudulent conduct" otherwise alleged in the Complaint necessarily gives rise to an inference that the person transporting the funds knew that they were criminally derived.  Opp. at 15.  In doing so, the Government relies on cases involving conduct that could rarely, if ever, be perceived as legitimate.  *See United States v. Approximately $50,205.00 in U.S. Currency*, No. 12-cv-1183, 2013 WL 372 9573 (E.D. Wisc. July 12, 2013) (sales of controlled substances); *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338,* No. 06-cv-3730, 2008 WL 304 9895 (E.D.N.Y. Aug. 1, 2008) (backdating of commercial transactions); *United States v. Portrait of Wally, A Painting by Egon Shiele*, No. 99-Civ. 9940, 2002 WL 553532 (S.D.N.Y. April 12, 2002) (confiscation of property from rightful Jewish owners by members of the Third Reich).  In contrast, the cross-border transportation of funds alleged here is not inherently criminal in nature, and could have been carried out by innocent actors.  Thus, there is no basis for the Court to fill in the gaps in the Complaint by inferring the requisite *mens rea.  See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994) (the Court "need not accept inferences drawn by the plaintiff [ ] if such inferences are not supported by the facts set out in the complaint").

---

[5] The Government argues that "Mr. Bagudu's personal liability is not dispositive of whether the defendant assets are subject to forfeiture in the U.S."  Opp'n at 16.  However, as discussed above, Mr. Bagudu's *mens rea* is integral to whether the Government sufficiently pled violations of 18 U.S.C. §§ 2314 and 2315 and also the money laundering violations alleged.

**B.     The Complaint Fails to Plead Facts to Establish the Necessary *Mens Rea* for Money Laundering and the Existence of a Conspiracy**

As set forth in Claimants' Motion, the Complaint lacks specific allegations, required by 18 U.S.C. § 1957, that the persons who engaged in the alleged money laundering transactions knew that they were dealing with proceeds of criminal activity.  Mem. at 36-38.  The Complaint also fails to adequately allege the existence of an explicit or tacit agreement to commit a money-laundering offense.  Remarkably, in its Opposition, the Government argues that it is not required to plead such specific allegations at all, notwithstanding the heightened pleading standard applicable to this case.  Opp'n at 17.  However, none of the cases the Government cites in support of its argument excuse the Government from pleading basic facts required to establish the criminal conduct giving rise to its forfeiture claims.  *See, e.g., United States v. All Funds on Deposit in, or transferred to or through, Banc of America Account Number 207-00426 held in the Name of Kenneth V. Jaeggi and Patti S. Jae*, No. CV-05-3971(SJF), 2007 WL 2114670 (E.D.N.Y. Jul 16, 2007) (in considering motion to dismiss forfeiture complaint, evaluating whether government had pleaded elements of wire and securities fraud underlying forfeiture allegations; *United States v. Alaniz*, 726 F.3d 586, 602 (5th Cir. 2013) (elements of 18 U.S.C. § 1957 include "knowledge that the property was derived from unlawful activity").

The Government erroneously relies upon inapposite holdings to support its contention that it is not required to allege facts sufficient to establish the essential *mens rea* element of money laundering.  Opp'n at 17 n. 5.  For instance, the Court in *United States v. Ursery*, 518 U.S. 267, 291 (1996), considered a scienter requirement solely with respect to the current owner of forfeitable property in the context of determining whether civil *in rem* forfeiture is "punishment" subject to Double Jeopardy.  The claimant in *United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 656 F. Supp. 2d 87 (D.D.C. 2009), sought dismissal on the basis that his due

11

process rights were violated, not because the allegations of the complaint were defective. Finally, the dissent in *United States v. Bajakajian*, 524 U.S. 321, 355 (1998), a criminal forfeiture case, is not even controlling law.

The Government asks this Court to infer required criminal knowledge from conclusory allegations that the alleged conspiracy members "invested the proceeds of the schemes," "pooled the proceeds" or "caused the transfer" of Nigerian Par Bonds ("NPBs") allegedly purchased with these proceeds. Opp'n at 16-17 (excerpting Compl. ¶¶ 57-58, 80.) However, these bare allegations provide no basis to reasonably infer that any of the transactions at issue were conducted by individuals who had knowledge that funds were criminally-derived.[6] Tellingly, with regard to the Debt Buy-Back Transaction in particular, even when faced with a sufficiency challenge the Government points to no specific factual allegations on which the Court could reasonably infer the requisite criminal intent. Rather, in support of its argument, the Government is forced to rely upon a single criminal case, which is not on point, where the indictment alleged criminal conduct (armed robbery) that could only have been committed by the defendant with the requisite mental state, regardless of whether the indictment explicitly included the word "knowingly." Opp'n at 17 (citing *United States v. Woodruff*, 296 F. 3d. 1041, 1046-47 (11th Cir. 2002)). Putting aside the fact that the Government's pleading burden is substantially different in this civil forfeiture action, the financial transactions alleged in the Complaint to have constituted money laundering are not inherently criminal. Thus, the Complaint fails to allege specific facts

---

[6] The Opposition also improperly attempts to bolster the minimal facts alleged in the Complaint with new conclusory allegations, such as that the transacting entities are merely shell companies. Opp'n at 18 (citing Compl. ¶ 58, which does not refer to these companies as being shells and instead describes corporate actions); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (holding it is "axiomatic" that a complaint may not be amended by briefs in opposition to a motion to dismiss). Even if the additional facts were properly raised, such conclusory allegations are insufficient to show that the persons actually transacting with the funds had knowledge of their alleged criminal origin for each of the alleged money laundering transactions.

to support an inference that the person(s) engaged in the alleged monetary transactions knew that they were handling the proceeds of crime.

Finally, in an apparent concession that the Complaint fails to allege the existence of an explicit conspiratorial agreement in support of its Third Claim for Forfeiture, the Government's Opposition argues that the Complaint's allegations of joint business activity between Mohammed Abacha and Mr. Bagudu are sufficient for the Court to infer the existence of a "tacit" understanding.  Opp'n at 18.  However, joint business decisions alone are insufficient to infer a conspiracy to promote an "unlawful scheme," especially absent allegations that both members of the supposed conspiracy knew of the criminal character of the various funds.  *See, e.g., United States v. Johnson*, 440 F.3d 1286, 1296 (11th Cir. 2006) (vacating conspiracy money laundering conviction where government did not prove that second member of alleged conspiracy knew that the funds used to purchase joint investment were criminally derived).  Here, the Government has pleaded no basis to infer that the parties "agreed to purchase [assets] with proceeds from the [] fraud in order to promote the unlawful scheme," *id*. at 1296, and the Government's Third Claim for Forfeiture must be dismissed.

### C.  The Complaint Fails to Sufficiently Trace the Claimed Property to Criminal Proceeds

The Complaint should also be dismissed because it fails to plead an adequate basis for tracing the proceeds of the Security Votes and Debt Buy-Back Transactions to the Claimed Property.  Contrary to the Government's suggestion that insufficient tracing allegations cannot be a basis for dismissal, Opp'n at 21, courts have dismissed cases where the Government failed to show at the pleading stage that it would "be able to trace the proceeds of the alleged criminal activity to [the] purchase of the Property."  *United States v. One Partially Assembled Drag Racer*, 899 F. Supp. 1334, 1341 (D.N.J. 1995); *see also, e.g.*, *Gulfstream Jet*, 941 F. Supp. 2d. at

13

16 (dismissing forfeiture complaint where tracing allegations were limited to claims that alleged wrongdoer's "outlandish wealth" must have resulted from alleged criminal acts).

The Government's arguments in support of its tracing allegations are wholly unpersuasive. The Government relies on generalized, conclusory allegations regarding the origin of various balances located outside of Nigeria, *see* Opp'n at 21, and assumes that the deposits of minimal "traced" proceeds to various accounts taint the full balances of those accounts. *See* Opp'n at 22-27. Neither approach satisfies the Government's pleading burden.

The Complaint must first trace criminally derived proceeds to the alleged accounts maintained at ANZ London because the funds used to purchase the NPBs allegedly originated from this account. A close examination of the Complaint reveals that less than $24 million of the funds transferred to ANZ London is specifically alleged to have had contact with the U.S.[7] While the Complaint generally asserts that the Government has purportedly traced over $190 million in fraud proceeds to ANZ London, these conclusory allegations are insufficiently detailed to satisfy the tracing requirements of forfeiture. *Gulfstream Jet,* 941 F. Supp. 2d at 16. The Government's misplaced reliance on *United States v. Contents of J.P. Morgan Chase Bank, N.A., Account No. xxxxxx9951,* No. 10-551, 2011 WL 6217123 (S.D. Ala. Dec. 13, 2011), does not save its Complaint because in that case, unlike here, the Government's complaint provided "dates, locations, and dollar amounts" as it traced the specified criminal proceeds from their initial bank deposit to the account from which it was ultimately forfeited. *Id*. at *4. Here, the Government's summary allegations do not provide nearly the same level of detail.

---

[7] This approximately $24 million includes the $18.3 million in Security Votes Transaction proceeds alleged in Compl. ¶ 35(a) and its subparagraphs, the $3.2 million in Debt Buy-Back Transaction proceeds alleged in Compl. ¶ 51 and the approximately $2.4 million in Debt Buy-Back Transaction proceeds alleged in Compl. ¶ 81, which are all alleged to have travelled through correspondent banks in the U.S. before arriving at ANZ London.

Recognizing that it has only traced a small portion of the funds allegedly transferred from Nigeria to ANZ London, the Government falls back on the argument that the full balance at ANZ London is nevertheless "tainted" and that all outflows from ANZ London are money laundering transactions of tainted funds.[8]  To do so, for the first time in its Opposition, the Government advances a "facilitation theory"—that "clean" funds in a commingled account become tainted and forfeitable because they facilitate a money laundering offense.  Opp'n at 22.  However, "[f]acilitation of a laundering offense occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance."  *In re 650 Fifth Ave. and Related Props.*, 777 F. Supp. 2d 529, 564 (S.D.N.Y. 2011) (quoting *United States v. Huber*, 404 F.3d 1047, 1060 (8th Cir. 2005)).  Indeed, the primary facilitation cases cited by the Government both rely on *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir.1998), which holds that "the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture," and that "[f]orfeiture of commingled funds" is only "proper when the government demonstrates that the defendant pooled the funds to facilitate or 'disguise' his illegal scheme."[9]

---

[8] The Government relies on *United States v. All Funds on Deposit at Dime Savings Bank*, 255 F. Supp. 2d 56, 68 (E.D.N.Y. 2003), for the proposition that the money laundering statutes merely require that the Government show tainted money flowing into a bank account and withdrawals occurring afterward.  The *Dime Savings Bank* court's tracing conclusions rely on *United States v. Moore*, 27 F.3d. 969, 976 (4th Cir. 1994)), and its progeny.  Courts in this Circuit have not adopted *Moore's* analysis, *see United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1354 (D.C. Cir. 2002) (comparing tracing approaches with respect to commingling), and it should not be applied in this case.

[9] *See* Opp'n at 22 (citing *United States v. Nicolo*, 597 F. Supp. 2d 342, 347-48 (W.D.N.Y. 2009), and *United States v. Puche*, 350 F.3d. 1137, 1154 (11th Cir. 2003)).  The Government cites similar case law in erroneously arguing that the full balances on deposit in the Blue Holdings portfolios would be forfeitable due to tainted deposits.  *See* Opp. at 26.  However, *United States v. Jamieson*, 427 F.3d 394, 404 (6th Cir. 2005), relied on by the Government for the proposition that commingled pooled funds all become forfeitable, is a case under 18 U.S.C. § 1956, which has a concealment element.  *Jamieson* also relies on a line of cases including *United States v. Tencer*, 107 F. 3d 1120, 1130-31 (5th Cir. 1997), which state that "merely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture."  The Government also attempts to taint full balances using case law regarding forfeiture of indivisible real property purchased with commingled funds.  *See United States v. Coffman*, 859 F. Supp. 2d 871 (E.D. Ky. 2012) (yacht purchased in with commingled laundered proceeds); *United States v. Real Property Known as 1700 Duncanville Rd.*, 90 F. Supp. 2d 737, 741 (N.D. Tex. 2000) (purchase of real

The Complaint is devoid of any allegations that the "clean" funds on deposit at ANZ London facilitated the alleged money laundering by concealing the origin or nature of the alleged fraud proceeds.  The Government's argument in its Opposition is in any event nonsensical.  The cursory allegations that the "pooled" funds enabled certain transactions are undermined by other allegations that NPBs were purchased in small tranches over time rather than by a pooled account balance.  Hence, the presence of clean funds in the accounts at ANZ London is incidental to the alleged laundering violation, and these funds would not be tainted under a facilitation theory, had it actually been pled in the Complaint, which it was not.[10]

Lastly, even assuming that the Government's pleadings adequately traced tainted funds through the ANZ London accounts to the purchase of the NPBs, which allegedly ultimately liquidated to fund the Claimed Property—which they have not—the Government has not pleaded any basis to forfeit the entirety of the Claimed Property.[11]  *See United States v. Bornfield*, 145 F. 3d 1123, 1135 (10th Cir. 1998).  The Government seeks to forfeit all of the assets of the Blue Holdings portfolios on the basis that "tainted" funds reached these accounts.  However, the Complaint is silent as to the full composition of these accounts: the Government has not provided a basis to believe that there are no clean funds in the accounts, or that any such clean funds have helped to facilitate laundering crimes or conceal tainted deposits.  Compl. ¶¶ 84-85.

---

property in money laundering transaction); *United States v. One 1987 Mercedes Benz 300 E.*, 820 F. Supp. 248, 252 (E.D. Va. 1993) (money derived from extortion used to purchase vehicle in laundering transaction).  None of these cases support the forfeiture of comingled fungible balances.

[10] Even *United States v. All Monies in Account No. 90-3617-3*, 754 F. Supp. 1467, 1473 (D. Haw. 1991), the case the Government characterizes as the "seminal" case regarding facilitation theory on money laundering forfeitures, holds "there must be more than an incidental or fortuitous connection between the property and the illegal activity." In that case, the commingled account was alleged to be "cover" to conceal criminal activity to make it appear to be legitimate exchanges of currency, and thus not incidental to the money laundering.  *Id*. at 1475-76.

[11] Contrary to the Government's assertions in its Opposition, Claimants have not conceded that the Claimed Property is traceable to fraud proceeds (Opp'n at 24-25); rather, Claimants have merely stated that funds cleared under the Settlement Agreement are the funds the Government attempts to trace to the Claimed Property.

16

In the absence of such allegations, the Government has no basis to forfeit potentially untainted funds.

Absent unreasonable assumptions and inferences to which the Government is not entitled, the Complaint has not adequately traced the alleged proceeds of fraud from Nigeria to the Claimed Property.  The Complaint should be dismissed on this basis alone.

## II.  THE GOVERNMENT'S OPPRESSIVE DELAY IN FILING THIS FORFEITURE ACTION HAS PREJUDICED CLAIMANTS' DEFENSE AND DENIED THEM DUE PROCESS

The Government does not dispute that it had extensive knowledge about the alleged misappropriation of public funds during the administration of General Abacha since at least Mr. Bagudu's extradition proceedings in 2003.  Thus, for at least a decade, the Government sat idly by with full knowledge of the alleged acts on which it now bases its forfeiture claims.  Moreover, having secured the detention of Mr. Bagudu for allegations that in many instances mirror those in the Complaint, the Government facilitated the settlement with Nigeria by agreeing to Mr. Bagudu's release and dismissing the extradition proceeding to enable the settlement to occur. While the Government meekly claims to have been merely following the wishes of other governments, an Assistant U.S. Attorney sworn to enforce U.S. laws who was in possession of allegations mirroring many of those in the Complaint decided not to prosecute Mr. Bagudu for any purported U.S. violations and instead released him to execute a settlement with Nigeria regarding assets allegedly stolen by General Abacha and others.  Tolling the five-year statute of limitations applicable to this action under these circumstances would violate due process and would put Claimants in the fundamentally unjust position of having to defend against allegations of events that occurred almost 20 years ago.

The Government attempts to dodge the obvious and disturbing implications of its decision to delay commencement of this action by arguing that Claimants lack due process rights

because they are foreign nationals without sufficient ties to the U.S.[12]  The Government's

argument is a smokescreen.  The Government completely ignores the fact that minor Claimant

I.A.B. is an American citizen entitled to due process protections no matter where in the world

she resides.  *See, e.g., Reid v. Covert*, 354 U.S. 1, 5 (1957) (rejecting the idea that when the U.S.

acts against citizens abroad it can do so free of the Bill of Rights) (plurality opinion of Black, J.);

*Colello v. S.E.C.*, 908 F. Supp. 738, 754 (C.D. Cal. 1995) ("The Bill of Rights unquestionably

protects a [United States] citizen or his property from incursions by the U.S. government

regardless of location.").  For this reason alone, the Court may properly consider Claimants' due

process concerns.

The Government's substantive arguments are equally unpersuasive.  For instance, the

Government responds to arguments Claimants did not even make in their Motion.  The

Government chastises Claimants for "ignoring precedent holding that the Sixth Amendment is

inapplicable in civil forfeiture cases."  Opp'n at 29.  However, Claimants have not invoked the

Sixth Amendment.  Rather, they argue that the Government's more than 10-year, pre-seizure

delay in initiating these proceedings violates their ***Fifth Amendment*** rights to due process,

analogizing this case to the unconstitutional pre-indictment delay recognized by the Supreme

Court in *United States v. Marion*, 404 U.S. 307, 322-23 (1971), and *United States v. Lovasco*,

431 U.S. 783, 788-89 (1977).  Notably, in its Opposition, the Government concedes that the Fifth

Amendment, including due process protections against certain unreasonable delays, applies to

---

[12] Remarkably, the Government fails to cite any case law in support of its argument that Claimants lack standing to
raise a due process challenge, but rather cites generally to a footnote in Claimants' Motion.  Opp'n at 28.  The
Government further neglects to rebut the cases referenced in Claimants' footnote supporting the position that
Claimants should be permitted to present a constitutional challenge to the Government's excessive delay in bringing
this forfeiture action, irrespective of their citizenship, present location or contacts to the U.S.  Mem. at 19 n.7 (citing
*United States v. Tchibassa*, 452 F.3d 918, 921 n.1 (D.C. Cir. 2006), *United States v. Wanigasinghe*, 545 F.3d 595,
597 (7th Cir. 2008), and *United States v. Kashamu*, No. 94 CR 172-15, 2014 WL 1647790 (N.D. Ill. Apr. 23,
2014)).

civil forfeiture proceedings.  Opp'n at 30 n.12 (addressing *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555 (1983)).  The analogy advanced by Claimants in this case is virtually identical to the position taken by the Government before the Supreme Court in *$8,850 in United States Currency*. [13]  461 U.S. at 564.

Under the test articulated by the Supreme Court in *Lovasco* and *Marion*, the Government's delay in bringing this action violated Claimants' due process rights because the delay was a purposeful device to gain a tactical advantage over Claimants and prejudiced Claimants' ability to defend against the Government's allegations.  *United States v. Mahoney*, 698 F. Supp. 344, 346 (D.D.C. 1988).  In response, the Government argues only that Claimants have not shown prejudice.  However, the Government's claim is belied by the fact that a Government agent has already acknowledged under oath that complete records are no longer available for some of the key corporate entities identified in the Complaint.  Mem. at 22-23 (quoting Skeleton Argument of the Proposed Claimant [United States] at ¶ 31, ECF No. 50-5, p. 8 ("In some cases, complete information is not available.  For example, there is not a complete record for Standard Bank . . .")).  Specifically, bank records of the type necessary for Claimants to defeat the Government's tracing arguments may now be lost.

Remarkably, the Government does not even attempt to justify its lengthy delay in commencing this action aside from a cursory statement that its case "was the culmination of years of investigation spanning multiple jurisdictions."  Opp'n at 27.  The Government's failure to provide any legitimate reason for its delay should be enough to infer that it acted with an

---

[13] The Government also mischaracterizes Claimants' citation to *$8,850 in United States Currency*.  Contrary to the Government's assertions, Claimants did not suggest that *$8,850 in United States Currency* was directly applicable in this case, as that case focused on ***post-seizure*** delays in initiating forfeiture proceedings, whereas here, the Government's excessive delay in initiating the forfeiture proceedings occurred ***before*** the assets were seized.  Opp'n at 30 n.12.  Claimants referenced *$8,850 in United States Currency* simply to note that the Supreme Court has embraced the notion that civil forfeiture actions implicate similar due process concerns as criminal actions with regard to excessive delays.

improper motive.  *Cf. United States v. Cooper*, Cr. No. 86-422, 1987 WL 9508, at *1 (D.D.C.

Apr. 6, 1987) (dismissing indictment and finding that there was a violation of due process when

"there was no good, or even known, reason for the forty-month delay between investigation and

indictment").

### III.  THE COURT LACKS JURISDICTION TO ADJUDICATE CLAIMANTS' INTEREST IN THE CLAIMED PROPERTY

The Government claims that this Court has *in rem* jurisdiction over the Claimed Property

under 28 U.S.C. § 1355(b).  While under Section 1355(b) the Court may have jurisdiction over

the Claimed Property as a statutory matter, the Court may only exercise that jurisdiction in

accordance with constitutional mandates and Supreme Court precedent.  As Claimants noted in

their Motion, *see* Mem. at 24-26, because *in rem* actions ultimately concern the rights of ***people***

in property, exercises of *in rem* jurisdiction must be consistent with the familiar constitutional

requirements of minimum contacts and fair play and substantial justice.  *See Shaffer v. Heitner*,

433 U.S. 186, 207-08 (1977).  The determination of foreign Claimants' rights and interests in

Claimed Property, which is located outside the U.S., based solely on certain funds' fleeting

contacts with the U.S. financial system through financial transactions conducted long ago by

third parties to this litigation, does not comport with the requirement of minimum contacts and

the traditional notions of fair play and substantial justice.

The Government in its Opposition erroneously interprets *Shaffer* and argues that

Claimants' ties to the U.S.—or lack thereof—are wholly irrelevant to the jurisdictional inquiry as

once the court has *in rem* jurisdiction over the defendant property, personal jurisdiction over the

claimants is unnecessary.  Opp'n at 34.  The Government's sole support for this proposition is a

parenthetical for a citation to Wright & Miller in *Tennessee Student Assistance Corp. v. Hood*,

541 U.S. 440, 453 (2004).[14]  However, *Tennessee Student* concerned whether a bankruptcy proceeding to discharge student loan debt was a suit against a State for Eleventh Amendment sovereign immunity purposes, *id*. at 443, and in no way overturned or distinguished *Shaffer*. *Tennessee Student* did not address whether foreign litigants with no contacts whatsoever to the U.S. could be haled into a U.S. court to contest U.S. claims to their property located outside the U.S.  On that issue, *Shaffer* mandates that "in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing."  *Shaffer*, 433 U.S. at 207 (quotations omitted).  *See also United States v. Premises Known as Lots 50 & 51, 2050 Brickell Ave., Miami, Fla.*, 681 F.Supp. 309, 312 (E.D.N.C. 1988) ("Focusing solely on the location of the property ignores both the purpose of forfeiture proceedings and the real interests at stake, those of the person, not the property.").

The Government's remaining arguments are similarly without merit.  Presuming that the "minimum contacts" test is satisfied, the Government argues that the Court's exercise of jurisdiction here would comport with fair play and substantial justice on the grounds that the U.S. has a "significant interest in the enforcement of its money laundering laws" and an interest in "obtaining the relief sought by the forfeiture."  Opp'n at 33.  The Government, however, wholly ignores the requirement that the Court also must consider the burden placed on foreigners when they are forced to litigate within the U.S., *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987), and with good reason.  The Government cannot seriously dispute that requiring Claimants to defend the Government's claims from

---

[14] The parenthetical paraphrases the following single sentence in the third edition of Wright & Miller's *Federal Practice and Procedure*: "[t]he fact that the court cannot obtain jurisdiction over the person of all defendants or claimants to the property is considered irrelevant to whether in rem or quasi-in-rem jurisdiction is constitutionally permissible."  However, Wright & Miller's support for this statement was a single district court case and a law review article, both of which predated *Shaffer*.  4A C. Wright & A. Miller, Federal Practice and Procedure § 1070 (3d ed. 2002).

thousands of miles away in Nigeria would impose an overwhelming burden on them, far outweighing the U.S.'s purported interest in this action.

The Government finally argues that this entire discussion is academic because Claimants have subjected themselves to the jurisdiction of this Court by submitting claims. The Government supports its argument with cases involving litigants who, unlike the Claimants, had actually intervened in the pending actions. Opp'n at 36.[15] However, the Government completely ignores contrary authorities dating back to the 19th Century which provide that the mere filing of a claim in a civil forfeiture action does ***not*** constitute a submission to personal jurisdiction. *See, e.g.*, *United States v. 51 Pieces of Real Property Roswell, N.M.*, 17 F.3d 1306, 1313 (10th Cir. 1994) (rejecting the idea that a claimant submits to the personal jurisdiction of a court simply by filing a claim because "a claimant must either file a claim or risk losing all interest in the property"); *United States v. One Single Family Residence Located at 6960 Miraflores Ave.*, 932 F.2d 1433, 1436 (11th Cir. 1991) (stating that in an *in rem* action, the property is the defendant and the claimants are merely invited to file claims; the claimants are neither named as defendants nor "summoned into court under Fed.R.Civ.P. 4"), rev'd on other grounds sub nom, *Republic Nat'l Bank v. United States*, 506 U.S. 80 (1992); *United States v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175, 1189 (C.D. Cal. 2005) ("The court is not concluding that merely appearing in the *in rem* action is sufficient to establish personal jurisdiction."); *Caesars World, Inc. v. Caesars-Palace.Com*, 112 F. Supp. 2d 505, 509 (E.D. Va. 2000) ("*in personam* jurisdiction cannot be based merely on an appearance in an *in rem* action");

---

[15] The Government cites to the case of *United States v. 8 Gilcrease Lane*, Quincy, Fla. 32351, 641 F. Supp. 2d 1, 4 (D.D.C. 2009) for the proposition that claimants in a civil forfeiture action should be treated in the same manner as intervenors. While that court did compare putative claimants to intervenors, the court *was actually considering motions to intervene*, which were filed by third parties after the original claimants voluntarily withdrew their claims. *See id.* at 2-4. Thus, it is unsurprising that the court evaluated the motions under the standards applicable to intervention.

*The Monte A.*, 12 F. 331, 334-36 (S.D.N.Y. 1882) (refusing to enter personal judgment against owner of vessel who appeared to contest the seizure of the vessel due because, in the absence of "due notice or citation which shall preserve the essential rights of the parties," the court lacked personal jurisdiction over the owner).

## IV.   PRINCIPLES OF INTERNATIONAL COMITY AND ACT OF STATE DOCTRINE REQUIRE DISMISSAL

The Government does not and cannot dispute that Nigeria fully and finally settled any and all claims against Mr. Bagudu and his relatives and corporate interests related to the alleged misappropriation of public funds by General Abacha's regime, and declared that no future claims will attach to funds which the Government attempts to trace to the Claimed Property.  Under these unique circumstances, the international comity and the act of state doctrines must apply and the Court should dismiss the Complaint.

The Government argues application of the international comity and act of state doctrines is inappropriate at this stage because the Court would be required to resolve disputed facts. However, the only "disputed fact" that the Government references is which "version" of the Settlement Agreement would apply.  While Claimants requested the Court take judicial notice of multiple revisions/amendments of the Settlement Agreement for the sake of completeness, the original agreement and amendments of the Settlement Agreement submitted to this Court include the same undisputed declaration: that the assets from which the Government alleges the Claimed Property derives would be held by Mr. Bagudu, his family and his corporate interests "free from any claims existing or future, direct or indirect, contemplated or otherwise by the FRN or in whole or part at its behest or on its behalf or for its benefit."  *Compare* Declaration of Patrick T. Campbell in Support of Claimants' Motion to Dismiss (ECF. No. 55-1) ("Campbell Decl."), Ex. I, p. 12 *with* Campbell Decl., Ex. K, p. 13 *and* Campbell Decl., Ex. K, p. 33.

The Government also overreaches in suggesting that the international comity and act of state doctrines are inapplicable when the Executive Branch brings the action at issue.  Opp'n at 37.  While the principles underlying these doctrines may apply with less force when the Executive Branch decides to file a case, the Government cites no binding authority holding that these doctrines ***cannot*** be applied when the Government is a party to an action.  The unique circumstances of the instant case justify a departure from the general deference shown to the Executive Branch.

The Government further erroneously argues that the Settlement Agreement should not preclude this action because the foreign action resulting in the Settlement Agreement did not comply with U.S. conceptions of due process or account for U.S. interests in preventing its financial institutions to be used in international fraud.  However, the prerequisites that the Government recites—such as the requirement for a "full and fair trial," Opp'n at 39—are standards that apply when determining whether to give effect to a ***final judgment*** rendered by a foreign court in a foreign proceeding for purposes of *collateral estoppel* or *res judicata*, rather than general principles of international comity.  The Government advocates for an overly restrictive understanding of the deference to be afforded to the sovereign acts of foreign governments, which extend beyond court judgments to legislative and executive acts, including instances where a foreign government has determined the most appropriate way to resolve claims arising from activity on its own soil.  *See Hilton v. Guyot*, 159 U.S. 113, 164 (1895) (comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation"); *Cf. Bi v. Union Carbide Chem. and Plastics, Inc.*, 984 F.2d 582, 586 (2d Cir. 1993).  Here, Nigeria's decision to fully and finally resolve all claims against Mr. Bagudu and his family arising from his alleged involvement with the Abacha administration was

an exercise of Nigeria's executive power in a settlement executed by Nigeria's Attorney General with the approval of Nigeria's President.  *See* Presidential Signing Statement, Campbell Decl. Ex. L, pp. 14-15.  Moreover, Claimants are not arguing that the Government is estopped from bringing this action in a *res judicata* or *collateral estoppel*-like fashion.  Claimants urge only that the Court abstain from hearing this case out of respect for Nigeria's sovereign decision that no claims may attach to the property from which the Claimed Property allegedly derives and in the interest of international comity.

Finally, the Government argues that allowing this forfeiture action to proceed "does not disturb the settlement vis-à-vis Nigeria," insisting that the Settlement Agreement "applies only to 'all claims and liabilities of any kind which exist or might exist against AB [Abubakar Bagudu] in favour of or at the suit of the FRN [Federal Republic of Nigeria].'"  Opp'n at 39 (quoting Campbell Decl., Ex. I, p. 9).  The Government's selective quotation, however, ignores the Settlement Agreement's other key provision that the assets identified—including those from which the Government alleges the Claimed Property derives—are to be held "free from any claims existing or future, direct or indirect, contemplated or otherwise by the FRN *or in whole or part at its behest or on its behalf or for its benefit.*"  Campbell Decl., Ex. I, p. 12.  Allowing the Government to pursue this action in an attempt to forfeit the assets for the benefit of Nigeria would eviscerate the clear terms and the intent of Nigeria's agreement with Mr. Bagudu, depriving him and his family—including Claimants—of the benefit of his bargain with Nigeria.

## CONCLUSION

For all of the foregoing reasons, and for the reasons contained in Claimants' Motion, Claimants respectfully submit that the Government's Complaint must be dismissed as to the Claimed Property with prejudice.

Dated:    November 7, 2014                    Respectfully submitted,


                                              /s/ Jonathan R. Barr
                                              Jonathan R. Barr (D.C. Bar No. 437334)
                                              BAKER & HOSTETLER LLP
                                              1050 Connecticut Ave. NW, Suite 1100
                                              Washington, DC 20036
                                              Tel:  202-861-1500
                                              Fax:  202-861-1783
                                              jbarr@bakerlaw.com

                                              Jonathan B. New
                                              jnew@bakerlaw.com
                                              Patrick T. Campbell
                                              pcampbell@bakerlaw.com
                                              BAKER & HOSTETLER LLP
                                              45 Rockefeller Plaza
                                              New York, NY 10111-0100
                                              Tel:  212-589-4650
                                              Fax:  212-589-4201

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 7, 2014, I caused the foregoing to be filed and served via the Court's CM/ECF system, which will serve the following attorney of record:


Elizabeth A. Aloi
Trial Attorney
Asset Forfeiture and Money Laundering Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Suite 10100
Washington, D.C. 20005
elizabeth.aloi@usdoj.gov


  /s/ Jonathan R. Barr