**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cv-1832 (JDB) |
| ) | |
| ALL ASSETS HELD IN ACCOUNT NUMBER ) | |
| 80020796, IN THE NAME OF ) | |
| DORAVILLE PROPERTIES CORPORATION, ) | |
| AT DEUTSCHE BANK INTERNATIONAL, ) | |
| LIMITED IN JERSEY, CHANNEL ISLANDS, ) | |
| AND ALL INTEREST, BENEFITS, OR ASSETS ) | |
| TRACEABLE THERETO, *ET AL.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO ENTER RULE 54(b) FINAL JUDGMENTS AS TO CERTAIN PURPORTED CLAIMANTS AND CERTAIN DEFENDANTS *IN REM***

On September 10, 2015, the United States of America moved the Court, pursuant to Federal Rule of Civil Procedure 54(b), to enter final judgments against certain purported claimants and certain defendant assets. ("Motion"; ECF No. 96.) On September 28, 2015, Aisha Atiku Bagudu, Ibrahim Atiku Bagudu, Ibrahim Bagudu, Maryam Atiku Bagudu, I.A.B., F.A.B., M.A.B., and H.A.B. (the "Bagudu Claimants") filed a brief ("Opposition"; ECF No. 98) opposing entry of final judgment against the specified defendant assets. These assets are the subject of this Court's previous default judgment and order of forfeiture (the "Defaulted Assets"; *see* ECF No. 65). As more fully set forth below, the Bagudu Claimants have raised no legitimate reason to delay entry of final judgment, and, in any event, lack the Article III and statutory standing necessary to raise any objection or opposition to entry of final judgment. For these reasons, the Court should grant the United States' motion.

## **BACKGROUND AND STATEMENT OF FACTS**

None of the Bagudu Claimants has at any time filed a claim to the Defaulted Assets or otherwise asserted, directly or indirectly, any interest in them, despite having had due notice and opportunity to do so.  The Bagudu Claimants entered this litigation on May 1, 2014, by filing claims to certain defendants *in rem* (the "Claimed Property").[1]  (ECF Nos. 17-19 & 21-25).  The Claimed Property, however, is completely separate and distinct from the Defaulted Assets.  For example, the Claimed Property is maintained in accounts at J.O. Hambro Investment Management Ltd. and James Hambro & Partners, LLP; none of the Defaulted Assets are maintained at these firms.

The Bagudu Claimants had been parties to this litigation for more than a month before the United States filed—on June 2, 2014—an affidavit of default concerning the Defaulted Assets.  (*See* ECF No. 44.)  At that time, the Bagudu Claimants filed no response or objection.  On July 31, 2014, the Clerk of Court entered the requested defaults.  (ECF Nos. 57-63.)  Shortly afterward, the United States moved for entry of default judgment and an order of forfeiture for the Defaulted Assets.  (ECF No. 64.)  Once again, neither the Bagudu Claimants nor any other party filed any objection or response to the United States' motion.  On August 6, 2014, the Court entered the requested default judgment and order of forfeiture.  (ECF No. 65.)  In so doing, the Court ordered that "no right, title, or interest in defendant property shall exist in any other person." *Id.*  Neither the Bagudu Claimants nor any other party has moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) or for relief from the judgment pursuant to Rule 60(b).

---

[1] The Defaulted Assets are described in the United States' Verified Complaint for Forfeiture *In Rem* (ECF No. 1) at paragraphs 4(a)-(g).  The Claimed Property is separately described in Complaint paragraphs 4(h)-(k).

**ARGUMENT**

**A. The Bagudu Claimants Lack Standing to Oppose Entry of Final Judgment**

"It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). Here, however, the Bagudu Claimants have not even asserted—much less established—an interest in the Defaulted Assets. Nor did they oppose the initial default judgment and the accompanying order of forfeiture or subsequently seek to have them amended or set aside. Lacking any cognizable interest in the Defaulted Assets, the Bagudu Claimants therefore lack Article III standing to oppose the entry of final judgment.

Moreover, in this *in rem* action the Bagudu Claimants have intervened for certain, limited purposes: to assert and to vindicate their interests in the Claimed Property. This status, however, does not give them standing to assert the interests of other parties or would-be parties with respect to other assets, including the Defaulted Assets. "An intervenor cannot step into the shoes of the original party unless the intervenor *independently* 'fulfills the requirements of Article III.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) (emphasis added). *See also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013) ("It is, however, a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'").

Here, the Bagudu Claimants have identified no interest in the Defaulted Assets, and the only parties who attempted to do so—Godson Nnaka and, purportedly, the Federal Republic of

3

Nigeria—have seen their asserted claims stricken.  (ECF No. 54.)  With the original purported claimants to the Defaulted Assets no longer parties to this litigation, there is simply no basis for the Bagudu Claimants to oppose the requested final judgments.  "[A]n intervenor's right to continue a suit in the absence of a party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III."  *Diamond v. Charles*, 476 U.S. 54, 68 (1986).  Without such a showing, a claimant has "no legal basis upon which to object to the forfeiture."  *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004).

In addition to Article III standing, a claimant in a forfeiture proceeding must meet the statutory pleading requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to have standing to challenge forfeiture.  Among other things, the Supplemental Rules require claimants to file verified claims within a specified timeframe[2] and to identify the specific property claimed as well as the nature of the interest in the property.  Supplemental Rule G(5).  The Bagudu Claimants all filed timely claims with respect to the Claimed Property.  However, in doing so they asserted no interest in the Defaulted Assets and have asserted no such interest subsequently.  And as detailed above, the Bagudu Claimants made no attempt to interpose objections when the United States, with respect to the Defaulted Assets, sought and was granted entry of default and entry of default judgment.  Having thus failed to satisfy these basic requirements, "that is, timeliness and a showing of interest in the

---

[2] On March 28, 2014, the United States sent Ibrahim Bagudu direct notice of this forfeiture action, pursuant to which he had 35 days from the date of notice to file any claims.  His time to claim therefore expired on May 2, 2014.  The other claimants did not receive direct notice, and their deadline to file expired 60 days after the United States first published notice of this action on the official Internet government forfeiture site.  That deadline expired on May 5, 2014.

4

defendant property," the Bagudu Claimants "lack statutory standing to submit any claim here." *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009).

Because the Bagudu Claimants lack both the requisite Article III and the statutory standing to litigate the disposition of the Defaulted Assets, their opposition to the United States' motion should be set aside and the Court should enter the requested final judgment.

**B. The Bagudu Claimants Have Failed to Establish Just Reason for Delay**

Rule 54(b) permits a district court to enter a final judgment as to fewer than all claims or fewer than all parties upon a finding that there is "no just reason for delay." Here, in addition to their lack of standing, the Bagudu Claimants have failed to establish a just reason for delay, and the overwhelming case law demonstrates they cannot establish such a basis for delay. By contrast, the Government, in its opening brief, clearly indicated that failure to grant its motion would prejudice its interests in executing the already-entered forfeiture judgment against $480 million in defaulted assets and in overseeing the appropriate disposition of those assets.

1. There is no danger of incompatible judgments

The Bagudu Claimants argue that final judgment should be delayed because there is some overlap in the factual predicates underlying the forfeitability of both the Defaulted Assets and the Claimed Property. Opposition 9-13. Consequently, they claim that a final judgment against the Defaulted Assets could be inconsistent with a later judgment on the merits should they prevail in the ongoing litigation, *id.*, and they further appear to assert that they might be prejudiced by the presumption of facts underlying a final default judgment, *id.* at 17.

However, the Supreme Court has held that a presumption of fact against a defaulting party does not prejudice other parties or preclude them from contesting that fact in subsequent litigation, even if doing so may create an appearance of inconsistency. In *The Mary*, 13 U.S. (9

Cranch) 126 (1815), a ship owner failed to appear and contest the seizure of his ship, the *Mary*. Because seizure was proper only if the ship were British property, the default judgment relied on a presumption that the *Mary* was indeed British. Nevertheless, this presumption did not bind the owner of the ship's cargo, who did appear and who asserted that the *Mary* was American-owned: "[T]he condemnation of the vessel was inevitable; not because in fact she was British property, but *because the fact was charged and was not repelled by the owner*, he having failed to appear and to put in his claim." *Id.* at 142 (emphasis added). The Court was untroubled by the possibility that this could lead to a logical inconsistency if the cargo owners later established that the *Mary* was in fact an American vessel. As the Court stated, "In the same cause, a fact, not controverted by one party, who does not appear, and therefore as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who *does* appear, does controvert, and does disprove it." *Id.* at 143.

The situation in *The Mary*, of course, is precisely the posture of the current litigation. Judgment has already been entered against the Defaulted Assets based on the facts pleaded in the Complaint, which are taken as admitted for the limited purpose of forfeiting the Defaulted Assets. But this presumption against the Defaulted Assets (and against any parties who did or might have attempted to assert a claim to them) does not bind or prejudice the Bagudu Claimants or their asserted interests in the separate Claimed Property, nor does it prevent the Bagudu Claimants from contesting the facts in the Complaint or prevailing on the merits at trial. *See also Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432-33 (8th Cir. 1992) (citing *The Mary* for the proposition that "a default judgment against one defendant does not preclude a codefendant from contesting the plaintiff's claim"); *Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty, Ltd.*, Case No. CV 06-0356, 2006 WL 1720442 (E.D.N.Y. June 22,

2006) ("A party cannot use a default judgment against one adversary collaterally against another.").

The case cited in opposition, *Frow v. De la Vega*, 82 U.S. (15 Wall.) 552 (1872), is not to the contrary. *Frow* involved a plaintiff who brought suit against thirteen other defendants, eight of whom were charged with a *joint* conspiracy to defraud the plaintiff of a *single* piece of property. Critically, *Frow* was an *in personam* civil suit. The current litigation, by contrast, is an *in rem* action: here, there is no necessity of finding joint liability as the defendant assets are distinct pieces of property, not co-conspirators.

*Frow* is therefore of limited applicability, as the D.C. Circuit explicitly acknowledged in *Whelan v. Abell*, 953 F2d 663, 674-75 (D.C. Cir. 1992). In *Whelan*, the plaintiff brought suit against three defendants, charging them with a number of torts all arising from an earlier lawsuit the defendants had jointly brought—maliciously, it was alleged—against the plaintiff. One defendant failed to appear, and a default was entered against him. Subsequently, the non-defaulting defendants prevailed on all counts, and, based on their success, the district court then vacated the prior default judgment. This, the D.C. Circuit held, was reversible error:

> [W]e construed *Frow* narrowly to hold that in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint—that is, *when the theory of recovery requires that all defendants be found liable if any one of them is liable—and when the relief sought can only be effective if judgment is granted against all*.

*Id.* (emphasis added). Despite the fact that the three defendants had jointly brought the allegedly malicious prosecution, the D.C. Circuit held that their liability was not so entwined as to require "consistent findings." *Id.* at 675. Furthermore, a judgment in favor of two defendants did not "make monetary recovery from [the defaulting party] practically impossible." *Id.*

7

The result in *Whelan* is directly applicable to the current matter. Forfeiting the Defaulted Assets does not make a later judgment in favor of the Bagudu Claimants "practically impossible." And like the defendants in *Whelan*, the various defendant assets at issue in the instant case are sufficiently distinct and separable such that "consistent findings against each of them" are not required. Indeed, the Bagudu Claimants recognize that *Frow* is narrowly applied in this Circuit to cases involving "true joint liability" among defendants. Opposition at 9, n.2. Here, there is no possibility of "true joint liability" between *in rem* defendants.

2. There is no danger of duplicative appeals or judicial inefficiencies

As a further reason for delay, the Bagudu Claimants speculate that, should they not prevail before this Court, they may appeal the Court's prior holding that the United States' Complaint did in fact meet the pleading standards under Supplemental Rule G(2)(f). (*See* ECF No. 79 at 17-30). The Bagudu Claimants then assert, incorrectly, that any appeal of a final judgment against the Defaulted Assets will have necessarily raised the same issue concerning the sufficiency of the United States' pleading, leading to duplicative appeals and judicial inefficiency.

This is a red herring, as no party has standing to challenge the sufficiency of the Complaint with respect to the Defaulted Assets for the simple reason that no party has raised or preserved such an issue with respect to those assets. *See, e.g.*, *Edwards v. Commissioner*, 791 F.3d 1, 8 (D.C. Cir. 2015) (holding that an appellate court "lack[s] jurisdiction to consider a new argument [litigants] attempt to raise for the first time on appeal"). The Bagudu Claimants, by contrast, have preserved this issue with respect to the Claimed Property, and, should they raise such an argument on appeal, they will be the first parties to do so. There is therefore no danger of duplication.

Additional considerations of judicial efficiency actually support an entry of final judgment. Entry of final judgment would permit the stricken claimants to challenge the rejection of their claims. If they were to take such an appeal and to succeed in having their claims reinstated with respect to the Claimed Property, it would be significantly more efficient for them to join the current litigation alongside the Bagudu Claimants. It is more efficient to allow all claimants with standing to challenge the forfeitability of the Claimed Property in one fell swoop than to litigate the claims of the Bagudu Claimants in the first instance, afterwards hear an appeal from the stricken claimants, and then potentially re-litigate the forfeitability of the same assets..

**C. The United States Would Be Prejudiced by a Delay of Final Judgment**

As the United States argued in its opening brief, the government is the only party with a cognizable claim to the Defaulted Assets. Additional delay in entering a final judgment would prolong the government's inability to obtain custody over and to dispose of these assets—worth approximately $480 million and forfeited more than a year ago. (ECF No. 65.) In response, the Bagudu Claimants assert that honoring the government's interest in enforcing a final judgment would "turn the purpose of Rule 54(b) . . . on its head." Opposition at 15. This is flatly wrong.

The Bagudu Claimants insinuate that the United States' interest is insufficient to support entry of a final judgment, but case law clearly supports the opposite conclusion. In *Curtiss-Wright Corp. v. General Electric Corp.*, 446 U.S. 1 (1980), the Supreme Court specifically credited a plaintiff's interest in speedy enforcement of a judgment as a basis for entering final judgment: "The court also noted that the debts in issue were liquidated and large, and that absent Rule 54(b) certification they would not be paid for 'many months, if not years' . . . ." *Id.* at 11. Here, the amount at issue is also large: roughly $480 million; and satisfaction is likely to be delayed at least two years if the Bagudu Claimants' claims are fully litigated first. *See* April 29,

9

2015 Scheduling Order (ECF No. 85) (setting discovery deadlines into April 2017). Moreover, enforcement of a forfeiture judgment against assets located overseas, as in this case, ordinarily requires the judgment to be final and no longer subject to appeal. Further delay in obtaining a final judgment with respect to the Defaulted Assets will significantly protract foreign proceedings to finalize recovery and obtain their appropriate disposition.

The Bagudu Claimants also assert that, because the Defendant Assets are restrained and not subject to dissipation, there is no danger that the United States would not be able to collect on a delayed judgment. However, the Supreme Court in *Curtiss-Wright* rejected a similar argument: the fact that the liable party was not insolvent and was therefore "capable of paying either now or later is not a 'just reason for delay.'" *Id.* at 12. Entry of a final judgment pursuant to Rule 54(b) against assets already adjudicated to be forfeited will facilitate recovery and better ensure timely execution of the judgment.

Finally, the Bagudu Claimants appear to argue that the United States' interest in having the judgment declared final is futile by suggesting that the United States must demonstrate that this Court's default judgment is enforceable in France, Jersey, and the United Kingdom. The proper inquiry, however, is not whether the judgment is enforceable in these jurisdictions, but whether the United States may seek its enforcement. Further, the relevant foreign jurisdictions have all cooperated in enforcing this Court's warrants for arrest *in rem*, and there is no basis to believe these jurisdictions would decline to enforce a final order of forfeiture of this Court. Nor have the Bagudu Claimants offered any basis for such a belief.

**D. The Bagudu Claimants Face No Prejudice from Entry of Final Judgment**

It is clear that the United States would face significant prejudices from further delay that are indistinguishable from those identified by the Supreme Court as justifying entry of final

judgment pursuant to Rule 54(b).  The Bagudu Claimants, however, have identified *no* actual prejudice that they may suffer as a consequence of granting the United States' motion.

While acknowledging that default judgments do not have preclusive effect on third parties, Opposition at 17, the Bagudu Claimants nevertheless make speculative assertions that the United States could attempt to use a default judgment "in its arguments against Claimants' rights," *Id.*  As previously discussed, however, the Supreme Court's holding in *The Mary* makes clear that facts presumed in a default judgment are not chargeable against other, defending litigants.  Further, the Bagudu Claimants have no interests in the Defaulted Assets, nor would a final order of forfeiture prevent them from preserving their asserted interests in the Claimed Property, which are distinct and separate assets.  Therefore, there is no just reason to delay entry of final judgment.

**CONCLUSION**

For the foregoing reasons, the United States requests that this Court enter the proposed Order so that this Court's judgment may be swiftly enforced.

Dated: October 19, 2015

Respectfully submitted,

M. KENDALL DAY, CHIEF
ASSET FORFEITURE AND MONEY
LAUNDERING SECTION


By: /s/ Michael W. Khoo
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
MICHAEL W. KHOO
Trial Attorneys
Asset Forfeiture and Money Laundering Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW, 10th Floor
Washington, DC  20530
Tel:   (202) 514-1263
Fax:   (202) 514-5522

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I certify that on October 19, 2015, I caused the foregoing Reply in Support of Motion to Enter Rule 54(b) Final Judgments as to Certain Purported Claimants and Certain Defendants *In Rem* to be served on all counsel of record by the Court's CM/ECF system and, further, to be served by overnight delivery upon the individual identified below:

Godson M. Nnaka
9119 South Gessner Road
Suite 127
Houston, TX 77074

     /s/ *Elizabeth A. Aloi*
ELIZABETH A. ALOI
Trial Attorney
Asset Forfeiture and Money Laundering Section
U.S. Department of Justice
1400 New York Ave. NW
Room 10100
Washington, DC 20530
TEL: (202) 598-2525 / FAX: (202) 616-2547
elizabeth.aloi@usdoj.gov