**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**

**ALL ASSETS HELD IN ACCOUNT
NUMBER 80020796, IN THE NAME OF
DORAVILLE PROPERTIES CORP.,
AT DEUTSCHE BANK INTERNATIONAL,
LTD. IN JERSEY, CHANNEL ISLANDS,
AND ALL INTEREST, BENEFITS OR
ASSETS TRACEABLE THERETO, et al.,**

    **Defendants.**

**Civil Action No. 13-1832 (JDB)**

---

## MEMORANDUM OPINION & ORDER

The United States brought this action seeking forfeiture of certain properties alleged to have been part of "an international conspiracy to launder proceeds of corruption in Nigeria during the military regime of General Sani Abacha." Compl. [ECF No. 1] ¶ 1. The litigation continues as to four investment portfolios, five corporations, and the rights of eight claimants. As to other properties and purported claimants, however, the litigation in this Court is over. In one prior Order, the Court struck the claim of Godson Nnaka and two claims supposedly (but not actually) filed on behalf of the Republic of Nigeria for failing to meet certain filing requirements.[1]  See July 3, 2014 Mem. Op. & Order [ECF No. 54] at 14. And in another Order, the Court entered a default judgment against a subset of the defendant properties—specifically, those identified in paragraphs

---

[1] The "Nigerian" claims were filed "by and through counsel[,] Godson M Nnaka, Charles Lion Agwumezie, Kenneth Nnaka, and Jude C. Ezeala."  See First Purported Claim of Nigeria [ECF No. 10-1] ¶ 1; Second Purported Claim of Nigeria [ECF No. 48-1] ¶ 1. But according to a May 2014 letter from Nigerian Attorney General Mohammed Bello Adoke, none of those individuals are authorized to represent Nigeria in this litigation. See Ex. 1 to Gov't's Aff. for Default [ECF No. 44-1].

4(a)-4(g) of the verified complaint—and vested ownership of them in the United States. See Aug. 6, 2014 Mem. Op. & Order [ECF No. 65] at 3–4. Now, the United States moves the Court to certify both Orders as final judgments under Federal Rule of Civil Procedure 54(b). See Gov't's Mot. to Enter Rule 54(b) Final J. [ECF No. 96]. For the reasons below, the Court will oblige.

Normally, an order in a case involving multiple claims or defendants is not final (and therefore not appealable) until the district court has "disposed of all claims against all parties." Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 221 (D.C. Cir. 2011). Rule 54(b) relaxes this requirement by allowing the district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" upon an express finding that "there is no just reason for delay." Fed. R. Civ. P. 54(b). A district court may properly use Rule 54(b) to "meet the demonstrated need for flexibility in providing for appellate review in complex cases," Blue v. D.C. Pub. Schs., 764 F.3d 11, 15 (D.C. Cir. 2014) (internal quotation marks omitted), with the goal of "avoiding piecemeal appeals," Taylor v. FDIC, 132 F.3d 753, 760 (D.C. Cir. 1997). In essence, "[t]he district court functions as a dispatcher, determining . . . when a claim should proceed on to appellate resolution, and when it should await its fellows." Id. (internal quotation marks omitted).

To properly invoke Rule 54(b), the Court must first ensure that the order under consideration is final, meaning it represents the "ultimate disposition of an individual claim entered in the course of a multiple claims action." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980). Once the Court determines that its order is final as to a claim or party, the only remaining question is "whether there is any just reason for delay" in directing the entry of a final judgment. Id. at 8. "This determination weighs both justice to the litigants and the interest of sound judicial administration." Brooks v. Dist. Hosp. Partners, 606 F.3d 800, 806 (D.C. Cir. 2010) (internal quotation marks omitted). "The factors affecting justice to the parties will inevitably differ from

case to case . . . ." <u>Id.</u> (internal quotation marks omitted).  When assessing the interest in sound judicial administration, the court should consider whether the fully resolved claims are legally and factually separable from those yet to be determined, "such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."  See <u>Curtiss-Wright</u>, 446 U.S. at 8.

The Court will certify its July 3 Order striking the claims of Nnaka and the "Republic of Nigeria."  The Order leaves Nnaka and the "Republic of Nigeria" without a basis for further participation in the litigation, and therefore represents the final disposition of their claims. Certification is also in the best interest of the parties and the judicial system.  Clearly Nnaka, who has already seen one appeal dismissed for lack of jurisdiction, is anxious to appeal the Court's July 3 Order.[2]  <u>See</u> July 15, 2015, U.S. Court of Appeals Mandate [ECF No. 95].  And as the government observes, if Nnaka succeeds in having the claims reinstated on appeal, he would be able to rejoin the pending litigation alongside the eight remaining claimants—an efficiency that could be squandered if Nnaka must delay his appeal until after the remainder of the litigation comes to a close.  <u>See</u> Gov't's Reply [ECF No. 100] at 9.  Lastly, certification poses no risk of duplicative appeals.  No matter when the stricken claims are appealed, the court of appeals will only have to decide once whether they were properly brought.  Having thus discerned no just reason for delay, the Court will certify its July 3 Order as final under Rule 54(b).

The remaining question is whether to certify the August 6 default judgment as well, now that the stricken claims may be appealed.  The issues are closely connected.  Although procedurally

---

[2] The claims purportedly brought by Nigeria identified several individuals as acting on its behalf, any of whom might attempt to step forward and assert "Nigeria's" interests on appeal.  The Court, of course, has concluded that none of these individuals <u>actually</u> have authority to act on behalf of Nigeria, for the reasons set out in the July 3 Order.  For simplicity's sake, much of the analysis that follows assumes that Nnaka intends to assert both his interests and those of the "Republic of Nigeria" in any appeal—but no matter who assumes responsibility for "representing Nigeria," the Court's Rule 54(b) analysis remains the same.

inadequate, the claims by Nnaka and the "Republic of Nigeria" pertained to <u>all</u> the defendant assets, including the now-defaulted ones. <u>See</u> Claim of Godson M. Nnaka [ECF No. 10-2] ¶ 2; Second Purported Claim of Nigeria ¶ 2. An appeal seeking reinstatement of the stricken claims therefore poses an implicit challenge to the default judgment. In the government's view, this connection between the two orders is good reason to promptly certify both. <u>See</u> Gov't's Mot. at 7 n.3. The Court agrees, and therefore concludes that there is no just reason to delay entry of final judgment as to the defaulted assets.

No one disputes the "finality" of the August 6 Order, which vests ownership of the defaulted assets in the United States, to the exclusion of "right, title, or interest" in any other party. Aug. 6, 2014 Order at 4. And in the Court's view, all of the Rule 54(b) factors weigh in favor of certification. All of the parties with interests in the defaulted assets would benefit from a prompt appeal of the default judgment. For the government, a victory on appeal would dispel any shadow that the stricken claims cast over its title to the defaulted assets. For Nnaka and the "Republic of Nigeria," a successful appeal could overturn the default judgment in time to include the defaulted assets in the litigation still unfolding before the Court.[3] Certification would also serve the interest in sound judicial administration. Because the default judgment is legally and factually bound up with the stricken claims, then, efficiency counsels for addressing both in the same appeal.

The eight remaining claimants, none of whom filed a claim on the defaulted assets, oppose Rule 54(b) certification of the default judgment on multiple grounds. First, they accuse the government of using certification to push Nnaka into a premature and potentially duplicative appeal, "solely for its own economic interests." Claimants' Opp'n [ECF No. 98] at 13–16. The

---

[3] The government and the remaining claimants advance competing arguments about what is in Nnaka's best interest. Neither Nnaka nor any of the other individuals named in the stricken claims have come forward to oppose the government's motion.

4

Court rejects this characterization.  Claimants cite <u>Stewart v. Gates</u>, 277 F.R.D. 33 (D.D.C. 2011), as a case that weighs against "premature" certification, but that case is distinguishable.  In <u>Stewart</u>, two individual defendants who prevailed on a motion to dismiss sought certification of that dismissal, even though the plaintiff was still litigating a factually related claim against an agency defendant.  <u>See id.</u> 34.  The court withheld certification, explaining that Rule 54(b) should not be used to "prematurely force an appeal of part of a case by a losing party, who must comply with timeliness requirements for exercising appellate rights."  <u>Id.</u> at 36.  But unlike the losing party in <u>Stewart</u>, Nnaka has finished litigating before the district court and is well positioned to take an appeal.  Moreover, that appeal is unlikely to duplicate a future appeal of claimants' motion to dismiss, as the court of appeals will likely only reach the default judgment if Nnaka succeeds in having the stricken claims reinstated.  And if Nnaka succeeds in having the stricken claims reinstated, the default judgment could probably be vacated without analysis of the government's complaint.  Thus, the government's motion is hardly driving Nnaka into an improper appeal.

The remaining claimants also contend that certification of the default judgment would be inconsistent with their expected success on the merits in the remainder of the litigation.  The source of the alleged contradiction is the government's complaint, which alleges that <u>all</u> of the defendant assets are proceeds of the same, overlapping fraudulent schemes.  <u>See</u> Claimants' Opp'n at 2–3 (citing Compl. ¶ 4).  By certifying a judgment as to the defaulted assets, the Court would have to accept those allegations as true; but by prevailing in the litigation as to the contested assets, claimants will ultimately show those allegations to be false.  <u>See id.</u> at 17.  According to claimants, they are protected from such logical inconsistencies by <u>Frow v. De la Vega</u>, 82 U.S. 552 (1872).  In <u>Frow</u>, plaintiff alleged that eight defendants had conspired to defraud him of a single tract of land.  When one defendant failed to answer, the district court entered a default judgment for

5

plaintiff, vesting title in him. But later, the other defendants prevailed on the merits, pitting the two results in an "irreconcilable conflict." Carter v. District of Columbia, 795 F.2d 116, 137 (D.C. Cir. 1986). The Supreme Court resolved the conflict by vacating the default judgment. Frow, 82 U.S. at 554.

Frow does not require the Court to postpone certification here. According to the D.C. Circuit, Frow applies "only when liability is truly joint—that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable—and when the relief sought can only be effective if judgment is granted against all." Whelan v. Abell, 953 F.2d 663, 674–75 (D.C. Cir. 1992). This is not such a case. If claimants prevail on the merits, they will retain possession of any assets that they have claimed. That relief will be effective, even if the government obtains a judgment against some assets that they have not claimed. And in any event, the potential inconsistency that claimants highlight results from the entry of a default judgment, not from its certification for appeal. Here, ownership of the defaulted assets has already been vested in the United States—without a claim, opposition, or motion to vacate from the remaining claimants. It is hard to see how certifying that judgment as final would deepen their predicament.

Therefore, because the Court expressly finds that there is no just reason to delay the entry of final judgment, it is hereby

**ORDERED** that [96] the government's motion for entry of final judgments under Rule 54(b) is **GRANTED**; it is further

**ORDERED** that [54] the Court's July 3, 2014 Order represents its **FINAL JUDGMENT** regarding [10-1] the first claim purportedly submitted on behalf of Nigeria, [48-1] the second claim purportedly submitted on behalf of Nigeria, and [10-2] the claim of Godson Nnaka; and it is further

**ORDERED** that [65] the Court's August 6, 2014 Order represents its **FINAL JUDGMENT** regarding the defendant assets identified in paragraphs 4(a)-4(g) of the government's complaint, specifically:

(a) All assets held in account number 80020796, in the name of Doraville Properties Corporation, located at Deutsche Bank International Limited in the Bailiwick of Jersey, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(a) of the verified complaint);

(b) All assets held in account number S-104460, in the name of Mohammed Sani, at HSBC Fund Administration (Jersey) Limited in the Bailiwick of Jersey, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(b) of the verified complaint);

(c) All assets held in account number 223405880IUSD, in the name of Rayville International, S.A., at Banque SBA in Paris, France, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(c) of the verified complaint);

(d) All assets held in account number 223406510PUSD, in the name of Standard Alliance Financial Services Limited located at Banque SBA in Paris, France, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(d) of the verified complaint);

(e) All assets held in account numbers 100130688 and 100138409, in the name of Mecosta Securities, at Standard Bank in the United Kingdom, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(e) of the verified complaint);

(f) All assets held at HSBC Life (Europe) formerly held in account number 37060762 in the name of Mohammed Sani at Midland Life International Limited, and all interest, benefits, or assets traceable thereto (identified in paragraph 4(f) of the verified complaint); and

(g) All assets in account number 38175076, in the name of Mohammed Sani, at HSBC Bank Plc., and all interest, benefits, or assets traceable thereto (identified in paragraph 4(g) of the verified complaint).

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: December 17, 2015

7