## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-1832 (JDB) |
| | ) | |
| ALL ASSETS HELD IN ACCOUNT NUMBER | ) | |
| 80020796, IN THE NAME OF | ) | **REDACTED VERSION** |
| DORAVILLE PROPERTIES CORPORATION, | ) | |
| AT DEUTSCHE BANK INTERNATIONAL, | ) | |
| LIMITED IN JERSEY, CHANNEL ISLANDS, | ) | |
| AND ALL INTEREST, BENEFITS, OR ASSETS | ) | |
| TRACEABLE THERETO, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE CLAIMS PURSUANT TO RULE G(8)(c) OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS

Comes now, the United States of America, by and through its undersigned attorneys, and respectfully moves the Court to strike the claims of Aisha Atiku Bagudu, Ibrahim Atiku Bagudu, Ibrahim Bagudu, Maryam Atiku Bagudu, Mohammed Atiku Bagudu, I.A.B., F.A.B., and H.A.B. (collectively, "the Claimants,") from this forfeiture action pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). The claims should be stricken because the Claimants lack constitutional standing to participate in this litigation.

Specifically, claimants in a civil *in rem* forfeiture action must assert and prove by a preponderance of the evidence that they have a colorable ownership or possessory interest in the claimed assets or that they exert dominion and control over them. This is a threshold showing

necessary to meet Article III's case-or-controversy requirement, and a party's failure to meet this burden divests the court of jurisdiction to hear and adjudicate that party's purported claims.

Here, Claimants have not even asserted, much less proved, that their interests in any of the defendants *in rem* are sufficient to sustain their claims. ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ In sum, the Claimants are several

steps removed from ownership, possession, and control of the claimed assets. Their connection to the assets is attenuated, contingent, prospective, uncertain, and entirely beyond their control or discretion—in other words, well short of what is needed to establish standing under Article III. The Court should therefore strike their claims in their entirety.

## LEGAL STANDARDS

### A. Article III Standing

In a civil forfeiture case such as this one, the United States is the plaintiff, the properties and assets are the defendants *in rem*, and any claimants appear as intervenors who seek to challenge the forfeiture. *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 4-5 (D.D.C. 2009); *United States v. All Funds in Account Nos. 747.034/278, 747.009/278 & 747.714/278 in Banco Español*

---

[1] Claimant Ibrahim Bagudu asserts that he is the actual beneficiary of a $100,000 per annum annuity established under one of the trusts. *See* Verified Claim and Statement of Interest of Ibrahim Bagudu ("Bagudu Verified Claim") at 3 (ECF No. 19). To that extent, he may have a vested interest in certain trust assets up to the present value of the annuity. However, as argued below, he has no interest in the balance of the trust assets. None of the other Claimants has asserted any legal, vested interest in any trust property.

*de Crédito*, 295 F.3d 23, 24 (D.C. Cir. 2002) ("Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest.")

However, in order to intervene successfully, a claimant must establish standing to do so. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III [of the U.S. Constitution]," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which must be determined as "a threshold matter in every federal case," *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004). To meet the Article III case-or-controversy standard, a party must establish that "'(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action . . .; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *8 Gilcrease Lane*, 641 F. Supp. 2d at 4 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

In the context of civil forfeiture, a party "must demonstrate an injury by establishing either an ownership or lesser possessory interest in the property. . . . Showing a real or imminent injury is essential to establish constitutional standing." *Id.* at 6 (citations omitted). "In assessing the sufficiency and probity of evidence that purports to demonstrate a colorable ownership interest, courts generally look to indicia of dominion and control such as possession, title, and financial stake." *United States v. All Assets at Bank Julius Baer*, 959 F. Supp. 2d 81, 100 (D.D.C. 2013) (internal citations omitted). Critically, "a contingent future interest" is *not* sufficient to establish Article III standing. *United States v. $90,000 in U.S. Currency*, 56 F. Supp. 3d 744, 747 (D. Md. 2014); *see also United States v. 477 Firearms*, 698 F. Supp. 2d 894, 901 (E.D. Mich. 2010) ("The Claimants' mere possibility of eventually obtaining the [defendants *in rem*] is insufficient to confer

3

standing to contest their forfeiture."); *United States v. Two Real Props. Situated in Bluefield*, No. 1:06-cv-00532, 2009 WL 3181453, at *7 (S.D. W. Va. Sept. 29, 2009) ("An unvested marital estate is insufficient to confer Article III . . . jurisdiction."); *United States v. 148 Maunalanikai Pl.*, No. 1:07-cv-00049, 2008 WL 3166799 (D. Haw. Aug. 6, 2008) (future right to equitable distribution of marital property upon divorce does not confer present ownership interest sufficient to support standing); *United States v. 717 S. Woodward St.*, 2 F.3d 529, 535-36 (3d Cir. 1993) (same).   Indeed, contingent future interests are by their nature neither "concrete" nor "particularized," and any asserted injury to such interests would be "conjectural or hypothetical" rather than "actual or imminent."   This is exactly the opposite of "injury in fact."   *See 8 Gilcrease Lane*, 641 F. Supp. 2d at 4.

In assessing the nature of a putative claimant's interest in a particular asset, courts must look to the law of the jurisdiction in which the alleged interest arises.  Generally, that is a question of state or foreign law.  *See, e.g., All Assets at Bank Julius Baer*, 959 F. Supp. 2d at 96 ("The nature of a claimant's asserted property interest is 'defined by the law of the State'—or here, nation—'in which the interest arose.'"); *5208 Los Franciscos Way*, 385 F.3d at 1191 ("Ownership interest is determined by the law of the state in which the interest arose . . . .").  Here, as discussed below, the Claimants' purported interests in the claimed assets arise under the law of Singapore.

Despite this reliance on state and foreign law to determine the nature of a party's property interest, Courts look to federal law to ascertain whether that interest, once determined, is sufficient to confer Article III standing.  *See, e.g., All Assets at Bank Julius Baer*, 959 F. Supp. 2d at 96 ("[W]hile state law defines a claimant's interest in specific property, 'federal law determines the effect of [that] ownership interest on [the claimant's] right to bring a claim.'").

Supplemental Rule G "governs a forfeiture action in rem arising from a federal statute." Supp. R. G(1). Per Supplemental Rule G(8)(c), the government may "[a]t any time before trial" move to strike a claim "because the claimant lacks standing," Supp. R. G(8)(c)(i)(B), and may do so through a motion for summary judgment, Supp. R. G(8)(c)(ii)(B). Upon such a motion, it is the claimant's burden to establish standing "by a preponderance of the evidence." *Id.*; *see also All Assets at Bank Julius Baer*, 959 F. Supp. 2d at 95.

**B.  Summary Judgment**

In support of this motion, the government relies on the parties' pleadings and claims, interrogatory responses, documents obtained in discovery, and the statement of an expert in Singapore law. Consequently, this motion is brought as a motion for summary judgment. *See* Supp. R. G(8)(c)(ii)(B). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* And a dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## STATEMENT OF FACTS

**A.  The Pleadings**

On November 18, 2013, the United States initiated this matter by filing its Verified Complaint for Forfeiture *In Rem* ("Complaint") (ECF No. 1) seeking the forfeiture of various assets in bank accounts in the United Kingdom, the Bailiwick of Jersey ("Jersey"), and France, as well as four investment portfolios in the United Kingdom and five corporate entities registered in

the British Virgin Islands. As set forth in the Complaint, the defendant properties were involved in an international conspiracy to launder proceeds of Nigerian corruption during the military regime of General Sani Abacha. Current Nigerian governor Abubakar Bagudu ("Gov. Bagudu") is alleged to be at the center of this conspiracy. Complaint ¶ 11, at 8. The defendant assets are subject to forfeiture to the United States because of their involvement in violations of U.S. law. This Court issued arrest warrants *in rem* for the defendant assets on December 6, 2013, and, shortly thereafter, the defendant assets, with the exception of the five corporate entities, were restrained in France, Jersey, and the United Kingdom.

On May 1, 2014, the Claimants—family members of Gov. Bagudu—filed timely claims to the four defendant investment portfolios located in the United Kingdom (the "Claimed Assets"). *See* Verified Claims and Statements of Interest ("Verified Claims") (ECF Nos. 17, 18, 19, 21, 22, 23, 24, and 25.) The Claimed Assets are set forth in the Complaint at paragraphs 4(h) through 4(k) and are identified as follows:

> (1) All assets held in the name of Blue Holding[s] (1) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at J.O. Hambro Investment Management Limited[2] in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(h)"];

> (2) All assets held in name of Blue Holding[s] (2) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at J.O. Hambro Investment Management Limited in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(i)"];

> (3) All assets held in the name of Blue Holding[s] (1) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at James Hambro & Partners LLP, in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(j)"]; and

> (4) All assets held in of the name of Blue Holding[s] (2) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at James Hambro &

---

[2] J. O. Hambro Investment Management has changed its name to Waverton Investment Management.

Partners LLP, in the United Kingdom and all interest, benefits, or assets traceable thereto ["Asset 4(k)"].

The Claimants assert an alleged interest in the Claimed Assets through their status as purported beneficiaries of two trusts, specifically Blue Family Trust I and Blue Family Trust II (the "Blue Family Trusts"). *See, variously*, Verified Claims. As a consequence of this purported status, each of the Claimants individually asserts, "I have a beneficial ownership interest and/or financial stake in the [Claimed Assets]." *Id.* Claimants Aisha Atiku Bagudu, Ibrahim Atiku Bagudu, Maryam Atiku Bagudu, Mohammed Atiku Bagudu, F.A.B., H.A.B., and I.A.B. assert no other interests. Claimant Ibrahim Bagudu asserts that, in addition to having a general interest as a purported beneficiary of the Blue Family Trusts, he is entitled to receive—and has in fact received—"a $100,000 annual annuity from Blue Family Trust II" (the "Annuity"). Bagudu Verified Claim ¶ 2(i), at 3.

## B. The Terms of the Blue Family Trusts



[3] On or about July 28, 2014, the government propounded special interrogatories on all Claimants pursuant to Supplemental Rule G(6). For purposes of the present motion, the special interrogatories were substantially identical for all Claimants, and, unless otherwise noted, the Claimants' individual responses were, for purposes of this motion, substantially the same. To avoid unnecessary repetition, this motion will cite only to the responses of Ibrahim Bagudu unless the Claimants' various responses diverge in material ways. For the sake of completeness, the other seven Claimants' responses can be found at Exs. 2 to 8 of the Khoo Declaration.



In a fixed trust, a beneficiary's share and entitlement to the trust's capital and income are explicitly defined at the outset. *Id.* ¶ 4. Under Singapore law, the beneficiary of a fixed trust would enjoy an equitable, beneficial interest in the trust's assets. *Id.* In a discretionary trust, the shares of potential beneficiaries are not fixed from the start. *Id.* Instead, the trustee of a discretionary trust is given the power and authority to apply trust assets for the benefit of potential beneficiaries *or not to do so*. The trustee may also add, remove, or exclude beneficiaries at its sole discretion. *Id.* ¶¶ 5 & 6. Unless and until the trustee exercises its discretion in favor of one or more potential beneficiaries, the beneficial interest in the trust assets is undetermined, and potential beneficiaries have only an expectation that they may, at the trustee's sole discretion, eventually be assigned an interest in the trust's income or capital. *Id.* ¶¶ 7 & 11. In other words, the potential beneficiaries have, at best,

a *future* interest that is *contingent* on the trustee, in its sole discretion, exercising its power in their favor. *Id.* ¶¶ 7, 8 & 11. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

　　　Discretionary trusts ██████████████████ are frequently created in order to obtain significant advantages. In particular, because potential beneficiaries have no current legal interest in the trust assets, their creditors are unable to reach those assets in satisfaction of debts. *Id.* ¶ 5. Thus, the potential beneficiaries' tenuous and unripened interests in the trust assets are not an incidental feature of discretionary trusts: they are a critical selling point that attracts individuals seeking certain legal protections from creditors. *Id.*

████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

█████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[4] Ibrahim Bagudu is the ████████████████████████ although he has not asserted a claim in that capacity. *See* Bagudu Verified Claim at 2-3 (stating bases for claims). Nevertheless, even if Ibrahim Bagudu did assert in interest in his role as ████ , it would be unavailing. Under Singapore law ████ retains no legal or beneficial interest in the trust assets. Tang Decl. ¶ 12. U.S. law is the same on this point. *See, e.g., United States v. $2,767,202.27 in U.S. Currency*, No. 1:03-cv-01289, 2006 WL 1989860, at *1 (C.D. Ill. July 13, 2006).





It is also undisputed that the Trustee has, to date, never exercised its discretion in favor of six of the Claimants.  According to the special interrogatory responses of Aisha Atiku Bagudu, Maryam Atiku Bagudu, Mohammed Atiku Bagudu, I.A.B., F.A.B., and H.A.B., none of them has ever received any disbursement or distribution from the Blue Family Trusts.  *See* Aisha Atiku Bagudu Interrog. Resps. at 20 (Resps. to Interrogs. 12 & 13), annexed to Khoo Decl. as Ex. 2; Maryam Atiku Bagudu Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 3; Mohammed Bagudu Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 4;  I.A.B. Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 5; F.A.B. Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 6; H.A.B. Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 7.  On the other hand, Ibrahim Atiku Bagudu asserts that he received a single distribution from Blue Family Trust II in the amount of €117,865.32 on or about May 21,

---

[7] [redacted] produced no documents indicating a protector has ever been appointed to either of the Trusts. *See* Khoo Decl. ¶¶ 27-28, at 6.

2013, and no distributions from Blue Family Trust I. Ibrahim Atiku Bagudu Interrog. Resps. at 20-21 (Resps. to Interrogs. 10 & 11), annexed to Khoo Decl. as Ex. 8. Ibrahim Bagudu asserts that he has received a total of eleven distributions from Blue Family Trust II during the period from on or about January 12, 2011, through on or about August 27, 2014, in a total amount of €5,139,671.61. Bagudu Interrog. Resps. at 22-23 (Resp. to Interrog. 11). He acknowledges that he has never received a distribution or disbursement from Blue Family Trust I. *Id.* at 22 (Resp. to Interrog. 10).

In sum, the Claimants have no present legal or beneficial interest in the current assets of the Blue Family Trusts,

[REDACTED]

## C. Ownership of the Claimed Assets

Two of the Claimed Assets—Assets 4(h) and 4(j)—are held in the name of Blue Holdings (1) Pte. Ltd. at J.O. Hambro Investment Management Ltd. (now known as Waverton Investment Management) and at James Hambro & Partners LLP, both located in the United Kingdom; the other two Claimed Assets—Assets 4(i) and 4(k)—are held in the name of Blue Holdings (2) Pte. Ltd. at the same U.K. firms.  Complaint ¶¶ 4(h)-4(k), at 6; *see also, variously*, Verified Claims (identifying the assets as being "held in the name of" Blue Holdings (1) Pte. Ltd. and Blue Holdings (2) Pte. Ltd.). [REDACTED]

[REDACTED] Thus, it is undisputed and indisputable that legal title to the Claimed Assets resides not in the Claimants or the Trustee but in the Blue Holdings Companies.  Tang Decl. ¶¶ 28-30.

The Blue Holdings Companies are registered in Singapore.  *See* Bagudu Interrog. Resps. at 17 (Resps. to Interrogs. 7(a) & 7(b)).

[REDACTED]

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████

Blue PTC Pte. Ltd. is also registered in Singapore. *See* Bagudu Interrog. Resps. at 17 (Resp. to Interrog. 7(c)). As a matter of Singapore law, a shareholder of a corporate entity—even a 100 percent shareholder—does not have an ownership interest in any of the specific assets held by the corporation. *See* Tang Decl. ¶¶ 28-30. Thus, while Blue PTC Pte. Ltd. has a legal interest in the shares of stock registered in its name, it *does not* have any legal interests in the Claimed Assets. The latter interests are vested entirely in the Blue Holdings Companies, in whose names the Claimed Assets are titled. Because they do not own the Claimed Assets, the Claimants cannot raise an innocent owner defense under 18 U.S.C. § 983.

## ARGUMENT

As detailed above, the Claimants bear the burden of demonstrating, by a preponderance of the evidence, that they possess a sufficiently clear and present interest in the Claimed Assets to establish Article III standing. That is, they must show a live case or controversy that threatens actual, imminent injury-in-fact. *8 Gilcrease Lane*, 641 F. Supp. 2d at 4. In the context of civil forfeiture, meeting this burden requires establishing "either an ownership or lesser possessory interest." *Id.* at 6. However, as detailed in the preceding Statement of Facts, there are at least two defects in the Claimants' asserted standing. First, they have, at most, a ███████████ interest in the ██████████ Blue Family Trusts' assets, and therefore they cannot show a live case or controversy. Second, even if the Claimants did have present, vested interests in the Trusts' assets, it remains the case that the Trusts do not directly own the Claimed Assets. Rather, the Trusts own

14

shares of stock in the Blue Holdings Companies, and those companies own the Claimed Assets. Critically, a shareholder—*even a sole shareholder*—does not have standing to contest the forfeiture of a corporation's assets. *See, e.g.*, *United States v. Real Prop. Associated with First Beneficial Mortg. Co.*, No. 3:08-cv-00285, 2009 WL 1035233, at *4 (W.D.N.C. Apr. 16, 2009).

## A.  Beneficiaries of a Discretionary Trust Lack Article III Standing to Contest Forfeiture

A trust beneficiary does not automatically have standing to challenge the forfeiture of a trust's assets, and beneficiaries of discretionary ███████████████████, never do. In *United States v. 8402 W. 132d St.*, 103 F. Supp. 2d 1040 (N.D. Ill. 2000), the court determined that even the beneficiaries of a *fixed trust* (granting to them the income from real property during the life of their father—the settlor—and ownership of the property at their father's death) did not have standing. The court noted that the beneficiaries "never exercised any control over the defendant [property]" and that, as with six of the Claimants in the instant case, the beneficiaries had never actually requested nor received any income from the property. *Id.* at 1042. Based on these and other factors, the court held that the beneficiaries "will suffer no actual or imminent injury" from forfeiture.[9]

Similarly, this Court, in discussing indicia of a genuine interest in property, identified as relevant factors the extent to which a putative claimant used the funds or made withdrawals or transfers on his or her own accord. *See United States v. Sum of $70,990,605 et al.*, No. 1:12-cv-01905, 2017 WL 573499, at *13 (D.D.C. February 13, 2017). The Claimants have put forth no evidence to demonstrate that they could withdraw or transfer the trust assets on their own accord.

---

[9] In a separate discussion, the court indicated that one of the beneficiaries lived in the defendant property and, as a result, forfeiture might present an actual injury to him as a resident, but not as a trust beneficiary. *8402 W. 132d St.*, 103 F. Supp. 2d at 1043. These are not our facts.

Indeed, they cannot make such a showing ███████████████████████████████

█████████████████████████████████

By contrast, the Seventh Circuit held that a fixed right to the proceeds of a future land sale was sufficient to establish standing. *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017 (7th Cir. 2000). In that case, the court noted that the beneficiary of a land trust lacked "the power to manage, lease or sell the property," but had a fixed interest in "the earnings, avails, and proceeds arising from the sale or disposition" of the defendant *in rem*. *Id.* at 1021. Thus, the beneficiary had "a right to future proceeds of unknown value." *Id.* at 1021-22. Even though the value of the future sales proceeds was uncertain, it was clear that the beneficiary had a vested interest in those proceeds regardless of how large or small they might later turn out to be. ████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████   In other words, the Claimants not only cannot say *how much* they will one day receive, they also cannot say—unlike the beneficiary in *Tuthill Road*—*whether* they will receive anything: ████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████

Moreover, in considering interests analogous to those advanced by the Claimants, courts have been unanimous that ████████████████████████████—such as the Claimants'—are *not* sufficient to confer standing. In *United States v. $90,000 in U.S. Currency*, 56 F. Supp. 3d 744 (D. Md. 2014), the daughter of a decedent claimed an interest in cash believed to have been the

proceeds of drug trafficking and held in the decedent's estate. Even though, in that case, the owner of the cash was already dead and the daughter stood ready to inherit the funds as soon as the estate could be administered in probate, the court held that until the estate was formally distributed, the daughter held only "a contingent future interest in the defendant property." *Id.* at 747. "Courts in this circuit have found that biological heirs with a future interest in defendant property lack standing in a forfeiture action because the estate is the only entity with a current in interest in the property." *Id.* In reaching its decision, the court relied on *United States v. 12636 Sunset Avenue, Unit E-2*, 991 F. Supp. 2d 709, 711-13 (D. Md. 2014), for the proposition that, between the time of death and the distribution of the estate, individual heirs lack "any ownership or possessory right in estate property" and therefore lack standing in a forfeiture action.

The District of Maryland is not alone in rejecting the standing of heirs and potential heirs. In *United States v. 477 Firearms*, 698 F. Supp. 2d 894 (D. Mich. 2010), the court held that, under Michigan law, "potential heirs and legatees have a mere expectancy interest," which is not a "legally cognizable interest." *Id.* at 900. "The Claimants' mere possibility of eventually obtaining the [defendants *in rem*] is insufficient to confer standing to contest their forfeiture." *Id.* at 901. The cases in both the district courts and courts of appeals are uniform that heirs and potential heirs do not have standing to contest a forfeiture action. *See also United States v. Antonelli*, No. 1:95-cr-00200, 1998 WL 775055, at *1 (N.D.N.Y. Nov. 2, 1998) ("[B]iological relation as direct descendants of the title holder . . . is an insufficient foundation to establish a future interest in the forfeited property."); *United States v. Murphy*, 850 F. Supp. 981, 983 (M.D. Fla. 1994) ("Future expectation of ownership by a child is insufficient to give a child standing to contest forfeiture."); *United States v. One Parcel of Prop. at RR 2*, 959 F. 2d 101, 103-04 (8th Cir. 1992) (same); *United States v. One Rural Lot*, 739 F. Supp. 74, 78 (D.P.R. 1990) (same; collecting cases).

There is no material difference between the asserted interests of potential heirs and the asserted interests of the Claimants. In both cases, the parties rely on the expectation—well founded or ███████████████████████████████████████████████████████████████ ████████████████████████████████████ If anything, the Claimants' interests are even more attenuated than those of potential heirs. Heirs apparent can be assured that, in the long run, death, like taxes, is inevitable. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Another group of cases concerning marital property interests is also on point. In *United States v. $11,500 in U.S. Currency*, 797 F. Supp. 2d 1092 (D. Or. 2011), a husband asserted an interest in defendant property on the theory that, in the event of divorce, he would be entitled to a rebuttable presumption that cash titled in his wife's name should be treated as co-owned. The court rejected this. The future interest the husband might assert if the couple were to divorce "does not create an ownership interest by operation of law during the course of the marriage." *Id.* at 1097. As in the case of heirs, the courts are unanimous that marital interests contingent upon dissolution of marriage do not establish present standing in forfeiture proceedings: "An unvested marital estate is insufficient to confer Article III and statutory standing." *United States v. Two Real Props. Situated in Bluefield*, No. 1:06-cv-00532, 2009 WL 3181453, at *7 (S.D. W. Va. Sept. 29, 2009) (collecting cases); *see also United States v. Cochenour*, 441 F.3d 599, 601 (8th Cir. 2006) (married claimant lacks standing to contest forfeiture based on Missouri statute creating tenancy by the entirety upon divorce); *United States v. 148 Maunalanikai Place*, 1:07-cv-00049,

2008 WL 3166799, at *7 (D. Haw. Aug. 6, 2008) ("[A] right to equitable distribution of marital property in a divorce does not confer an ownership interest independent of the divorce proceeding.").

In the recent case *United States v. Batato*, 833 F.3d 413 (4th Cir. 2016), an estranged wife argued that, under New Zealand law, she had the right to assert a claim to marital property owned by her husband and a presumption that she was entitled to half. *Id.* at 435. Despite the couple's estrangement and the rights and interests afforded under New Zealand law, the Fourth Circuit determined that the wife did *not* have Article III standing. The court held that the wife's right to advance a claim to the property "does not rise to the level of a legal or equitable interest sufficient to satisfy Article III." *Id.* In other words, a right to state a claim to property was distinct from a vested right to the property itself. Until the claim was resolved in the wife's favor, her interest in the property was too speculative to support constitutional standing. New Zealand law, the court held, "recognized an interest in a *claim*, not an interest in *property*." *Id.* (emphasis added). By analogy, even if the Claimants had a right to sue the Trustee ████████████████████████ ████████████████████████████████████ they would nevertheless still lack a sufficient interest in the trust property until and unless their suit were heard and resolved in their favor.

Thus, while spouses may have unvested, contingent interests in marital property, those interests are too inchoate to support Article III standing in civil forfeiture cases. While there is a significant possibility that, based on future events, a spouse's interests will ripen into cognizable legal claims, that mere potential does not create an actual or imminent injury-in-fact ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ they remain for the time being without

sufficient nexus to meet their Article III burden.

Courts have also weighed the interests of trust beneficiaries and their standing to pursue

legal claims outside the civil forfeiture context, and such cases can be instructive. For example,

the Ninth Circuit has held that even the beneficiary of a *non-contingent* trust was not a party-in-

interest with standing to participate in bankruptcy proceedings. *In re Tower Park Props.*, 803 F.3d

450 (9th Cir. 2015). Although the proceedings at issue could have diminished the value of the

trust's assets, the court found that the beneficiary lacked "any direct ownership interest in the Trust

assets, nor any legal entitlement to control or manage those assets at this time." *Id.* at 460. As

such, the beneficiary had no "legally protected interest" in the assets, *id.*, and, "[i]n general, a trust

beneficiary is not the entity positioned to take legal recourse to protect the trust assets . . . ," *id.* at

459. The beneficiary in *Tower Park Properties*—who enjoyed a vested, non-contingent beneficial

interest in the trust assets—clearly faced a more actual and imminent threat of harm than do the

Claimants.[10]

In summary, there is no dispute of material fact with respect to the Claimants' asserted

interests in the Blue Family Trusts' assets. ████████████████████████████████████

████████████████████████████████████ All that remains is for the Court to consider

whether, as a matter of U.S. law, these undisputed and indisputable interests are sufficient to confer

Article III standing in the instant action. As the preceding discussion shows, Courts have reviewed

the standing of *fixed trust* beneficiaries on a case-by-case basis and, in certain situations, have

---

[10] The simple requirement of actual and imminent injury "states a limitation on judicial power, not merely a factor to be balanced in the weighing of so-called prudential considerations." *Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 475 (1982). However, the requirement that a litigant show actual and imminent injury is also sound policy. It avoids turning the judicial process into "no more than a vehicle for the vindication of the value interests of concerned bystanders." *Id* at 473.

denied standing even to well defined beneficiaries with vested present and future interests.  *See*
*8402 W. 132d St.*, 103 F. Supp. 2d at 1042; *In re Tower Park Props.*, 803 F.3d at 459-60. ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■  And, in closely analogous cases
concerning the interests of heirs, legatees, and spouses, both district and appellate courts from
across the country are unanimous in holding that such unvested, defeasible interests are too remote,
too speculative, and too contingent to satisfy the case-or-controversy requirements of Article III.
For these reasons, the Court should strike all claims advanced by the Claimants, with the exception
of Ibrahim Bagudu's asserted interest in the present value of the Annuity.

## B.  Shareholders Lack Article III Standing to Contest Forfeiture of Corporation's Assets

For the reasons just given, the Claimants have no legally cognizable interest in the Blue
Family Trusts' assets, other than in the Annuity.  Nevertheless, even assuming that they *did* have
such interests in the Trusts' assets, it is undisputed and indisputable that the Trusts' assets are *not*
the Claimed Assets.  Rather, the Trusts' assets are shares of stock in the Blue Holdings Companies,
and it is the Blue Holdings Companies that, in turn, own the Claimed Assets.  The Claimants
appear to believe that this layered corporate structure is irrelevant and that the Trustee, by virtue
of its ownership of the Blue Holdings Companies' shares, has effective ownership of those
companies' assets, including the Claimed Assets.  But this is legally incorrect: it is beyond dispute
that a corporate shareholder does not have standing to contest the forfeiture of a corporation's
assets.  *See, e.g.*, *United States v. Young*, 77 F. Supp. 3d 1191, 1192 (D.  Utah 2014).

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



Yet, "[e]stablished case law has made clear that shareholders of a corporation and members of an LLC do not have standing to challenge forfeiture of the entity's assets." *Young*, 77 F. Supp. 3d at 1192; *see also United States v. 479 Tamarind Dr.*, No. 1:98-cv-02279, 2011 WL 1045095,

at *2 (S.D.N.Y. Mar. 11, 2011) ("[A] shareholder has no standing to contest the forfeiture of an asset of a corporation because shareholders do not have an ownership interest in any specific property owned by that corporation."); *United Sates v. New Silver Palace Restaurant, Inc.*, 810 F. Supp. 440, 442 (E.D.N.Y. 1992) ("Since the shareholder claimants are neither the owners nor lienholders with respect to corporate assets, they have no standing in this forfeiture proceeding."); *see generally Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . ." (citations omitted)).

The principle that shareholders do not have standing to challenge the forfeiture of a corporation's assets applies equally to closely held companies and even to companies with a single shareholder. In *United States v. Real Property Associated with First Beneficial Mortgage Co.*, No. 3:08-cv-00285, 2009 WL 1035233, at *4 (W.D.N.C. Apr. 16, 2009), the court held that a sole shareholder lacked standing to contest the forfeiture of his company's property: "The law cannot allow a sole corporate shareholder to disregard the corporate entity when it suits him and allow him the benefit of the corporate entity when he desires." *See also United States v. Dupree*, 781 F. Supp. 2d 115, 140 (E.D.N.Y. 2011) (owner of a limited liability company lacked valid property interest in funds seized from company's bank account); *United States v. Two Bank Accounts*, Nos. 1:06-cv-04016 & 1:06-cv-04005, 2008 WL 5431199, at *5 (D.S.D. Dec. 31, 2008) (one hundred percent shareholder "failed to demonstrate a sufficient interest in the bank accounts to create a case or controversy"). Singapore is in agreement with U.S. law in this regard: the shareholders of a Singapore company do not have a legal interest in any specific asset owned by that company. Tang Decl. ¶¶ 28-30.

Applying clearly established Singapore and U.S. law to the undisputed facts of this case, it is readily apparent that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ Rather, the only parties that would have had standing to challenge the forfeiture of the Claimed Assets are, in fact, the Blue Holdings Companies themselves, which is to say, Blue Holdings (1) Pte. Ltd. and Blue Holdings (2) Pte. Ltd. Although the government sent notice of the Complaint to counsel for the Blue Holdings Companies on or about March 28, 2014, *see* Aff. in Supp. of Default, June 2, 2014, ¶ 8(b), at 5 (ECF No. 44), neither company chose to appear or to file a claim to the Claimed Assets. The reasons for this failure are unknown and, ultimately, irrelevant. The law is clear that their failure to appear does *not* give their shareholder standing to press an independent claims to the assets.[11]

████████████████████████████████████████████████████████████████████

████████████████████████████████████ And if the Trustee, as the shareholder of the Blue Holdings Companies, lacks standing to participate in this forfeiture action—as it clearly does under established precedent—then the claims of individuals who do not even own such stock, but for whose potential benefit the shares are held, are even more tenuous, remote, and legally void.

*         *         *

The Claimants' asserted interests in the Claimed Assets are undermined by two separate and independent defects. Either alone would be sufficient to dismiss their claims; together, they present an insurmountable obstacle to Article III standing. ████████████████████████████████

████████████████████████████████████ other than Ibrahim Bagudu's interest in the

---

[11] Nor, it should be made clear, could the Claimants assert an interest in the defendant assets on the Trustee's behalf. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Annuity. ████████████████████████████████████████████████

████████████████████████████████████████████ No court
has ever held that such a vague, attenuated, and contingent interest is sufficient to confer Article III standing in a civil forfeiture case. And, indeed, within both the forfeiture and bankruptcy contexts, courts have held that even the beneficiaries of *fixed* trusts—whose interests are well defined and indefeasible—lack Article III standing for the simple reason that they do not have legal title, dominion, or control over the trust's assets. And courts have unanimously found that future contingent interests of the sort advanced by heirs, legatees, or spouses, do not confer Article III standing. Such interests are indistinguishable ██████████████████████████
████████████████████████████████ For this reason alone, the claims should be dismissed in their entirety, with the exception of Ibrahim Bagudu's claim to the present value of a $100,000 per annum annuity.

But even if the Claimants could bootstrap their way to asserting an interest in the assets of the Blue Family Trusts, the fact remains that those assets are distinct from the Claimed Assets.
████████████████████████████████████████████████ However, it is well established that a corporate shareholder does not have standing to challenge the forfeiture of the corporation's property. Here, if the Trustee lacks standing, as a mere shareholder, to challenge the forfeiture of the Blue Holdings Companies' assets, so much the less do the Claimants have standing—as the mere potential beneficiaries of the █████████████████ trust—to mount a challenge of their own. For this independent reason, the Claimants' claims should be struck in their entirety, *including Ibrahim Bagudu's claim to the Annuity.*[12]

---

[12] Ibrahim Bagudu's claim to the Annuity is a claim on the assets of the Blue Family Trust II. Those assets are, exclusively, the shares in Blue Holdings (2) Pte. Ltd. held by the Trustee. In order to make good on the Annuity, the Trustee will need to sell or redeem those shares. It does not have the legal authority to pay any monies directly from the Claimed Assets as those assets are the property of the holding company, not the Trustee.

## CONCLUSION

It is the Claimants' burden at this stage of the litigation to prove by a preponderance of the evidence that they have present, vested interests capable of actual or imminent injury in order to establish Article III standing and remain in the case. For the foregoing reasons, they are unable to meet this burden. The United States therefore respectfully requests that this Court enter the attached order pursuant to Supplemental Rule G(8) striking all claims in this forfeiture action.

Dated:  March 3, 2017                       Respectfully submitted,

                                            DEBORAH CONNOR, ACTING CHIEF
                                            MONEY LAUNDERING AND
                                            ASSET RECOVERY SECTION

                                            By:  _/s/ Elizabeth A. Aloi_____
                                            ELIZABETH A. ALOI
                                            MICHAEL W. KHOO
                                            Money Laundering and Asset Recovery Section
                                            Criminal Division
                                            U.S. Department of Justice
                                            1400 New York Avenue, NW, 10th Floor
                                            Washington, DC  20530
                                            Tel:    (202) 514-1263
                                            Fax:    (202) 514-5522

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA