**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,                )<br>                                                                )<br>                        Plaintiff,               )<br>                                                                )<br>                v.                                           )<br>                                                                )<br>ALL ASSETS HELD IN ACCOUNT NUMBER )<br>80020796, IN THE NAME OF                     )<br>DORAVILLE PROPERTIES CORPORATION, )<br>AT DEUTSCHE BANK INTERNATIONAL,    )<br>LIMITED IN JERSEY, CHANNEL ISLANDS, )<br>AND ALL INTEREST, BENEFITS, OR ASSETS )<br>TRACEABLE THERETO, *ET AL.*,             )<br>                                                                )<br>                        Defendant.             )<br>                                                                ) | Case No. 13-cv-1832 (JDB) |

**JOINT STATUS REPORT**

Plaintiff, the United States of America (the "Government"), and Claimants submit this Joint Status Report in accordance with the instructions the Court issued to the parties after the May 17, 2017 status hearing to file a joint report after completing the process it set forth to attempt to resolve the Government's April 21, 2017 motion to exclude six Foreign Documents it submitted to the Court for *in camera* review from discovery (the "*In Camera* Documents"). (*See* Minute Entry, May 17, 2017.)  The parties also take this opportunity to update the Court on their progress in attempting to resolve the larger dispute concerning the remaining documents and communications the U.S. exchanged with foreign authorities that the Government continues to withhold on the bases of confidentiality under Mutual Legal Assistance Treaties ("MLATs") and understandings with foreign nations (the "Foreign Documents").

## I.  STATUS OF THE *IN CAMERA* DOCUMENTS

On April 21, 2017, the Government moved the Court for an Order precluding the *In Camera* Documents from production in discovery on the bases that the documents have no real relevance to the claims and defenses at issue in the case and contain information that is too sensitive to share with Claimants even on an "attorney's eyes only" basis.  The *In Camera* Documents include four documents involving law enforcement personnel from the Isle of Jersey, who, according to the Government, specifically requested that the documents be withheld, and two documents involving personnel from the U.K.'s National Crime Agency ("NCA").  On May 1, 2017, Claimants opposed the Government's motion, arguing that, based on the descriptions the Government provided in its moving brief, the *In Camera* Documents appeared to be highly relevant to the claims and defenses at issue in the case, and the Court's Protective Order adequately addresses and fully mitigates any confidentiality concerns the Government has concerning the documents.

The Parties participated in a status conference concerning this matter on May 17, 2017. In an attempt to resolve the Government's motion, the Court instructed the Government to confer with the relevant Jersey authorities about disclosure of the four *In Camera* Documents that involve Jersey law enforcement personnel, and thereafter provide Claimants with an opportunity to conduct an "attorney's eyes only" review of all six of the *In Camera* Documents, subject to the Government's redaction of legal analysis from the documents. The Court further instructed the Government to provide it with copies of the redacted *In Camera* Documents that the Government would show Claimants' counsel on an attorney's eyes only basis and the parties to submit a joint status report after this process was completed. (*See* Minute Entry, May 17, 2017.)

After the May 17 hearing, the Government consulted with the Jersey authorities and informed Claimants' counsel that Jersey no longer objected to disclosure of the four *In Camera* Documents that involved its law enforcement personnel subject to the terms of the existing Protective Order. The Government also informed Claimants that the Court's clerk informed the Government that the Court no longer needed copies of the *In Camera* Documents that the Government intended to show Claimants' counsel in redacted form during an "attorney's eyes only" review at this stage. Thereafter, on June 14, 2017, the parties completed an "attorney's eyes only" review of the *In Camera* Documents. The Government did not make any redactions to the four *In Camera* Documents that involved law enforcement personnel from Jersey. The Government made the two other *In Camera* Documents that involved communications between U.S. and personnel from the U.K.'s NCA available for review with certain redactions. The Government represented to Claimants' counsel at the "attorney's eyes only" review that the redactions it applied to the U.K.-related *In Camera* Documents concerned solely analyses of certain legal requirements related to (i) obtaining a disclosure order under U.K. law, (ii) the

contents of MLAT requests submitted to the U.K., and (iii) legal limitations on MLAT requests submitted to the U.K.

After reviewing the six *In Camera* Documents, Claimants reasserted that the documents are highly relevant and probative of the claims and defenses at issue in this case, and any confidentiality concerns the Government expressed concerning these documents would be fully addressed by the redactions the Government applied to the two U.K.-related documents and by the Protective Order. On these bases, Claimants requested that the Government produce the six *In Camera* Documents and agreed that the Government may produce the two U.K.-related documents as redacted by the Government. The Government disagrees with the Claimants characterization of the documents, but nevertheless agreed to produce all of the *In Camera* Documents in an effort to resolve the dispute in an expeditious fashion and has informed Claimants that they are included in the document production Claimants received from the Government on July 11, 2017. The parties have therefore resolved the issues concerning the *In Camera* Documents. As the Government's motion to preclude production of the *In Camera* Documents in discovery remains pending, the Government respectfully requests that the Court dismiss the motion as moot.

## II. STATUS OF THE REMAINING FOREIGN DOCUMENTS

The parties have made significant progress in attempting to implement the process the Court ordered the parties to follow at the March 6, 2017 status conference for potential resolution of Claimants' concerns with the Government's withholding of the rest of the Foreign Documents from production. As discussed in the parties' May 10, 2017 Joint Status Report, the parties completed an initial "attorney's eyes only" review of 101 Foreign Documents that the Government identified as non-ministerial and non-duplicative and responsive to the 14 categories of information Claimants provided in their March 13, 2017 letter to the Government.

The Government also showed Claimants 10 documents in redacted form that were originally part of the set of documents that it intended to submit to the Court for the *in camera* review discussed above. The documents made available by the Government did not in all instances include complete family units, i.e., email attachments did not always include the attaching cover emails, and cover emails did not always include all attachments. The Claimants have been provided with the Production and Privilege Bates Numbers of correlating the family members so that, in the Government's view, they can review the family sets, or understand why portions of the family sets may have been withheld from discovery.

As noted in the May 10 Joint Status Report at Outstanding Item (3), after the initial "attorney's eyes only" review, Claimants' counsel raised the issue with the Government that a handful of cover emails and email attachments were not part of the review while other documents in those family units were made available for review. In response, the Government agreed to make these documents, along with certain other documents, including Egmont request-related Foreign Documents, available for a second "attorney's eyes only" review. On May 17, 2017, the parties completed this second review, which consisted of 22 additional Foreign Documents provided by the Government.

While it is Claimants' position that all of the documents and communications reviewed are relevant and responsive to their discovery requests, 99 of the documents reviewed during the two "attorney's eyes only" sessions are, according to the Claimants, highly relevant and probative of the claims and/or defenses raised in this litigation. In addition, it is the Claimants' position that any confidentiality concerns that the Government might have with regard to these documents would be fully addressed by the Protective Order. Claimants requested that the Government produce these 99 documents from the two "attorney's eyes only" reviews in

complete family units. As discussed in the May 10 Joint Status Report at Outstanding Item (1), the Government proposed producing certain of the documents Claimants requested from the first "attorney's eyes only" review with redactions. The Government subsequently identified the redactions it wished to make to 15 of the documents Claimants requested be produced from the first "attorney's eyes only" review and Claimants ultimately agreed to all but one redaction. The Government agreed to produce the documents Claimants reviewed during the second "attorney's eyes only" review except for certain Egmont request-related Foreign Documents for which the Government had not yet received consent from the applicable foreign jurisdictions for disclosure.

On May 30, 2017, the Government produced 13 of the documents Claimants requested from the "attorney's eyes only" reviews. The Government has informed Claimants that the balance of the Foreign Documents Claimants requested for production were included in the Government's July 11 production to Claimants, except for the one document in which there is a dispute concerning the Government's proposed redaction and certain Egmont request-related documents for which the Government has yet to obtain the consent from the relevant foreign jurisdiction.

### III.   OUTSTANDING ITEMS

While the parties have made progress in resolving the dispute over the Government's withholding of the Foreign Documents through three "attorney's eyes only" reviews and the Government's subsequent productions of Foreign Documents as a result of these reviews, several outstanding issues remain. First, as noted above, the Government is still waiting for the consents of all applicable jurisdictions before it can make a complete production of the Egmont request-related Foreign Documents that Claimants requested it produce. On July 7, 2017, the Government informed Claimants that it has not yet received consents from the U.K., France, and the British Virgin Islands for the production of the Egmont documents related to these

jurisdictions and that the requests for consent are still pending. The fact that the Government cannot complete its agreed-upon production of Foreign Documents until these jurisdictions provide consent for disclosure of the Egmont request-related Foreign Documents serves as one basis for the parties' separately filed Consent Motion to extend the amended discovery deadlines set forth in the Court's March 7, 2017 Order (ECF No. 189).

In the interest of compromise, Claimants agreed that the Government need not produce Egmont request-related materials included in the second "attorney's eyes only" review set that appeared to concern certain HSBC accounts that the Government named as defendant assets and otherwise referenced in the Complaint if the Government stipulated that: (i) the funds associated with the HSBC accounts, on the one hand, and the funds associated with the Claimed Property, or funds the Government alleges are traceable to the Claimed Property, on the other hand, were not commingled in any way; (ii) the transfers associated with the HSBC accounts are not part of the money laundering conspiracy alleged in the Third Claim for Forfeiture in the Complaint; and (iii) the alleged Dumez Extortion, which fraud the Government alleges is related to the HSBC accounts, is not related to the Government's forfeiture claims against the Claimed Property, and the Government will not refer to the Dumez Extortion or the conduct allegedly related to the Dumez Extortion in any way at any point in this litigation in support of its forfeiture claims against the Claimed Property. The Government has agreed to review a stipulation in this regard and the parties will attempt to reach a resolution concerning the documents related to these HSBC accounts over the next few weeks.

Second, Claimants have repeatedly requested that the Government produce the Foreign Documents from the "attorney's eyes only" reviews in family units, and the Government has declined. It is Claimants' position that production of documents as family units is essential for

providing the context and authenticity of the documents that the Government has agreed to produce and would conform with the requirements of Federal Rule of Civil Procedure 34(b)(2)(E). In addition, any burden on the Government of producing the documents Claimants requested from the "attorney's eyes only" reviews in complete family units is minimal at best, in particular if a cover email was withheld by the Government not because of any privilege, but rather because it is merely ministerial in nature, "duplicative" of another document produced in discovery, and/or non-responsive to the 14 categories of information Claimants provided in their March 13, 2017 letter to the Government. The Claimants therefore believe that the Government has no basis to withhold these documents and they should be produced. Accordingly, Claimants respectfully request that the Court require the Government to provide the Foreign Documents that it has agreed to produce in complete family units.

The Government reiterates that it has provided the Claimants with the Production and Privilege Bates Numbers of correlating the family members so that the Claimants can review the family sets, or understand why portions of the family sets may have been withheld from discovery. The Government also notes that in its initial privilege review, the Government considered an email with its attachments as one communication for the purpose of its privilege designations, but decoupled these designations after subsequent negotiations with the Claimants. The process, undertaken at the Claimants' request, took a significant amount of time and resources. The Government has already provided to the Claimants ample information permitting them to understand the family groups for the documents under dispute.

Third, as noted above, the Government proposed that 15 of the Foreign Documents Claimants requested for production from the first "attorney's eyes only" review be produced in redacted form. Claimants agreed to all of the Government's proposed redactions except for one

statement that, in Claimants' view, does not comprise of legal analysis of a foreign authority or the U.S., or even involve those parties. While Claimants consider the Government's proposed redaction of this statement to be improper, they are reserving all rights to object to this redaction at a later time. In the interim, Claimants request that the Government produce this document as they believe the unredacted portions of the email are highly relevant to the claims and defenses in this case and any confidentiality concerns the Government has concerning this document are minimal and adequately addressed by the Protective Order. The Government agrees to produce the redacted version. According to the Government, the proposed redaction protects the exact type of candid information necessary for the successful exchange of mutual legal assistance that would be chilled if the Court ordered all foreign communications to be produced, notwithstanding the mutual legal assistance treaties, practices and norms.

Finally, Claimants' still need to vet the population of Foreign Documents that the Government excluded from the two "attorney's eyes only" and "*in camera*" reviews. As noted in the parties' May 10 Joint Status Report as Outstanding Item (3), the Government has provided Claimants with two logs that purport to identify the Foreign Documents that it excluded from the "attorney's eyes only" and "*in camera*" reviews because the documents (i) are not responsive to Claimants' 14 categories of relevant information, and/or (ii) fall into one of the categories of documents the Government is permitted to withhold at this time (i.e., purely ministerial communications, information related solely to the publication and service of the Complaint, other types of notice to known potential Claimants, or service of the arrest warrants *in rem*, and "duplicates"). The Government represented to Claimants that these logs identify all of the Foreign Documents the Government continues to withhold from production. Claimants are in the process of assessing these logs and will confer with the Government over the next few weeks

with any questions and follow-up requests concerning the Government's methodology for determining which documents it excluded from the "attorney's eyes only" reviews.  The parties will endeavor to resolve any disputes that arise out of Claimants' review, which may include an additional "attorney's eyes only" review.  This ongoing process serves as another basis for the parties' Consent Motion to extend the amended discovery deadlines the Court set forth in its March 7 Order.  In addition, the Government has previously agreed to produce a new, combined, and enhanced master privilege log that will include all of the entries from all of its privilege logs.  The Government has yet to provide Claimants with this final, master log, which it agreed to do at the conclusion of the pending discovery dispute.  The Government agrees to produce a master log at this time, and meet and confer with the Claimants about any privilege designations.

**IV.     CONCLUSION**

The parties look forward to the Court's resolution of the open items addressed in this Joint Report and are available to provide any further information the Court may require.

Dated: July 13, 2017

Respectfully submitted,

| | |
|---|---|
| DEBORAH CONNOR, ACTING CHIEF MONEY LAUNDERING AND ASSET RECOVERY SECTION | BAKER & HOSTETLER LLP |
| */s/ Elizabeth A. Aloi* | */s/ Jonathan R. Barr* |
| Elizabeth A. Aloi<br>Money Laundering and Asset Recovery Section<br>Criminal Division<br>U.S. Department of Justice<br>1400 New York Avenue, NW, 10th Floor<br>Washington, DC 20530<br>T: (202) 514-1263<br>F: (202) 514-5522<br><br>*Attorneys for Plaintiff* | Jonathan R. Barr (D.C. Bar No. 437334)<br>1050 Connecticut Ave. NW, Suite 1100<br>Washington, DC 20036<br>T: (202) 861-1500<br>F: (202) 861-1783<br>E: jbarr@bakerlaw.com<br><br>Jonathan B. New<br>E: jnew@bakerlaw.com<br>Patrick T. Campbell<br>E: pcampbell@bakerlaw.com<br>45 Rockefeller Plaza<br>New York, New York 10111-0100<br>T: (212) 589-4200<br>F: (212) 589-4201<br><br>*Attorneys for Claimants* |