# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

ALL ASSETS HELD IN ACCOUNT
NUMBER 80020796, IN THE NAME OF
DORAVILLE PROPERTIES CORP.,
AT DEUTSCHE BANK INTERNATIONAL,
LTD. IN JERSEY, CHANNEL ISLANDS,
AND ALL INTEREST, BENEFITS OR
ASSETS TRACEABLE THERETO, et al.,

     Defendants.

              Civil Action No. 13-1832 (JDB)

## MEMORANDUM OPINION

The United States brings this in rem action pursuant to 18 U.S.C. § 981(a)(1)(A) seeking forfeiture of sixteen defendant properties alleged to have been part of "an international conspiracy to launder proceeds of corruption in Nigeria during the military regime of General Sani Abacha." Compl. [ECF No. 1] ¶¶ 1, 4. Eight claimants—all relatives of an individual alleged to have been involved in the conspiracy—filed verified claims of interest in four defendant investment portfolios, asserting that they are the beneficiaries of a trust structure that owns these portfolios. The government has moved to strike the verified claims, on the ground that claimants lack Article III standing to contest the forfeiture. For the reasons explained below, the Court will grant the government's motion to strike as to seven of the eight claimants, and grant in part and deny in part the government's motion to strike as to the remaining claimant, Ibrahim Bagudu.

# BACKGROUND

## I.    PROCEDURAL HISTORY

The United States commenced this action on November 18, 2013, by filing a verified complaint for forfeiture in rem against five corporations, seven bank accounts, and four investment portfolios. The government alleges that Nigeria's former de facto President General Sani Abacha, his sons Mohammed Sani Abacha and Ibrahim Sani Abacha, their associate Abubakar Atiku Bagudu, Nigeria's former National Security Advisor Ismaila Gwarzo, Nigeria's former Minister of Finance Chief Anthony Ani, and others "embezzled, misappropriated, defrauded, and extorted hundreds of millions of dollars from the government of Nigeria" and then "transported and laundered the proceeds . . . through conduct in and affecting the United States." Id. ¶¶ 1, 8–15. The defendant properties are alleged to contain proceeds from these illegal activities.

On May 1, 2014, eight claimants—all relatives of Abubakar Atiku Bagudu—filed verified claims of interest in the four defendant investment portfolios (the "claimed assets").[1] See Verified Claims and Statements of Interest [ECF Nos. 17–19, 21–25]. The claimed assets are described in paragraphs 4(h) through 4(k) of the Complaint as follows:

> h) All assets held in the name of Blue Holding[s] (1) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at J.O. Hambro Investment Management Limited[2] in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(h)"];
>
> i) All assets held in the name of Blue Holding[s] (2) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at J.O. Hambro Investment Management Limited in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(i)"];
>
> j) All assets held in the name of Blue Holding[s] (1) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at James Hambro &

---

[1] Initially, there were ten claimants, but two withdrew their claims. See Unopposed Mot. to Withdraw Verified Claims of Zainab Shinkafi Bagudu and R.A.B. [ECF No. 66]; Aug. 19, 2014 Minute Order Granting Mot. to Withdraw Verified Claims of Zainab Shinkafi Bagudu and R.A.B.

[2] J.O. Hambro Investment Management Limited has changed its name to Waverton Investment Management.

Partners LLP, in the United Kingdom, and all interest, benefits, or assets traceable thereto ["Asset 4(j)"]; and

k) All assets held in the name of Blue Holding[s] (2) Pte. Ltd., on behalf of or traceable to Ridley Group Limited and/or the Ridley Trust, at James Hambro & Partners LLP, in the United Kingdom and all interest, benefits, or assets traceable thereto ["Asset 4(k)"].

Compl. ¶¶ 4(h)–(k).

Five claimants are adults: Ibrahim Bagudu (Abubakar Atiku Bagudu's brother), Aisha Atiku Bagudu (one of Bagudu's wives), and Ibrahim Atiku Bagudu, Mohammed Atiku Bagudu, and Maryam Atiku Bagudu (Bagudu's adult children). The remaining three claimants are minor children of Abubakar Atiku Bagudu and Aisha Atiku Bagudu: I.A.B., F.A.B., and H.A.B. Claimants uniformly assert that they have a "beneficial ownership interest and/or financial stake" in the claimed assets as beneficiaries of two trusts: Blue Family Trust I and Blue Family Trust II (collectively, the "Blue Family Trusts"). See, e.g., Ibrahim Bagudu Verified Claim [ECF No. 19] ¶¶ 2(a)–(h), 3. Claimant Ibrahim Bagudu asserts an additional interest in the claimed assets because he is "entitled to receive—and [has] receive[d]—a $100,000 annual annuity from Blue Family Trust II." Id. ¶ 2(i).

On March 3, 2017, the government filed a motion to strike claimants' verified claims on the ground that claimants lack Article III standing to contest this forfeiture action. Pl.'s Mot. to Strike [ECF No. 165] at 1. The motion has now been fully briefed, and a hearing was held on October 26, 2017, followed by supplemental briefing. Because the trust structure is at the heart of the standing inquiry, the Court will first describe the Blue Family Trusts.

## II. THE BLUE FAMILY TRUSTS

The Blue Family Trusts were established in July 2010 as a successor trust structure to the Ridley Trust. Stmt. of A. Mullins ("Mullins Stmt.") [ECF No. 187-24] ¶ 3. Blue PTC Pte. Ltd.

("Blue PTC"), a company registered in Singapore, serves as the trustee for the Blue Family Trusts. Id. ¶ 4; see Ibrahim Bagudu Interrog. Resp. [ECF No. 163-4] at 10–11. The Blue Family Trusts' assets consist entirely of shares of stock in two other Singapore Companies: Blue Holdings (1) Pte. Ltd. and Blue Holdings (2) Pte. Ltd. (collectively, the "Blue Holdings Companies"). Blue PTC holds 100% of the ordinary and redeemable preference shares of the Blue Holdings Companies. See Bus. Profiles of Blue Holdings (1) Pte. Ltd., Blue Holdings (2) Pte. Ltd. [ECF Nos. 165-10 & 165-11]; Mullins Stmt. ¶ 5. Blue PTC holds no other assets. Mullins Stmt. ¶ 5.

The terms governing the Blue Family Trusts are set forth in two deeds of settlement. See Deed of Settlement of Blue Family Trust I ("Deed I") [ECF No. 165-3]; Deed of Settlement of Blue Family Trust II ("Deed II") [ECF No. 165-4]. The Blue Family Trusts are irrevocable trusts that are to be "construed according to the laws of Singapore." Deed I ¶¶ 3, 20; Deed II ¶¶ 3, 20. They are discretionary, as opposed to fixed, trusts. See Decl. of Prof. Tang Hang Wu ("Tang Decl.") [ECF No. 165-19] ¶ 13; Decl. of Prof. Hans Tjio ("Tjio Decl.") [ECF No. 187-23] ¶ 1. In a fixed trust, the shares of the beneficiaries are explicitly fixed from the outset. Tang Decl. ¶ 4. In contrast, in a discretionary trust the shares of beneficiaries are not fixed from the outset; instead, the trustee is typically given the authority in the trust deed to determine whether to apply trust assets for the benefit of beneficiaries.[3] Id.

Claimants are among the currently named beneficiaries of the Blue Family Trusts. The beneficiaries listed in the Third Schedule for Blue Family Trust I include all of the claimants, as

---

[3] Discretionary trusts are commonly used in jurisdictions based on English common law (including Singapore) because, inter alia, they accommodate the need to react to changes in circumstances of the beneficiaries and they provide protection from the beneficiaries' creditors. Tang Decl. ¶ 5; see Glister & Lee, Hanbury & Martin: Modern Equity ¶ 9-015, at 192–93 (20th ed. 2015).

well as one non-claimant.[4]  Deed I at 16–17.  The beneficiaries listed in the Third Schedule for

Blue Family Trust II include all the claimants, as well as two non-claimants.  Deed II at 16–17.

The discretionary nature of the Blue Family Trusts is evident from the terms of the deeds

of settlement, which state that the trustee "may":

> pay or apply the income of the Trust Fund to or for the benefit of all or such one
> or more of the Beneficiaries exclusive of the other or others of them as shall for
> the time being be in existence and in such shares if more than one and in such
> manner generally as the Trustees shall in their absolute discretion from time to
> time think fit.

Deed I ¶ 5(c) (emphasis added); Deed II ¶ 5(c) (same).  The trustee also has discretion to decline

to distribute income to any of the beneficiaries and, instead, may apply all of the trusts' income to

pay maintenance costs, liabilities, or to add to the trust capital.  Deed I ¶¶ 5(a), (b), (d); Deed II

¶¶ 5(a), (b), (d).  The trustee's discretion is similar with respect to capital—it may apply the trusts'

capital "to or for the benefit of all or such one or more of the Beneficiaries exclusive of the other

or others of them."  Deed I ¶ 6(b); Deed II ¶ 6(b).  Hence, if the trustee decides to distribute income

or capital, it has absolute discretion to restrict such payouts to a subset of beneficiaries.  In other

words, the trustee could distribute all income and capital to some combination of the non-claimant

beneficiaries, leaving nothing for the claimants.  Furthermore, the trustee has discretion to

determine the beneficiaries of the Blue Family Trusts.  Specifically, the trustee may, at any time

during the trust period, irrevocably remove any beneficiary (including any claimant) from the list

of beneficiaries, or elect to add additional beneficiaries.  Deed I ¶ 9(a)–(b); Deed II ¶ 9(a)–(b).

---

[4] The identities of the non-claimant beneficiaries have been removed from the memorandum opinion at claimants' request. Claimants' other redaction requests are denied because, after inquiry by the Court, claimants were unable to explain any harm that will actually result from publication, and the information subject to the requests is important to the disposition of the claims as explained in the memorandum opinion.

Six of the claimants are members of the Final Repository of the Blue Family Trusts.[5] Deed I at 17; Deed II at 17. Accordingly, to the extent that any part of the trust fund remains undisposed at the conclusion of the trust period, the trustee will hold any remaining assets in trust for the Final Repository. Deed I ¶ 7; Deed II ¶ 7. However, in exercising its powers throughout the trust period, the trustee "shall not take into account any interest which the Final Repository as Final Repository may at any time have in the Trust Fund." Deed I ¶ 7(c); Deed II ¶ 7(c). Nor is the trustee obliged to disclose to any member of the Final Repository that he or she "may become entitled to an interest in the Trust Fund . . . except after . . . the Final Repository has become entitled to an absolute vested indefeasible interest in the Trust Fund." Deed I ¶ 7(d); Deed II ¶ 7(d).

To date, two claimants have received distributions from Blue Family Trust II, while six claimants have not received any distributions.[6] Claimant Ibrahim Atiku Bagudu received a distribution from Blue Family Trust II in the amount of €117,865 around May 21, 2013. Ibrahim Atiku Bagudu Interrog. Resp. [ECF No. 163-11] at 20–21. Claimant Ibrahim Bagudu has received eleven distributions from Blue Family Trust II between January 2011 and August 2014, totaling €5,139,672. Ibrahim Bagudu Interrog. Resp. at 22–23. The trustee has never denied any claimant's request for a distribution, see Mullins Stmt. ¶ 22, and no claimant has received a distribution from Blue Family Trust I.

## III.    THE BLUE HOLDING COMPANIES

As described above, the trustee, Blue PTC, holds shares of stock in two companies—the Blue Holdings Companies—that themselves hold the claimed assets. The same two individuals serve as the directors of Blue PTC and the Blue Holdings Companies. Id. ¶¶ 7, 10. The Blue

---

[5] Claimants Ibrahim Bagudu and Aisha Atiku Bagudu are not included in the Final Repository.
[6] At least one non-claimant has received a distribution from Blue Family Trust II. See Dirs.' Resolution of Blue PTC Pte. Ltd., Sept. 18, 2013 & Sept. 20, 2013 [ECF No. 165-5].

Holdings Companies are family-owned investment holding companies that were incorporated in Singapore solely to hold assets as part of the Blue Family Trusts structure. Id. ¶ 6. Two of the claimed assets—Assets 4(h) and 4(j)—are held in the name of Blue Holdings (1) Pte. Ltd. at two investment management companies in the United Kingdom—Waverton Investment Management and James Hambro & Partners LLP. The other two claimed assets—Assets 4(i) and 4(k)—are held in the name of Blue Holdings (2) Pte. Ltd. at the same U.K. firms. Compl. ¶¶ 4(h)–(k).

## LEGAL STANDARDS

In a civil forfeiture action, the government is the plaintiff, the properties subject to forfeiture are the defendants in rem, and "defenses against the forfeiture can be brought only by third parties, who must intervene." United States v. 8 Gilcrease Lane, 641 F. Supp. 2d 1, 4 (D.D.C. 2009) (citation omitted). To intervene, a claimant must establish Article III standing.[7] Id. at 5. Under Rule G(8)(c)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Suppl. Rule"), the government may move to strike a claim at any time before trial because the claimant lacks standing. The government may frame the motion as one for summary judgment, as it has done here. See Suppl. Rule G(8)(c)(ii)(B).

### I.   SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Anderson, 477 U.S.

---

[7] A claimant must also establish statutory standing by complying with the procedural requirements set forth in the relevant forfeiture statutes and rules. The government does not challenge claimants' statutory standing.

at 248). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248). "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . .'"[8] Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255; see Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence. See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249–50.

## II.   ARTICLE III STANDING

"When the government moves to strike a claim for lack of standing, a claimant has the burden to establish standing by a preponderance of the evidence." United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency, 859 F.3d 1085, 1089 (D.C. Cir. 2017). To establish standing, a claimant must demonstrate "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 959 F. Supp. 2d 81, 95 (D.D.C. 2013) [hereinafter "Bank Julius Baer II"] (citation omitted). "In general, any colorable claim on the property suffices—typically, an ownership or possessory interest." ($17,900.00) in U.S. Currency, 859 F.3d at 1090 (internal citation and quotation marks omitted). A claimant need not "definitively

---

[8] The parties do not believe that there are any genuine disputes as to any material facts. See Tr. of Oct. 26, 2017 Hr'g [ECF No. 200] at 7:3–12.

prove the existence of that interest," Bank Julius Baer II, 959 F. Supp. 2d at 95 (citation omitted), and the requirements for a claimant to establish standing to contest a forfeiture are "very forgiving," United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015) (citation omitted); see also United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 79 (2d Cir. 2002) ("The function of standing in a forfeiture action is therefore truly threshold only—to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture."). "While ownership or possession of property may provide evidence of standing, and in some circumstances act as, in effect, a surrogate for an inquiry into whether there is injury direct enough and sufficient enough to sustain standing, it is injury that is at the heart of the standing question." United States v. Cambio Exacto, 166 F.3d 522, 527 (2d Cir. 1999); see 8 Gilcrease Lane, 641 F. Supp. 2d at 6 ("Showing a real or imminent injury is essential to establish constitutional standing."). An "interest" in the property is determined under the law of the state or foreign nation in which the interest arose—here, Singapore—and the constitutional effect of that interest is determined under federal law. Bank Julius Baer II, 959 F. Supp. 2d at 96.

## DISCUSSION

### I.    IBRAHIM BAGUDU'S STANDING BASED ON HIS ANNUITY

An initial issue is whether claimant Ibrahim Bagudu's annuity provides him, or any other claimants, with standing to contest the forfeiture. By a deed of appointment dated September 3, 2010, the trustee established an annuity of $100,000 from Blue Family Trust II for the benefit of Ibrahim Bagudu. Mullins Stmt. ¶ 23. Ibrahim Bagudu received four annuity payments (totaling $400,000) between January 2011 and July 2013. Id. Thereafter, when the assets of the Blue Holdings Companies were frozen pursuant to English court orders in connection with this litigation, Ibrahim Bagudu's annuity payments ceased. Id. ¶ 24. The government has conceded

that the annuity provides Ibrahim Bagudu with a vested proprietary interest in the trust assets. <u>See, e.g.</u>, Tr. of Oct. 26, 2017 Hr'g at 31:19–32:15; Pl.'s Mot. to Strike at 2 n.1, 25; Tang Decl. ¶ 27. The loss of a $100,000 annuity clearly is a sufficient injury to establish Article III standing. <u>See Cambio Exacto</u>, 166 F.3d at 528 ("Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court."). Indeed, Ibrahim Bagudu has already been injured because he has not received annuity payments for the last three years. Forfeiture of the claimed assets will cause that injury to continue, while return of the assets will allow the annuity payments to resume. Thus, Bagudu has also satisfied the causation and redressability elements required for standing. The government nonetheless contends that there are impediments to, or limitations on, Bagudu's standing.

To begin with, the government argues that Bagudu lacks standing because his annuity merely gives him an interest in the trust assets which "consist of shares of stock in the Blue Holdings Companies . . . [and] it is well established that a corporate shareholder does not have standing to challenge the forfeiture of the corporation's property." Pl.'s Mot. to Strike at 25. It is true that courts generally have held that a corporate shareholder lacks standing to contest the forfeiture of a corporation's assets. <u>See, e.g.</u>, <u>United States v. Young</u>, 77 F. Supp. 3d 1191, 1192 (D. Utah 2014); <u>United States v. 479 Tamarind Drive</u>, No. 98 Civ. 2279 DLC, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011). This is so because a shareholder has no ownership interest in any specific assets of a corporation. <u>United States v. Real Prop. Associated with First Beneficial Mortg. Corp.</u>, No. 3:08CV285, 2009 WL 1035233, at *3 (W.D.N.C. Apr. 16, 2009). But Ibrahim Bagudu does not assert standing as a mere shareholder. He instead asserts his claim as an annuitant—and, in that capacity, it is clear that he has a proprietary right to a specific portion of

10

the claimed assets, and will be directly harmed by forfeiture of those assets.[9] See Pl.'s Mot. to Strike at 24–25 ("[T]he Claimants have no present, vested interest in any specific property, other than Ibrahim Bagudu's interest in the Annuity." (emphasis added)). In fact, the government's expert, Professor Tang, did not characterize the annuity as a proprietary right to shares of stock— he instead stated that Bagudu has a present right to $100,000. Tang Dep. Tr. [ECF 187-21] at 253:4–14. "Courts generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it." United States v. Contents of Accounts Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc., 971 F.2d 974, 985 (3d Cir. 1992); see United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994) ("In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items."). Hence, Ibrahim Bagudu's standing is not defeated by the doctrine of corporate separateness.

The government next contends that even if Ibrahim Bagudu has standing, it should be limited to the present value of his annuity. See Pl.'s Mot. to Strike at 2 n.1; Pl.'s Suppl. Br. [ECF No. 202] at 1. But a claimant need only show a colorable interest in "at least a portion of the defendant property" to establish Article III standing.[10] United States v. $31,000.00 in U.S. Currency, 872 F.3d 342, 349 (6th Cir. 2017) (citing United States v. $515,060.42 in U.S. Currency,

---

[9] Outside of the forfeiture context, courts have recognized that standing may lie for a shareholder who has suffered a particular injury or who has an interest beyond a mere right as a shareholder. See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990) (recognizing an exception to the shareholder-standing rule when a shareholder has a "direct, personal interest in a cause of action . . . even if the corporation's rights are also implicated"); Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 76 (D.D.C. 2009) (recognizing the same and noting that, in this circumstance, "shareholders are suing to enforce their own rights, not the corporation's").

[10] The standing inquiry is, of course, a threshold determination that is distinct from the merits determination that comes later. Bank Julius Baer II, 959 F. Supp. 2d at 95; see United States v. Funds in the Amount of $239,400, 795 F.3d 639, 647 (7th Cir. 2015) ("Standing must be clearly separated from the merits in civil forfeiture cases so that the government is not relieved of its burden to prove that property is subject to forfeiture." (citation omitted)); cf. FMC Corp. v. Boesky, 852 F.2d 981, 991 n.21 (7th Cir. 1998) ("In any event, whether [plaintiff] is entitled to recover a specific amount of damages . . . is not the question here, which is whether [plaintiff] was injured for purposes of Article III's case or controversy requirement.").

152 F.3d 491, 497 (6th Cir. 1998)); United States v. All Assets Listed in Attachment A, No. 1:14-CV-969, 2015 WL 1221392, at *3 (E.D. Va. Mar. 13, 2015) (same); see also United States v. $421,090.00 in U.S. Currency, No. 11-CV-00341 JG, 2011 WL 3235632, at *5 (E.D.N.Y. July 27, 2011) ("[Claimant's] colorable ownership interest in even a portion of the funds is sufficient to establish a concrete interest in the proceedings as a whole. Accordingly, because he has established a facially colorable interest in these forfeiture proceedings, [claimant] has established his standing to contest the government's proposed forfeiture of the entire amount."). The government has provided no authority to support its partial standing argument. The sole case that the government identified, United States v. Sum of $70,990,605, 128 F. Supp. 3d 350 (D.D.C. 2015), is irrelevant. There, the government moved to strike the claim of a foreign bank on statutory standing grounds. The court analyzed whether the foreign bank was an "owner" of the seized funds within the meaning of 18 U.S.C. § 981(k), which provided that "a 'foreign financial institution' is considered the 'owner,' and is thus able to bring a claim, 'to the extent' it 'had discharged all or part of its obligation to the prior owner of the funds' prior to the date of the seizure." Id. at 355 (quoting 18 U.S.C. § 981(k)(4)(B)(ii)(II)). But Article III standing was not at issue there, see id. at 356 n.2, and neither statutory standing nor § 981(k) are at issue here. That case is therefore of no aid to the government, and the Court will not limit Ibrahim Bagudu's standing to the present value of his annuity.[11]

The government's stronger argument is that Ibrahim Bagudu's standing should be limited to certain defendant properties. The government claims that because the annuity has been paid exclusively from one of the four defendant investment portfolios (the "Waverton account"), his

---

[11] The other cases cited by the government in support of this argument, see Pl.'s Suppl. Br. at 4, merely stand for the proposition that a claimant must establish standing as to each of the defendants in rem—an altogether different concept—or are otherwise inapposite. None of the cases limited standing to a specific dollar amount.

standing is limited to that property. Pl.'s Suppl. Br. at 3. A claimant "must establish standing as to each of the . . . in rem defendants named in the plaintiff's complaint in which it asserts an interest." Bank Julius Baer II, 959 F. Supp. 2d at 96; see United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 57 (1st Cir. 2013); United States v. $70,670.00 in U.S. Currency, No. 15-CV-23616, 2016 WL 8314622, at *2 (S.D. Fla. Dec. 21, 2016), R. & R. adopted, No. 15-CV-23616, 2017 WL 714231 (S.D. Fla. Feb. 23, 2017) ("A claimant in a civil forfeiture proceeding bears the threshold burden of establishing both Article III standing and statutory standing with respect to each claimed defendant property."); United States v. Real Prop. Located at 8 Drift St., No. CIV. 14-3587 (MAS), 2015 WL 5007830, at *4 (D.N.J. Aug. 20, 2015). It is undisputed that Ibrahim Bagudu's four annuity payments have been made from the Waverton account. See Cls.' Resp. Stmt. of Genuine Issues and Material Facts [ECF No. 187-25] ¶¶ 96(a)–(d). But the deed of appointment granting the annuity simply indicates that the payments are to be made from the income of Blue Family Trust II, without specifying a particular investment portfolio. Id. ¶ 95; see Deed of Appointment of an Annuity, Blue PTC Pte. Ltd., Sep. 3, 2010 [ECF 187-3] ¶ 2. Hence, any future annuity payments could be made from the other investment portfolio associated with Blue Family Trust II (the James Hambro account). See Anderson, 477 U.S. at 255 ("[A]ll justifiable inferences are to be drawn in [the non-movant's] favor."). Accordingly because the annuity was appointed specifically from Blue Family Trust II, it does not provide Bagudu with any interest in the assets of Blue Family Trust I. In sum, Ibrahim Bagudu's annuity provides him with standing only to contest the forfeiture of the claimed assets held in the investment accounts associated with Blue Family Trust II (Assets 4(i) and 4(k)).

Claimants contend that if Ibrahim Bagudu has standing to contest the forfeiture, then the other claimants do not need to establish Article III standing and they may proceed to the merits as if they had standing. Cls.' Suppl. Br. [ECF No. 201] at 6–7. The Court disagrees.

In civil litigation, plaintiffs bear the burden of establishing standing for each claim asserted. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). It is true, as claimants point out, that as long as one plaintiff has standing to raise a claim, the Court generally need not address whether other plaintiffs have standing to raise the same claim. See Forest Carpenters Indus. Council v. Zinke, 854 F.3d 1, 9 (D.C. Cir. 2017) ("If constitutional standing 'can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim.'" (quoting Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1232 (D.C. Cir. 1996))). But civil forfeiture actions are unique in the sense that the government is the plaintiff, the properties and assets are the defendants in rem, and each prospective claimant seeking to intervene to contest the forfeiture is required to file his or her own "verified claim" stating the claimant's asserted interest in the defendant properties. 8 Gilcrease Lane, 641 F. Supp. 2d at 4–5; Suppl. Rule G(5). Thus, courts have widely recognized that "[e]ach claimant in a civil forfeiture action must have . . . Article III standing with respect to each asset in which he or she asserts an interest," Sum of $70,990,605, 234 F. Supp. 3d at 229 (emphasis added); United States v. Bank Julius Baer & Co., 664 F. Supp. 2d 97, 104–105 (D.D.C. 2009) [hereinafter "Bank Julius Baer I"] ("At the summary judgment stage, each claimant must" establish "a cognizable interest in the assets potentially subject to forfeiture." (emphasis added)),[12] and it is not uncommon for courts to strike certain

---

[12] See also United States v. $148,840.00 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir. 2008) ("As the party seeking to intervene in an in rem forfeiture action, a claimant bears the burden of establishing his own constitutional standing at all stages in the litigation." (emphasis added)); $515,060.42 in U.S. Currency, 152 F.3d at 498 ("To contest a forfeiture action, an individual customarily bears the burden of demonstrating an interest in the

claimants for lack of standing while allowing others to proceed, see, e.g., United States v. 12636 Sunset Ave., Unit E-2, W. Ocean City, Md., 991 F. Supp. 2d 709, 712–13 (D. Md. 2014); United States v. $7,599,358.09, 953 F. Supp. 2d 549, 552 (D.N.J. 2013); Bank Julius Baer II, 959 F. Supp. 2d at 84; United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc., 830 F. Supp. 1101, 1123 (N.D. Ill. 1993).

Claimants have not identified a single civil forfeiture case where a court has allowed some claimants to piggyback on another claimant's standing, without demonstrating their own colorable interest in the defendants in rem. Nor is the Court persuaded by claimants' argument that "in substance, all of the Claimants have the same 'claim.'" Cls.' Suppl. Br. at 7.[13] Claimants have filed eight separate "verified claims," and only Ibrahim Bagudu's is based on his annuity interest; thus, he alone is injured by the loss of the annuity. See In re 650 Fifth Ave. & Related Properties, No. 08 Civ. 10934 (KBF), 2013 WL 4572527, at *2–3 (S.D.N.Y. Aug. 27, 2013) ("[E]ach claimant must have suffered an injury in fact of a legally protected interest."). Hence, each of the remaining claimants must demonstrate their own standing to contest the forfeiture.

---

seized items sufficient to satisfy the court of his standing as a claimant."); United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1111 (5th Cir. 1992) ("To contest a forfeiture action, an individual bears the burden of demonstrat[ing] an interest in the seized item sufficient to satisfy the court of his standing as a claimant." (citation omitted)); United States v. $263,327.95, 936 F. Supp. 2d 468, 471 (D.N.J. 2013) ("Any individual or entity that wishes to assert a claim to the property can do so only by intervening in the action as a claimant [and establishing Article III standing].")); 8 Gilcrease Lane, 641 F. Supp. 2d at 6 (Article III standing requirement "relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement" (citation omitted)); United States v. $271,070.00 in U.S. Currency, No. 96 C 239, 1997 WL 94722, at *3 (N.D. Ill. Mar. 3, 1997) ("To establish Article III standing, each Claimant bears the burden of establishing a legally cognizable interest in the property that will be injured if the property is forfeited to the government." (citation omitted)); United States v. $319,603.42 in U.S. Currency, 829 F. Supp. 1223, 1225 (D. Or. 1992) ("[E]ach claimant has a threshold burden to establish standing as a claimant.").

[13] And it is of no moment that claimants have "all raised the same defenses to the Government's claims for forfeiture." Cls.' Suppl. Br. at 7; see United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1193–94 (9th Cir. 2004) (holding that "when a claimant fails to establish the threshold requirement of standing, the claimant's challenges to the merits of the forfeiture cannot be reached").

### III. CLAIMANTS' STANDING AS BENEFICIARIES OF THE BLUE FAMILY TRUSTS

Having found that Ibrahim Bagudu's standing based on his annuity does not extend to the other claimants, the question then is whether claimants, as beneficiaries of the Blue Family Trusts, have standing to contest the forfeiture. The government contends that there are two independent defects in claimants' standing: (1) they only have a future, contingent interest in the trusts' assets such that their injury is hypothetical or conjectural, rather than actual; and (2) even if they had a legally cognizable interest in the trusts' assets, it is undisputed that the trusts' assets are not the claimed assets. The Court will address these arguments in turn—but first, it must identify claimants' interest in the trusts' assets.

#### A. Claimants' Interest in the Trusts' Assets

Claimants assert that they have standing as the present named beneficiaries of the Blue Family Trusts. Cls.' Opp'n [ECF No. 187] at 10, 19–25. The Court looks to Singapore law to determine claimants' interest in the property.[14] Bank Julius Baer II, 959 F. Supp. 2d at 96. Having reviewed the parties' briefs, the expert declarations, the discovery materials, the pleadings and claims, and the supporting authorities, the Court makes the following determinations as to claimants' interest in the trusts' assets.

Claimants are among the beneficiaries of two discretionary trusts.[15] Tang Decl. ¶ 13; Tjio Decl. ¶ 1. The parties agree that the trustee, Blue PTC, holds legal title to the trusts' assets, but does not have any beneficial interest in the trusts' assets. Tang Decl. ¶ 11; Tjio Decl. ¶ 11. Because the Blue Family Trusts are discretionary trusts, claimants have no vested beneficial interest in the

---

[14] The Court has also considered authorities from England, Australia, and other Commonwealth jurisdictions because, as the parties agree, those authorities are considered persuasive by Singapore courts. See Tang Decl. ¶ 3; Tjio Decl. at 3; see also Tjio Dep. Tr. at 17:8–20.

[15] Beneficiaries of a discretionary trust are alternatively referred to as "objects," or "potential beneficiaries." See Kennon v. Spry, [2008] HCA 56, ¶¶ 76, 125 (Austl.), Ex. 1 to Pl.'s Reply [ECF No. 192-2]; Alastair Hudson, Equity and Trusts 187 (8th ed. 2014), Ex. 3 to Pl.'s Reply [ECF No. 192-4].

assets of the trusts.[16] Nor do claimants have any proprietary interest in any specific assets of the trusts. Tang. Decl. ¶ 8. Indeed, claimants' expert, Professor Tjio, conceded as much at his deposition:

> Q: What is your opinion concerning the interest that these beneficiaries [i.e., the claimants] have in the, in the trust assets?
>
> A: They don't have a right to any specific part of the assets, but they have a right to see that the trust assets are protected . . . . [T]hey have a right to ensure that the trustees administer the trust properly . . . .

Tjio Dep. Tr. at 161:20–162:3; see also id. at 84:19–85:2 (agreeing that the trustee must exercise discretion in favor of claimants before they have "a right to any part of the trust property"). And it appears that he so conceded for good reason—this point is widely acknowledged in the scholarly treatises on discretionary trusts. See, e.g., Graham Virgo, The Principles of Equity and Trusts 381 (2d ed. 2016), Ex. 4 to Pl.'s Reply [ECF No. 192-5] ("A discretionary trust is a trust for distribution subject to a power of selection which is exercisable by the trustees amongst the objects of the trust. It follows that the objects have no proprietary interest in the trust fund itself . . . ."); see also Pl.'s Reply at 5, 8–9 (collecting sources).

Claimants nevertheless contend that they have six "present interests and rights under the applicable Trust Deeds and Singapore law that the Government did not consider . . . in moving to

---

[16] The parties differ on this point. See Cls.' Opp'n at 13 (asserting that claimants have "valuable proprietary and beneficial interests in the Trusts' assets . . . because . . . under Singapore law, there must be a beneficial owner of the assets of a trust"); Pl.'s Reply at 7–8 (asserting that "the beneficial interests in the assets of [discretionary] trusts are . . . 'in suspense'" pending the exercise of the trustee's discretion). Claimants' argument is founded on Professor Tjio's opinion that "[t]he beneficial interest cannot be in suspense as there must be someone to enforce the trust." Tjio Decl. ¶ 2(i). But, to support this opinion, Professor Tjio admittedly relied on a case, Lee Chuen Li v. Singapore Island Country Club, [1992] S.G.H.C. 165, that did not involve a discretionary trust and has not been cited by any discretionary trust cases. See Tjio Dep. Tr. [ECF No 194-1] at 33:8–35:8. In contrast, Professor Tang's opinion that "the beneficial interest of the trust assets has not crystalized," Tang. Decl. ¶ 11, is supported by numerous persuasive authorities addressing discretionary trusts, see, e.g., Kennon, [2008] HCA 56, ¶ 49; Lynton Tucker et al., Lewin on Trusts ¶ 1-061, at 30 (19th ed. 2014), Ex. 8 to Pl.'s Reply [ECF No. 192-9] ("In general, a discretionary trust has no one in whom the beneficial interest in the trust property can be said to be vested because vesting is contingent upon the selection of an object from a nominated class.").

strike their [c]laims." Cls.' Opp'n at 21–22. The Court will analyze these asserted rights in turn. Ultimately, they are of little aid to claimants.

The first two rights involve claimants' ability to sell for value their interests as (1) beneficiaries entitled to an equal share of the trust assets upon termination and (2) members of the Final Repository. But "the ability to assign or sell a thing for value does not say anything about the nature of the [interest] assigned or sold." Pl.'s Reply at 12. It is plain that claimants lack any proprietary interest in any specific trust assets, and they cannot create such an interest through assignment or sale. In any event, it is clear from the language of the trust deeds that the underlying rights claimants intend to sell for value are unvested, and contingent on the favorable exercise of the trustee's discretion. Per the deeds, the trustee has absolute discretion to exclude any beneficiaries—including claimants—from any end-of-trust-period trust. Deed I ¶ 6(c) (when the trust period concludes, the trustee shall hold the assets in trust "for such Beneficiaries and in such proportions or for one to the exclusion of the other or others and if more than one in such shares absolutely as the Trustees may . . . appoint"); Deed II ¶ 6(c) (same). Because the trustee has the power to eliminate beneficiaries at its discretion, see Deed I ¶ 9; Deed II ¶ 9, it is also uncertain whether claimants will even be among the named beneficiaries at the end of the trust period. Hence, it is inconsistent with the terms of the trust deeds to characterize claimants' interest at termination as a "present" interest to which claimants are "entitled." Claimants' interest in the Final Repository is no more certain—rather, it is contingent on the trustee not exhausting all of the assets during the trust period. And, as previously noted, the trustee "shall not take into account" any interest that members of the Final Repository might have during the life of the trusts. Deed I ¶ 7(c); Deed II ¶ 7(c).

The third and fourth rights can be addressed more quickly. With respect to the third right—to band together and terminate the trusts—claimants have acknowledged that, at the time their claims were filed and even now, this right is unavailable to them. See Tr. of Oct. 26, 2017 Hr'g at 80:3–14; Tjio Dep. Tr. at 85:3–21. Thus, it cannot serve as the basis for standing. Wheaton College v. Sebelius, 703 F.3d 551, 552 (D.C. Cir. 2012) ("[S]tanding is assessed at the time of filing . . . ."). And the fourth right—claimants' ability to demand information and an accounting from the trustee—says nothing about whether claimants have any colorable interest in specific assets of the trust. After all, shareholders have the right to demand information about the corporations in which they invest, yet it is widely accepted, in Singapore and the United States, that they lack any interest in specific corporate property.

Turning to the fifth asserted right, under the trust deeds claimants clearly have a right to be considered, in the exercise of the trustee's discretion, for distributions. The trustee has a fiduciary duty to act properly and reasonably in this regard. Tjio Decl. ¶ 6. But the "right to be considered as a potential recipient of benefit by the trustee[]" "is not a proprietary interest in the assets held by the trustee[] . . . ." JSC Mezhdunarodniy Promyshlenniy Bank v. Pugachev, [2015] EWCA (Civ.) 139, [13] (Eng.), Ex. 10 to Pl.'s Reply [ECF No. 192-11]. It has instead been considered an expectancy interest that the trustee will one day favor the claimants. See Gartside v. Inland Revenue Comm'rs., [1968] AC 553 (HL) 617, Ex. 13 to Pl.'s Reply [ECF No. 192-14] (beneficiary under a discretionary trust has "an 'interest,'" but this interest consists only of the "right to be considered as a potential recipient of a benefit by the trustees and a right to have his interest protected by a court of equity"); Kennon, [2008] HCA 56, ¶ 160 (reading Gartside to create "a mere expectancy").

Claimants' sixth and final asserted right—standing to take the trustee to court in Singapore to compel proper administration of the trust, including for improper denial of a distribution—is essentially a right to sue, or a chose in action. Kennon, [2008] HCA 56, ¶ 75 ("The rights to consideration and to due administration are in the nature of equitable choses in action."). Although Professor Tjio characterized this right as a proprietary interest, he readily acknowledged that it does not provide claimants with the right to enjoy, control, or possess the trust property, and that it does not constitute a vested interest in any specific trust assets. See Tjio Dep. Tr. at 93:14–94:12; see also id. 175:20–176:5.

In sum, the undisputed record establishes that under Singapore law, claimants, as presently named beneficiaries of these discretionary trusts, do not own, have any beneficial or proprietary interest in, or exercise dominion and control over the specific assets of the trusts. Claimants have the right to be considered for distributions, subject to the exercise of the trustee's discretion and in conformance with the trustee's fiduciary duties. But this is not a proprietary right to specific assets; rather, it is an expectancy interest in the favorable exercise of discretion by the trustee. Claimants also have the right to bring suit against the trustee in Singapore to enforce the proper administration of the trusts. The remaining question, then, is whether claimants' interest is sufficient to support Article III standing.

### B. Effect of Claimants' Interest for Standing

1. Whether Claimants Have a Sufficient Interest in the Trusts' Assets

Having determined claimants' interest in the trusts' assets under Singapore law, the Court now examines the constitutional effect of that interest under federal law. Bank Julius Baer II, 959 F. Supp. 2d at 96. To support standing, claimants' interest must give them a "colorable claim" on the res, "typically, an ownership or possessory interest." ($17,900.00) in U.S. Currency, 859 F.3d

at 1089. In short, the question is whether the elimination of claimants' interest amounts to an injury that is actual and concrete, rather than conjectural or hypothetical. 8 Gilcrease Lane, 641 F. Supp. 2d at 4, 6.

The parties are unaware of any forfeiture case involving a discretionary trust, see Pl.'s Reply at 18; Tr. of Oct. 26, 2017 Hr'g at 37:7–12, nor has the Court found one. Thus, the parties have provided the Court with cases that they perceive to be analogous. The government compares claimants' interest in the trust assets to potential heirs "who may, one day, take from a deceased's estate, subject, of course, to the deceased not dissipating his estate in advance of death or devising it to another party." Pl.'s Reply at 19. Courts have held that heirs—even actual heirs—who have a future, contingent interest in property lack standing to contest a forfeiture of that property. See, e.g., United States v. $90,000 in U.S. Currency, 56 F. Supp. 3d 744, 747 (D. Md. 2014) (holding, under Maryland law, that the daughter of deceased owner of seized money who stood ready to inherit the funds as soon as the estate could be administered in probate lacked standing because she held only "a contingent future interest in the defendant property"); United States v. 477 Firearms, 698 F. Supp. 2d 894, 900 (D. Mich. 2010) (holding, under Michigan law, that "potential heirs and legatees have a mere expectancy interest" which is not a "legally cognizable interest").[17] Another line of cases relied on by the government involves marital interests of spouses contingent upon the dissolution of marriage, which courts have deemed insufficient to confer standing to

---

[17] See also United States v. Church & Dwight Co., 510 Fed. App'x. 55, 58 (2d Cir. 2013) (holding petitioner with a contingent interest lacked standing to assert claim where condition precedent was not satisfied); United States v. $7,206,157,717 on Deposit at JP Morgan Chase Bank, N.A., 274 F.R.D. 125, 127 (S.D.N.Y. 2011) ("To allow those with, at most, contingent interests in a res to intervene would open the floodgates of intervention in forfeiture actions . . . ."); United States v. 148 Maunalanikai Pl., No. 1:07-cv-00049, 2008 WL 3166799, at *7–8 (D. Haw. Aug. 6, 2008) (future right to equitable distribution of marital property upon divorce does not confer present ownership interest sufficient to support standing); United States v. Murphy, 850 F. Supp. 981, 983 (M.D. Fla. 1994) ("Future expectation of ownership by a child is insufficient to give a child standing to contest forfeiture."); United States v. One Rural Lot, 739 F. Supp. 74, 78 (D.P.R. 1990) (potential heirs with a "mere expectancy of inheritance" lacked sufficient interest to contest forfeiture).

contest a forfeiture.[18]  Pl.'s Mot. to Strike at 18–19.  Claimants contend that these analogies fail because "the Government's central premise—that Claimants' interests are inchoate—is wrong." Cls.' Opp'n at 28 ("In contrast, Claimants have present property interests sufficient for Article III standing that already exist.").  But claimants are wrong to dismiss these cases so casually.  While they have an expectancy interest in receiving distributions of the trust assets, their own expert acknowledged that they lack a vested interest in any "specific" trust assets.  See Tjio Dep. Tr. at 161:20–162:4.

Claimants, for their part, rely on fixed trust cases.  Cls.' Opp'n at 25–27.  But several of these cases are of limited value when compared to the facts present here.  For example, in United States v. Any And All Funds on Deposit In Account No. 12671905, Held In The Name of Landlocked Shipping Co. At Wells Fargo Brokerage Servs., LLC, All Interest And other Proceeds Traceable Thereto, No. Civ. 09-3481 HB, 2010 WL 3185688, at *2 (S.D.N.Y. Aug. 10, 2010), the claimant was the beneficiary of a fixed trust that was "obligated to pay her any income Landlocked receives."  The claimants here are owed no such obligation; nor are the Blue Family Trusts fixed trusts, which provide beneficiaries with entirely different interests.  See Hanbury & Martin: Modern Equity ¶ 9-015, at 199 ("In the case of a fixed trust, . . . the beneficiary's interest is regarded as proprietary.  She is the owner of an equitable interest under the trust.  This is not so in the case of a beneficiary under a discretionary trust.").  And United States v. Preston, 123 F. Supp. 3d 24 (D.D.C. 2015), is similarly inapposite.  That case was decided at the motion to dismiss stage

---

[18] One of those cases, United States v. Batato, 833 F.3d 413 (4th Cir. 2016), is particularly instructive here. There, an estranged wife asserted a claim to fifty percent of the marital property subject to a forfeiture action. Id. at 434.  She argued that under New Zealand law she had a right to assert a claim to marital property and a presumption that she was entitled to half. Id. at 435.  The court determined that the wife lacked standing because "a right to state a claim does not rise to the level of a legal or equitable interest sufficient to satisfy Article III." Id. (internal quotation marks omitted).  Until her claim to marital property was adjudicated in her favor, the wife had no actual interest in the marital property. Id. Similarly here, claimants' right to sue the trustee in Singapore courts for proper administration— which is a right to a claim—does not create a legally cognizable interest for Article III purposes, until that claim is resolved in claimants' favor.

where claimant's bare assertion that she was the sole beneficiary of a trust was sufficient to give her standing. Id. at 26, 29. Claimants are not sole beneficiaries of the Blue Family Trusts and, more importantly, this case stands in a different procedural posture, where bare assertions will not suffice. ($17,900.00) in U.S. Currency, 859 F.3d at 1090 ("[S]tanding must be supported . . . with the manner and degree of evidence required at [each] successive stage[ ] of the litigation. At the pleading stage, a claimant need only allege a colorable interest in the property. In response to a summary judgment motion, however, the [claimant] can no longer rest on such mere allegations . . . ." (alterations in original) (internal quotation marks and citations omitted)).

Claimants contend that the "closest analogue" to the instant case is United States v. 5 S 351 Tuthill Road, 233 F.3d 1017 (7th Cir. 2000). See Tr. of Oct. 26, 2017 Hr'g at 54:1–2. In that case, the claimant was the sole beneficiary of a land trust that gave him a fixed right to the "earnings, avails, and proceeds arising from the sale or . . . disposition" of the land. Id. at 1021. The claimant did not own or possess the land, and he had no power to manage, lease, or sell the land. Id. And the trustee had discretion to sell the land on "any terms, with or without consideration." Id. The court stated that nonetheless, the claimant had an interest in "a right to future proceeds of unknown value." Id. at 1022. Because the claimant would "lose the opportunity to receive the proceeds, if and when the land is sold," he had "an actual stake in the outcome of the suit" sufficient to establish standing. Id.

Tuthill Road appears similar to this case on the surface, but a closer look reveals some significant differences. The claimant in Tuthill Road was the sole beneficiary of a trust, whereas claimants here are among the beneficiaries of a trust where the trustee has absolute discretion to add or subtract beneficiaries. Like the claimant in Tuthill Road, forfeiture will cause claimants here to lose an opportunity: to request future distributions from the trust funds. But the claimant

in Tuthill Road faced a different type of contingency than claimants do here. The value of his proceeds was contingent on the discretion of the trustee, while his interest in the proceeds was vested. See id. ("[T]he fact remains that should the property be sold for any amount of money, that money is due to [the claimant]."). Here, by contrast, whether or not claimants have any interest in the trust assets is contingent on the discretion of the trustee, and their status as beneficiaries does not provide them with any vested interest. Pl.'s Mot. to Strike at 16 ("Claimants not only cannot say how much they will one day receive, they also cannot say—unlike the beneficiary in Tuthill Road—whether they will receive anything . . . ."). Claimants, then, have a far weaker interest than did the claimant in Tuthill Road.

Ultimately, whether claimants have a legally cognizable interest in the assets of these trusts is a close question, even under the forgiving standard that applies in the civil forfeiture context. Claimants—as the beneficiaries of discretionary trusts who have not been favored by the trustee—have a future, contingent interest in the trust assets, but they lack present rights to any specific trust property. In other contexts, courts have generally found such interests too hypothetical to create an actual case or controversy. Claimants have failed to provide the Court with any authority in which a claimant with a similar unvested, contingent interest in property was found to have standing to contest a forfeiture. The Court therefore concludes that claimants have failed to satisfy their burden of demonstrating standing by a preponderance of the evidence.

2.      Whether Claimants Can Avoid the Doctrine of Corporate Separateness

The government asserts that even if claimants could show that they have a legally cognizable interest in the trusts' assets, they would lack standing for an independent reason: "it is undisputed and indisputable that the Trusts' assets are not the Claimed Assets." Id. at 21. Instead, the trusts' assets consist entirely of shares of stock in the Blue Holdings Companies, and it is the

Blue Holdings Companies that hold title to the claimed assets (i.e., the account portfolios). Claimants accuse the government of "elevating form over substance" and ignoring the "over-arching unified family trust structure." Cls.' Opp'n at 31–32. But the government did not create this "multi-layered, interlocking trusts structure" with separate corporate entities. Pl.'s Reply at 1. It simply seeks to have claimants "honor and adhere to the forms and procedures commensurate with this freely-chosen design." Id. at 2.

To that end, it is undisputed that Singapore law, like U.S. law, recognizes the doctrine of corporate separateness. Cls.' Opp'n at 38; Tang Decl. ¶¶ 28–30; Tjio Decl. ¶¶ 21–22. Hence, shareholders of a Singapore company do not own or have any proprietary interest in the assets of that company. Tang Decl. ¶¶ 28–30; Tjio Decl. ¶¶ 3, 22. Claimants nonetheless contend that the doctrine of corporate separateness is "merely the 'starting point,'" and they present several arguments why it should be disregarded here. Cls.' Opp'n at 38 (quoting Tjio Decl. ¶ 22).

To start, claimants state that Singapore law "leaves room 'for reverse veil piercing,'" and "other means to disregard the corporate form where it [is] rational and pragmatic to do so." Id. at 39–40. But claimants' expert conceded that he is unaware of any Singapore court that has permitted the shareholders of a company to lift the corporate veil or disregard the corporate form for their own benefit. Tjio Dep. Tr. at 132:4–13. Nor do any of the Singapore cases cited by claimants suggest that the corporate veil should be set aside here.[19]

Claimants similarly suggest that Singapore courts would assess whether shareholders "have a financial interest" in a corporation's assets and, if so, take a "pragmatic . . . approach" to

---

[19] Koh Kim Tek v. Credit Suisse AG Singapore Branch, [2015] SGCH 63, was an interlocutory decision, not decided on the merits, where the court merely observed that veil piercing "is certainly not unarguable and unsustainable," but ultimately held that the issue was best considered in another forum. Tjio Decl. ¶ 27. Pek Seng Co. Pte Ltd v. Low Tin Kee, [1989] SGHC 83, arose in the context of a "Mareva injunction," which Professor Tjio himself acknowledged presents a different "factual matrix" than this case, and was not a reverse veil piercing case. Tjio Decl. ¶ 24.

permit those shareholders to assert claims to such assets. Cls.' Opp'n at 38 (quoting Tjio Decl. ¶ 3). But whether or not Singapore courts would do so is immaterial—the relevant question is whether, under U.S. law, a shareholder has a sufficient "financial interest" in a corporation's assets to establish Article III standing.[20] See Bank Julius Baer II, 959 F. Supp. 2d at 96. The answer is overwhelmingly no.

Courts here have consistently held under federal law that a shareholder lacks standing to contest the forfeiture of a corporation's assets. See, e.g., Young, 77 F. Supp. 3d at 1192; United States v. Four Thousand Two Hundred Seventy-Eight Dollars, No. 12-10253, 2014 WL 3420774, at *4 (E.D. Mich. July 14, 2014) ("[S]hareholders generally do not have Article III standing to contest the forfeiture of corporate property."); United States v. Real Prop. Associated with First Beneficial Mortg. Corp., No. 3:08CV285, 2009 WL 1035233, at *3 (W.D.N.C. Apr. 16, 2009) ("Because of this lack of ownership interest in the specific property, it has been held in each of the cases deciding the issue that a shareholder in a corporation does not have Article III standing to contest the forfeiture of corporate property."). Moreover, courts have applied this principle equally to closely held companies and sole shareholders. In First Beneficial Mortgage Corporation, for example, the court held that a sole shareholder lacked standing to contest a civil forfeiture action. 2009 WL 1035233, at *3 ("The law cannot allow a sole corporate shareholder to disregard the corporate entity when it suits him and allow him the benefit of the corporate entity when he desires."); see also United States v. Two Bank Accounts Described as: Bank Account in Amount of $197,524.99 Bank of Am., Seattle, Wash., No. 06-4005, 2008 WL 5431199, at *5 (D.S.D. Dec. 31, 2008) (holding that sole shareholder lacked standing to contest forfeiture of corporate assets).

---

[20] Likewise irrelevant is whether "Singapore courts . . . recognize that shareholders are harmed by events which result in the diminution [of] their shares." Cls.' Opp'n at 39. The same is true for U.S. shareholders, yet established case law has made clear that shareholders lack standing to contest the forfeiture of corporate assets.

It follows, then, that Blue PTC, as the sole shareholder of the Blue Holdings Companies, lacks standing to contest the forfeiture. And even if claimants could step into Blue PTC's shoes based on their interest in the trusts' assets, they too would lack standing. At bottom, under the corporate separateness doctrine, only the Blue Holdings Companies themselves would arguably have standing to challenge the forfeiture of the claimed assets.[21]

Claimants nonetheless argue that "[i]n certain circumstances, courts have found a shareholder possesses sufficient interest to contest the forfeiture of corporate assets." Cls.' Opp'n at 41. The cases that claimants cite, however, do not convince the Court that standing exists here. In United States v. All Funds in Bluffview Securities Account, LP, No. CV-11-05472 AHM, 2012 WL 12855582, at *4 (C.D. Cal. Nov. 26, 2012), the court dismissed a shareholder claimant seeking to contest the forfeiture of brokerage accounts for lack of statutory standing and, only in dictum, stated that he "arguably presented enough evidence to establish Article III standing." And in United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015), the claimant was not asserting a claim as a shareholder, but instead as a victim who owned the seized funds prior to being induced to pay them over by fraud.

Claimants have identified only two cases—both from courts in other jurisdictions—that have held that shareholders have standing to contest the forfeiture of corporate assets. In United States v. One 1983 Dodge Ram Van, 1989 WL 42581 (E.D. La. Apr. 21, 1989), two claimants contested the forfeiture of a van seized in a drug operation—the corporation that held legal title to the van and the corporation's majority shareholder. Id. at *1. The court held, without citing any authority, that the shareholder claimant had standing because she "can be considered as an owner"

---

[21] Although the government sent notice of the forfeiture complaint to counsel for both Blue Holdings Companies, see Aff. in Supp. of Default, June 2, 2014 [ECF No. 44] ¶ 8(b), neither company has appeared to file a claim to the claimed assets.

of the van, based on her role as the majority shareholder and president of the corporation.[22]  Id.
Here, unlike the posture of One 1983 Dodge Ram Van, the Blue Holdings Companies have not
appeared alongside the claimants to contest the forfeiture. And under Singapore law a shareholder
is not considered as an owner of the corporate assets. Tang Decl. ¶¶ 28–30; Tjio Decl. ¶¶ 3, 22.

In the other case, United States v. Eleven Million Seventy-One Thousand One Hundred &
Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in U.S. Currency, 825 F.3d 365 (8th
Cir. 2016), the government seized allegedly money-laundered drug trafficking funds from banking
and brokerage accounts. Id. at 368. The corporation that held title to the funds filed a claim along
with the corporation's sole shareholder. Id. The court dismissed the corporation's claim based on
its repeated discovery violations. Id. at 369. Then, after dismissing the corporation, the court
determined that the sole shareholder had standing because she was the person with "the greatest
financial stake" in putting the government to its proof that the corporate assets were subject to
forfeiture. Id. at 371. But the Eighth Circuit's decision has only been cited sparingly, and it
appears to be the only case that has found that a shareholder has standing to contest a civil forfeiture
because the shareholder had the "greatest financial stake" in a corporation's assets.

Both of these cases are non-binding and inconsistent with the majority of cases that have
held that a shareholder—even a sole shareholder—lacks standing to contest the forfeiture of a
corporation's assets. And it remains settled law in this Circuit that a corporate shareholder "cannot
bring a personal suit in his own name to vindicate the rights of [a corporation] except under limited
exceptions." Kay v. FCC, 621 F. App'x 5, 6 (D.C. Cir. 2015) (mem.); see Am. Airways Charters,
Inc. v. Regan, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984) ("No shareholder—not even a sole
shareholder—has standing in the usual case to bring suit in his individual capacity on a claim that

---

[22] The court later noted, in rejecting the innocent-owner defenses of both claimants, that "the van was the
property of the company." Id. at *2.

belongs to the corporation.").[23] Therefore, claimants have provided no basis to set aside the doctrine of corporate separateness, and they also lack standing for this independent reason.

## CONCLUSION

For the foregoing reasons, the Court will grant the government's motion to strike as to seven of the eight claimants, and grant in part and deny in part the government's motion to strike as to the remaining claimant, Ibrahim Bagudu. Ibrahim Bagudu has standing to contest the forfeiture of certain of the defendant properties—specifically, the assets designated as Assets 4(i) and 4(k) in the Complaint—associated with Blue Family Trust II. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: March 5, 2018

---

[23] Claimants cite two other D.C. Circuit cases. In Whelan v. Abel, 953 F.2d 663, 672 (D.C. Cir. 1992), the D.C. Circuit concluded that a party's Article III challenge was more appropriately viewed as a real-party-in-interest challenge under Federal Rule of Civil Procedure 17(a). But Whelan did not disturb the rule of Regan. See Cherry v. FCC, 641 F.3d 494, 497 (D.C. Cir. 2011) (citing Regan approvingly but noting that Whelan recognized that certain shareholder issues do not implicate Article III standing and are better addressed as real-party-in-interest inquiries). And in BellSouth Corp. v. FCC, 144 F.3d 58, 62 (D.C. Cir. 1998), the D.C. Circuit held that a corporation had standing to challenge a regulation of two of its subsidiaries, for which the corporation was the sole shareholder, because the corporation was "itself affected" by the regulation. These cases, too, are of no aid to claimants.