# Exhibit 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALL ASSETS HELD IN ACCOUNT NUMBER ) <br> 80020796, IN THE NAME OF ) <br> DORAVILLE PROPERTIES CORPORATION, ) <br> AT DEUTSCHE BANK INTERNATIONAL, ) <br> LIMITED IN JERSEY, CHANNEL ISLANDS, ) <br> AND ALL INTEREST, BENEFITS, OR ASSETS ) <br> TRACEABLE THERETO, *ET AL.*, ) <br> ) <br> Defendants. ) <br> ) | Case No. 13-cv-1832 (JDB) |

### PLAINTIFFS' RESPONSE TO INTERROGATORIES 5, 7, 8, 9, 11 AND 12 FROM CLAIMANTS' FIRST SET OF INTERROGATORIES AND FIRST SUPPLEMENT TO RESPONSE TO INTERROGATORIES 2, 3 AND 10

The United States of America submits the following responses and objections to Interrogatories 5, 7, 8, 9, 11 and 12 from the Claimants' first set of Interrogatories to the Plaintiff. The United States also supplements its response to Interrogatories 2, 3 and 10 herein pursuant to Fed. R. Civ. P. 26(e). These responses are made without prejudice to, and are not a waiver of, the Plaintiff's right to supplement its responses and/or rely on other facts or documents at trial. By making the accompanying objections and responses to the Claimants' Interrogatories, the Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections to the admissibility of the documentation produced into evidence in this action, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege. Further, the Plaintiff responds without in any way implying that it considers the interrogatories or responses thereto to be relevant or material to the subject matter of the action.

20. The Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or for some other reason. The failure to include any general objection in any specific response does not waive any general objection to that interrogatory. The Plaintiff reserves the right to amend or supplement its responses and objections to the interrogatories.

### Specific Objections and Responses to Interrogatories 5, 7, 8, 9, 11 and 12

**Interrogatory No. 5**:

Describe in detail when, how and the circumstances under which You became aware of the "Security Votes Fraud," the "Debt Buy-Back Fraud," the purchase, transfer, sale and/or redemption of Nigerian Par Bonds and Payment Adjustment Warrants, the Monetary Transactions identified in Interrogatory No. 3 and the Ridley Group Limited.

**Response to Interrogatory No. 5:**

The Plaintiff objects to this Interrogatory as overbroad and unduly burdensome, and to the extent it seeks information that does not address the Plaintiff's claims or the Claimants' defenses, and otherwise is not reasonably calculated to lead to the discovery of admissible evidence. When, how and the circumstances under which the Plaintiff became aware of the conduct alleged in the Complaint is not material to either the Plaintiff's claims or the Claimants' defenses. To the extent this Interrogatory seeks information relevant to the Claimants' purported defense that the Plaintiff's claim is barred by the running of the applicable statute of limitations, such Interrogatory is unduly burdensome as the Court has already determined that "this forfeiture proceeding commenced within the applicable statute-of-limitations period." (ECF No. 79, p. 11).

The Plaintiff objects to this Interrogatory, to the extent that it is compound, phrased disjunctively or conjunctively, and includes subparts in such a manner that is unduly burdensome or confusing, or seeks to circumvent the limitations on discovery set by the Federal Rules of Civil

Procedure and the Local Rules of the United States District Court for the District of Columbia. *See, e.g., Sattari v. Citi Mortgage*, 2010 U.S. Dist. LEXIS 125687, at *3 (D. Nev. Nov. 17, 2010) (interrogatories "should consist of a brief, simple, direct, and unambiguous question, dealing with one point only.").

The Plaintiff objects to this interrogatory as vague to the extent it asks the Plaintiff to identify when it became aware of the "purchase, transfer, sale and/or redemption of Nigerian Par Bonds and Payment Adjustment Warrants, the Monetary Transactions identified in Interrogatory No. 3 and the Ridley Group Limited." Evidence concerning the criminal conduct alleged in the Complaint, including the laundering of the criminal proceeds through the purchase and sale of Nigerian Par Bonds, and the use of shell companies like the Ridley Group, was gathered over multiple years, from multiple jurisdictions. Such information is also not relevant to any claim or defense to the forfeiture allegations, is not within the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1), and is not reasonably calculated to lead to the discovery of admissible evidence. There is no way to pinpoint when exactly the Plaintiff became aware of each particular transaction, but it is believed that the United States became aware of the alleged conduct involving the purchase and sale of Nigerian Par Bonds, generally, at least as early as 2003 when the United States received the extradition request from Jersey.

The Plaintiff also objects to this Interrogatory to the extent it seeks information from investigative files compiled for law enforcement purposes, the disclosure of which could compromise criminal investigations, or any other information protected by the law enforcement privilege.

Subject to and without waiving the foregoing General and Specific objections, the United States responds to this interrogatory as follows:

7

The Plaintiff became aware of the "Security Votes Fraud" at least as early as November 22, 1999, when the United States received a mutual legal assistance treaty request from Nigeria which contained information concerning the "Security Votes Fraud." The request is dated November 4, 1999. The Plaintiff was aware of the "Debt Buy-Back Fraud" at least as early as July 2003, when the United States received an extradition request from the Bailiwick of Jersey which contained information concerning the "Debt Buy-Back Fraud." The Ridley Group was identified in an affidavit of Mr. Bagudu, which the U.K. authorities provided to the United States in 2009.

On or about September 21, 2012, the Serious Organised Crime Agency (now the National Crime Agency) of the United Kingdom gathered intelligence which identified the specific Claimed Property's involvement in the criminal conduct alleged in the Complaint. The Serious Organised Crime Agency generated a report containing this information on February 2, 2012. Counsel for the United States became aware of the content of this report no later than July 24, 2012. This report was produced to the Claimants and is identified by Bates Nos. DOJ_00113021 to DOJ_00113027.

**Interrogatory No. 7:**

Identify all Persons involved in, having knowledge Concerning or having discoverable information Concerning Abubakar Atiku Bagudu's May 2003 arrest in Houston, Texas for extradition on warrants issued by the Bailiwick of Jersey and his subsequent settlement agreement with Nigeria and Jersey and payment to Nigeria under the agreement, as alleged in paragraph 77 of the Complaint, or the January 2011 proceedings in the U.S. District Court for the Southern District of Texas, Criminal Case Nos. 04:2003-mj-432 and 04:2003-mj-434, to expunge the record relating to Mr. Bagudu's arrest and extradition proceedings.

**Response to Interrogatory No. 7:**

The Plaintiff objects to this Interrogatory to the extent that it is compound, phrased disjunctively or conjunctively, and includes subparts in such a manner that is unduly

8